IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES
TRADING COMMISSION,

      Plaintiff,

      v.

EOX HOLDINGS LLC and ANDREW
GIZIENSKI,

      Defendants.

Case No.: 18-cv-8890

**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY
PENALTIES, AND OTHER EQUITABLE RELIEF**

Plaintiff Commodity Futures Trading Commission ("Commission") alleges as follows:

## I.    SUMMARY

1.      Beginning in or about August 2013 and continuing through May 2014 (the "relevant period"), Defendant Andrew Gizienski, a broker at Defendant EOX Holdings LLC ("EOX"), exercised discretionary trading authority over an account belonging to Customer A, a friend and longstanding client, at the same time that Gizienski facilitated block trades for other EOX customers. Throughout the relevant period, Gizienski sought to impress and curry favor with Customer A, with the goal of becoming a trader working for Customer A or under his tutelage.

2.      To that end, and in violation of duties of trust and confidence owed to EOX customers, Gizienski shared with Customer A material, nonpublic information relating to other EOX customers, such as their identities, trading activity, and positions. Gizienski also exercised his discretionary authority to trade for Customer A's account while in the knowing possession of, and on the basis of, material, nonpublic information relating to other EOX customers.

3.       Neither EOX nor Gizienski disclosed to EOX customers that Gizienski was trading on behalf of Customer A in the same contract markets and at the same time as those customers, nor did they disclose that Gizienski was exercising his discretionary trading authority to trade on behalf of Customer A against EOX customers.  Throughout the relevant period, Gizienski quoted bids and offers to EOX customers for the purpose of negotiating block trades without disclosing that he was doing so for the benefit of his discretionary trading.

4.       Although EOX waived a company policy prohibiting brokers from exercising discretion over customer accounts to allow Gizienski to trade on behalf of Customer A, EOX failed to institute policies or procedures to monitor Gizienski's trading and to minimize the readily apparent conflicts of interest, including by ensuring that Gizienski did not misuse the material, nonpublic information to which he had access by virtue of his role as a broker.  For example, EOX made no effort to review Gizienski's communications with Customer A for unlawful disclosures, nor did it review Gizienski's activities on behalf of and with Customer A for insider trading, frontrunning, or other potential trading abuses.

5.       Throughout the relevant period, and continuing to the present, EOX has failed to retain all pre-trade communications with customers, and failed to prepare and keep adequate written records of customer orders.  EOX's failure to comply with recordkeeping requirements has hindered the Commission's ability to fully investigate acts and practices that may have been in violation of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2012), and the Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1-190 (2018).

6.       By this conduct and further conduct described herein, EOX has engaged, is engaging, or is about to engage in acts and practices that violate Sections 4g and 6(c)(1) of the Act,

7 U.S.C. §§ 6g, 9(1) (2012), and Regulations 1.31, 1.35, 155.4(b), 166.3, and 180.1(a), 17 C.F.R. §§ 1.31, 1.35, 155.4(b), 166.3, 180.1(a) (2013).

7.     By this conduct and further conduct described herein, Gizienski has engaged, is engaging, or is about to engage in acts and practices that violate 7 U.S.C. § 9(1) and 17 C.F.R. §§ 155.4(b) and 180.1(a) (2013).

8.     The Commission brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act.  In addition, the Commission seeks civil monetary penalties and such other equitable relief as this Court deems necessary and appropriate.

## II.     JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice that violates any provision of the Act or any rule, regulation, or order promulgated thereunder.

10.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) (2012) because Defendants transact business in this District and certain transactions, acts, and practices alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

## III.     PARTIES

11.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and the Regulations promulgated thereunder.

12. Defendant **EOX Holdings LLC** is a Delaware limited liability company with its principal offices in New York, New York and Houston, Texas.  EOX has been registered with the Commission as an Introducing Broker ("IB") since 2009.  EOX is a wholly owned subsidiary of OTC Global Holdings LP ("OTC Global"), an inter-dealer broker in over-the-counter energy commodities.  EOX executes block futures and options trades on behalf of OTC Global's affiliate companies, and all of OTC Global's individual brokers within the United States are registered with the Commission as Associated Persons ("AP") of EOX.  Among other names, EOX does business as Choice Power and Choice Natural Gas (collectively, "EOX").

13. Defendant **Andrew Gizienski**, age 36, is a resident of Houston, Texas.  Since approximately December 2010, Gizienski has been employed by Choice Power, an OTC Global affiliate company, as a broker on its North East Power Desk.  Gizienski has been registered with the Commission as an AP of EOX since February 2013.

## IV.    OTHER RELEVANT ENTITIES

14. **ICE Futures U.S.** ("IFUS") is and was, at all times during the relevant period, a Delaware corporation, a board of trade designated as a contract market, and self-regulatory organization.  IFUS is located in New York, New York and lists approximately 500 futures and options contracts on a wide range of products, including natural gas and power, agricultural commodities, equity indexes, and currencies.  The unlawful conduct described in this Complaint was in connection with the trading of futures and options contracts listed for trading on IFUS and subject to its rules and regulations.

## V.   FACTS

### A.  **Market Fundamentals**

15.     A futures contract is an agreement to purchase or sell a commodity for delivery or cash settlement in the future at a specified price.  A futures contract traded on an exchange has standard, non-negotiable contract specifications.

16.     An option on a futures contract gives the buyer the right, but not the obligation, to buy or sell a specific futures contract at a specific price on or before the option's expiration date.

17.     An "order," in the context of electronic exchange trading, is a request submitted to an exchange to buy (that is, "bid") or sell (that is, "offer" or "ask") a certain quantity (number of contracts) of a specified futures or options contract.  Orders are entered into the exchange's order book.  When there exists both a willing buyer and seller for a contract at a given price, a transaction occurs and is referred to as a "fill" (or a "trade" or "execution").

18.     A block trade is a permissible, privately negotiated transaction either at or exceeding an exchange-determined minimum threshold quantity of futures or options contracts which is executed apart and way from the open outcry or electronic markets.  IFUS Rule 4.07 sets forth the requirements for executing and reporting block trades.

19.     With respect to the futures and options contracts at issue in this Complaint, at all relevant times IFUS required that block trades be reported to the exchange within fifteen (15) minutes from the time of execution.  Block trades executed outside of normal trading hours are required to be reported to the exchange no later than five (5) minutes prior to the open of the next trading session for that particular contract.

### B.  **Defendants' Obligation to Protect Confidential Customer Information**

20.     At all relevant times, Defendants owed duties of trust and confidentiality to EOX customers by law or rule, by agreement, and by understanding.

5

21.     During the relevant period, EOX maintained written agreements with customers which prohibited EOX from using or disclosing confidential customer information, such as the customer's trading activity, except as necessary for the facilitation of block trades with third parties.

22.     During the relevant period, Gizienski was employed by EOX pursuant to a written agreement that expressly provided for his access to confidential information relating to EOX customers, including the customers' trading histories, patterns, preferences, tendencies, and market positions.  The written agreement prohibited Gizienski from revealing, disclosing, or communicating such confidential information to anyone outside of EOX.

23.     At all relevant times, Regulation 155.4(a), 17 C.F.R. § 155.4(a) (2013), required that EOX establish and enforce internal procedures to insure that the firm and its affiliated persons, including Gizienski, did not use their knowledge of customer orders to trade ahead of or against the interests of such customers for their own benefit or that of their preferred customers.

24.     At all relevant times, Regulation 155.4(b)(1), 17 C.F.R. § 155.4(b)(1) (2013), prohibited Defendants from disclosing that an order of another person was being held by EOX or any of its affiliated persons unless such disclosure was necessary to the order's effective execution.

25.     At all relevant times, Regulation 155.4(b)(2), 17 C.F.R. § 155.4(b)(2) (2013), prohibited Gizienski from trading against orders submitted by EOX customers without the customers' prior consent.

26.     At all relevant times, IFUS Rule 4.02(i) provided that, in connection with the placement of any order or execution of any transaction, it shall be a violation of exchange rules for any person to disclose or divulge the buy or sell order of another person except in furtherance of executing the order or pursuant to other exceptions not applicable here.

27.     With respect to block trading conducted subject to IFUS rules, a broker negotiating a potential trade for a customer may, with the customer's consent, disclose the customer's identity and whether the negotiation has ended, to one or more of the parties involved in negotiating the block trade.  Parties involved in the solicitation or negotiation of a block trade are prohibited from disclosing the terms of a block trade to non-involved parties prior to the block trade being publicly reported by IFUS.

28.     As an experienced broker, Gizienski understood he was expected and obligated to maintain the confidentiality of customer information.  In the course of an IFUS interview, Gizienski acknowledged that brokers are prohibited from disclosing nonpublic customer information:

Q:      Does EOX or your desk have a policy regarding information disclosure?

A:      EOX's policies are about reporting the block trade, putting them into the screen, you know the Exchanges and EOX is there for the reporting.  EOX does not make desk policies, that is amongst the brokers, on the desk on how we handle orders.  I mean, EOX doesn't make a policy on desk orders or how the orders are worked.  EOX has policies on how we report trades to the market, which are private until the trades are reported.

Q:      What if a counterparty asked you who the other side of a deal was?

A:      *You can't give up that information.  There is a confidentiality agreement between the broker and the trader, and ...you know ... no information I receive from one client goes to another.  That's just ah ... I mean that's industry policy ... I don't even want to say that's EOX policy ... that is series 3 compliance.  That is an industry compliance policy.*  As a general rule 101 of being a broker you cannot disclose, unless you are brokering a physical market which I do not I broker futures, and you can pass cleared information when everything is cleared, you are not passing tangible names … just cleared.

**C.  Misappropriation of Material, Nonpublic Information**

29.     At all relevant times, EOX provided brokerage services for customers interested in purchasing or selling certain futures or options contracts via block trades.  To arrange block trades on behalf of customers, brokers must generally disclose the existence of a potential buyer or seller and the buyer's or seller's interest in a particular contract.  It is neither necessary nor, in the absence

of a customer's consent, appropriate for EOX or its brokers to disclose such customer's identity or trading activity.

30.     As a broker, Gizienski had access to material, nonpublic information about EOX customers, including their identities, the prices at which they bought or sold particular contracts, the prices at which they were interested in buying or selling particular contracts, their trading positions, and their trading patterns.

31.     Over the course of the spring and summer of 2013, Gizienski sought and obtained discretionary trading authority from Customer A, a successful trader and friend with whom he socialized in Las Vegas, Nevada, Scottsdale, Arizona, and elsewhere.  Gizienski also sought and obtained from EOX a waiver of the firm policy prohibiting brokers from exercising discretion over customer accounts. By August 2013, Gizienski's trading authority was in place and he was able to execute block trades and trade on IFUS' electronic trading platform for Customer A's benefit.

32.     During the relevant period, Gizienski acted as a trader for Customer A while continuing to work as a broker for other EOX customers, and while continuing to have access to material, nonpublic information about EOX customers.

33.     During the relevant period, Gizienski communicated with Customer A regarding Gizienski's desire to become a trader working for or alongside Customer A, as well as his efforts in raising capital for the purpose of establishing an investment venture with Customer A.

34.     In an effort to curry favor with Customer A and prove his worth as a trader, and in violation of the duties of trust and confidence owed to EOX customers, Gizienski disclosed to Customer A material, nonpublic information about other EOX customers, knowing, or with reckless disregard of the fact, that the information would be used for trading.  Gizienski also traded, or

attempted to trade, for Customer A while in knowing possession of material, nonpublic information relating to other EOX customers.

35.     On September 10, 2013, for example, Gizienski disclosed to Customer A the identity and bid activity of another EOX customer ("Customer B") via instant message ("IM"):

| Gizienski: | [Customer B] is goingto make this pop |
| Gizienski: | he keeps yelling bday 100 calls 4 bid |
| Customer A: | everytime its trading high and i sell puts it clears under the strikes |
| Gizienski: | look at mid A |
| Gizienski: | oh man |
| Customer A: | ya |
| Gizienski: | this could go to 70 fast |
| Gizienski: | track 46k mid a load |
| Customer A: | not sure |
| Customer: | hit some 60 puts |

36.     Gizienski did not disclose this information for the purpose of executing a trade for Customer B, nor did he do so with Customer B's consent.  Gizienski tipped Customer A to this information so they could use it for their own trading purposes.

37.     The information was material because Gizienski and Customer A knew that Customer B traded energy contracts for one of the nation's largest power generation companies; as such, Customer B's activity could impact the market for the particular contract on which he is bidding as well as related contracts.  In this instance, the disclosure led Customer A to instruct Gizienski to sell "some 60 puts."

38.     On November 14, 2013, Gizienski disclosed to Customer A via IM confidential information relating to another customer's trading activity:

| Gizienski: | here she comes |
| Gizienski: | ur girl |
| Gizienski: | nd nepool |
| Gizienski: | 37.00 at 38.25 |
| Customer A: | k |
| **************************** | |
| Gizienski: | she is lifting offer |

```
Gizienski:    38.25
Gizienski:    buy on
Customer A:   i think we can get better
Gizienski:    she is lifting ice
Gizienski:    3875
Customer A:   k
```

39.     By "she," Gizienski and Customer A were referring to a particular female EOX

customer who traded for another power generation company.  Gizienski did not disclose her activity

for the purpose of executing a trade for her, nor did he do so with her consent.  Gizienski tipped

Customer A to this information because her trading activity was material to their trading decisions.

40.     On December 19, 2013, Gizienski and Customer A again discussed the female trader

via IM and Gizienski proceeded to disclosed the identity and bid activity of another EOX customer:

```
Customer A:   what was she doing in the daily
Gizienski:    no numbers from her
Gizienski:    today
Customer A:   nw?
Gizienski:    that [Customer C]
Customer A:   trying to buy puts
Gizienski:    y
```

41.     Gizienski did not disclose this bid activity information for the purpose of executing a

trade for Customer C, nor did he do so with the customer's consent.  Gizienski tipped Customer A

to this information because it was material to Customer A's trading decisions.

42.     On February 27, 2014, Gizienski tipped Customer A via IM to the purchase

instructions given to him by another EOX customer ("Customer D"):

```
Gizienski:    [Customer D] is covering here
Gizienski:    he just told me to buy him 150mws
Gizienski:    bday
Customer A:   fck
Gizienski:    but you have to remeber everyone here is leaving in 15 min
Gizienski:    to go to rodeo
Customer A:   k we need to cover
Customer A:   the options if we can
```

43.     Gizienski did not disclose this information for the purpose of executing a trade for Customer D, nor did he do so with Customer D's consent.  Gizienski tipped Customer A to this confidential information because it was material to their trading positions; in particular the margin in Gizienski's discretionary trading account.

44.     On April 30, 2014, Gizienski disclosed to Customer A via IM material, nonpublic information concerning a block trade he just brokered between other EOX customers:

| | |
|---|---|
| Gizienski: | fucin a |
| Gizienski: | man |
| Customer A: | ? |
| Gizienski: | [Customer E] offered .75 cents on them |
| Gizienski: | and this dbag is buying them |
| Customer A: | start sell thing man |
| Gizienski: | i am |
| Gizienski: | trying |

45.     At the time of this communication, the terms of the block trade were not yet publicly reported by IFUS.

46.     Gizienski did not disclose this information for the purpose of executing a trade for either of these customers, nor did he do so with the customers' consent.  Gizienski tipped Customer A to this confidential information because it was material to their trading decisions.  Following this disclosure, Gizienski and Customer A both proceeded to sell the particular futures contract at issue in their communication.

47.     On May 8, 2014, Gizienski disclosed to Customer A via IM material, nonpublic information concerning a block trade between other EOX customers and admitted to trading on the basis of that information:

| | |
|---|---|
| Gizienski: | fucking [Customer F] |
| Gizienski: | just hit the bid |
| Gizienski: | GDAM |
| Customer A: | ? |
| Gizienski: | .30 hit |

11

| | |
|---|---|
| Gizienski: | bday 50 put |
| Customer A: | u sell it |
| Gizienski: | 100 |
| Gizienski: | i got off |

48.     Approximately five minutes later, Gizienski disclosed to Customer A additional

confidential information about Customer F:

| | |
|---|---|
| Gizienski: | shit |
| Gizienski: | .75 hit |
| Customer A: | [Customer F] doing that |
| Gizienski: | yes |
| Customer A: | they long |
| Customer A: | bd |
| Gizienski: | must be |
| Gizienski: | or |
| Gizienski: | you want me to sell 100 |
| Gizienski: | @ .75 |
| Gizienski: | 55 put |

49.     At the time of these communications, the terms of Customer F's block trades were

not yet publicly reported by IFUS.

50.     Gizienski's disclosures were not necessary to the effective execution of orders for

the customer whose information was divulged, nor were they done with the customers' consent.

Gizienski tipped Customer A to this confidential information because it was material to their

trading.  Gizienski, in fact, traded on the basis of the material, nonpublic information concerning

Customer F's initial block trade.

51.     On May 9, 2014, Gizienski again disclosed to Customer A via IM material,

nonpublic information relating to Customer F:

| | |
|---|---|
| Customer A: | whats theor company name |
| Gizienski: | who |
| Gizienski: | duo |
| Customer A: | duo |
| Gizienski: | [Customer F] |
| | ***************************** |
| Gizienski: | there shorting this thing |

Gizienski:     there buying 51 puts
Customer A:   off the puts im gonna smoke
Gizienski:     kk

52.     Gizienski's disclosure was not necessary to the effective execution of orders for

Customer F, nor was it done with the customer's consent.  Gizienski tipped Customer A to

confidential information about Customer F's trading activity because it was material to Customer

A's trading decisions.

53.     On at least twenty instances throughout the relevant period, Gizienski disclosed

material, nonpublic information about other EOX customers to Customer A, not for the purpose of

effecting execution of block trades for the other customers, but rather for the purpose of trading, or

attempting to trade, futures or options contracts.

54.     Over the course of 2013 and 2014, in addition to the prospect of becoming a trader

and/or establishing an investment venture with Customer A, Gizienski received benefits from

Customer A, including assorted entertainment in Las Vegas and Scottsdale, including restaurants

and nightclubs, and reimbursement for tens of thousands of dollars in additional entertainment

expenses, including tickets to championship boxing fights.

**D.  Undisclosed Conflict of Interest**

55.     During the relevant period, customers engaged EOX for the purpose of buying or

selling certain futures or options contracts via block trades.  In the course of these broker/customer

relationships, EOX and its brokers were afforded access to confidential information relating to

customers, including their interest in buying or selling particular contracts, the prices at which they

were interested in buying or selling, their market positions, and their trading history.

56.     Customers provided EOX and its brokers with access to such confidential

information with the understanding and the expectation that the information would be used to

arrange block trades with third parties, and would not otherwise be divulged or used to the customers' disadvantage.

57.     During the relevant period, EOX customers communicated their trading interest to Gizienski believing he was acting solely in the capacity of a broker, when in fact, on behalf of Customer A, Gizienski was trading in the same contracts and at the same time as those customers.

58.     During the relevant period, Gizienski provided customers with bid and/or ask prices without disclosing that he was doing so for the benefit of his discretionary trading on behalf of another EOX customer, and was not merely relaying the interest of third parties.

59.     On more than 100 occasions, Gizienski executed block trades against other EOX customers, without their prior consent and without disclosing that he was taking the opposite side of their order for the benefit of Customer A.

60.     During the relevant period, Gizienski traded, or attempted to trade on behalf of Customer A, based on confidential customer information he had access to by virtue of being an EOX broker, and further acted as a conduit of such information to Customer A.

61.     At no time during the relevant period did EOX or Gizienski disclose to customers that he would be acting as a trader for the benefit of a preferred customer while continuing his role as a broker on EOX's North East Power Desk.

**E.  Failure to Maintain Required Records**

62.     During the relevant period, and continuing to the present, EOX has failed to keep required records, in violation of Regulation 1.35(a)(1) and (b)(1), 17 C.F.R. § 1.35(a)(1), (b)(1) (2013).

63.     Since at least 2013, EOX brokers have engaged in pre-trade communications with customers by telephone, instant messaging, mobile device, or other digital or electronic media.

64.     EOX, however, has not adequately retained all of its brokers' pre-trade communications with customers; in particular, EOX has made no effort to retain pre-trade communications made via brokers' mobile devices.

65.     EOX has no policies or procedures in place relating to the use of or access to its brokers' mobile devices.

66.     Since at least 2013, EOX brokers have failed to prepare adequate written records of orders received from customers.

67.     EOX has no policies or procedures in place relating to its brokers' written recordation of orders received from customers.

68.     EOX's failure to keep all pre-trade communications and written records of customer orders, and to produce such records to the Commission, has hindered the Commission's ability to fully investigate violations of the Act and Regulations by Gizienski or others associated with EOX.

**F.   Supervision Failures**

69.     During the relevant period, EOX maintained a company policy providing that "[d]iscretion may not be granted over a customer account to an AP of the Firm."

70.     In or about the spring of 2013, EOX's Chief Executive Officer waived the company policy and allowed Gizienski to enter into a discretionary trading arrangement with Customer A while continuing to work as a broker on EOX's North East Power Desk.

71.     EOX did not establish, implement, or enforce any policies or procedures to monitor Gizienski's trading on behalf of Customer A or to ensure that the readily apparent conflicts of interests that his trading while still acting as a broker for other EOX customers created was not to the detriment of EOX customers.

72.     For example, EOX did not have policies or procedures in place or otherwise attempt to detect or prevent Gizienski's misuse of the confidential customer information to which he had access by virtue of his role on the brokerage desk.

73.     For example, EOX did not review Gizienski's communications with Customer A for unlawful disclosures, nor did it review Gizienski's or Customer A's trading activities for evidence of preferential treatment, frontrunning, misappropriation of material, nonpublic information, or other trading abuses.

74.     Since at least 2013, EOX has further failed to establish, implement, or enforce policies or procedures governing its operation as an IB, including the handling of customer orders, preparation and retention of required records, and protection of confidential customer information.

## VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT I

### Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2013)

### (Against EOX and Gizienski)

75.     Paragraphs 1 through 73 are re-alleged and incorporated herein by reference.

76.     7 U.S.C. § 9(1) provides, in relevant part:

It shall be unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate . . . .

77.     17 C.F.R. § 180.1(a), provides, in relevant part:

It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate

commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:

(1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;

(2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or]

(3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

78.     During the relevant period, Gizienski violated 7 U.S.C. § 9(1)and 17 C.F.R.

§ 180.1(a) by, in connection with swaps, contracts of sale of commodities in interstate commerce, or contracts for future delivery on or subject to the rules of any registered entity: (i) intentionally or recklessly trading on the basis of material, nonpublic information in breach of a pre-existing duty owed to EOX customers; (ii) intentionally or recklessly tipping material, nonpublic information about EOX customers to Customer A in breach of a pre-existing duty owed to EOX customers; and/or (iii) intentionally or recklessly engaging, or attempting to engage, in acts, practices, or a course of business which operated or would operate as a fraud or deceit upon other persons.

79.     The foregoing acts, omissions, and failures of Gizienski occurred within the scope of his employment, office, or agency with EOX.  Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2018), EOX is liable for Gizienski's violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

80.     Each fraudulent or deceptive act, including each instance in which Gizienski traded on the basis of material, nonpublic information or tipped material, nonpublic information to Customer A, is alleged as a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

## COUNT II

## Violation of Regulation 155.4(b), 17 C.F.R. § 155.4(b) (2013)

### (Against EOX and Gizienski)

81.     Paragraphs 1 through 79 are realleged and incorporated herein by reference.

82.     17 C.F.R. § 155.4(b) provides, in relevant part, that no IB or any of its affiliated persons shall:

> (1) Disclose that an order of another person is being held by the introducing broker or any of its affiliated persons, unless such disclosure is necessary to the effective execution of such order . . .; or

> (2) (i) Knowingly take, directly or indirectly, the other side of any order of another person revealed to the introducing broker or any of its affiliated persons by reason of their relationship to such person, except with the other person's prior consent and in conformity with contract market rules approved by or certified to the Commission.

83.     During the relevant period, Gizienski violated 17 C.F.R. § 155.4(b) by: (i) disclosing to Customer A the orders of other customers held by EOX or any of its affiliated persons, when such disclosures were not necessary to the effective execution of the customer orders; and (ii) knowingly taking the other side of customer orders revealed to EOX or any of its affiliated persons without the customers' prior consent.

84.     The foregoing acts, omissions, and failures of Gizienski occurred within the scope of his employment, office, or agency with EOX.  Therefore, pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2, EOX is liable for Gizienski's violations of 17 C.F.R. § 155.4(b).

85.     Each instance in which Gizienski unlawfully disclosed a customer order or traded against an EOX customer without the customer's consent is alleged as a separate and distinct violation of 17 C.F.R. § 155.4(b).

**COUNT III**

**Violation of Section 4g of the Act, 7 U.S.C. § 6g (2012), and Regulations 1.31 and 1.35,
17 C.F.R. §§ 1.31, 1.35 (2013)**

**(Against EOX)**

86.     Paragraphs 1 through 84 are realleged and incorporated herein by reference.

87.     7 U.S.C. § 6g(a) provides, in relevant part, that every person registered as an IB shall keep books and records pertaining to its customers' transactions and positions in such form and manner and for such period as may be required by the Commission, and shall make such records available to the Commission for inspection.

88.     At all relevant times, 17 C.F.R. § 1.35(a)(1) required that IBs such as EOX keep all oral and written communications provided or received concerning quotes, solicitations, bids, offers, instructions, trading, and prices that lead to the execution of a transaction in a commodity interest, whether communicated by telephone, voicemail, instant messaging, chat rooms, electronic mail, mobile device, or other digital or electronic media.

89.     At all relevant times, 17 C.F.R. § 1.35(b)(1) (2013) further required that each IB receiving a customer's order that cannot immediately be entered into a trade matching engine shall immediately upon receipt thereof prepare a written record of the order including the account identification and order number, and shall record thereon, by timestamp or other timing device, the date and time, to the nearest minute, the order is received.

90.     17 C.F.R. § 1.31 provides that "all books and records required to be kept by the Act or by these regulations shall be kept for a period of five years from the date thereof and shall be readily accessible during the first 2 years of the 5-year period."

91.     Since at least August 2013, EOX has violated 7 U.S.C. § 6g(a) and 17 C.F.R. §§ 1.31 and 1.35(a)(1) and (b)(1) by: (i) failing to keep all pre-trade communications with customers; and (ii) failing to prepare and keep adequate written records of customer orders.

92.     Each day that EOX failed to comply with its recordkeeping obligations is alleged as a separate and distinct violation of 17 C.F.R. §§ 1.31 and 1.35(a)(1)(iii) and (b)(1) (2013).

## COUNT IV

### Violation of Regulation 166.3, 17 C.F.R. § 166.3 (2013)

### (Against EOX)

93.     Paragraphs 1 through 91 are realleged and incorporated herein by reference.

94.     17 C.F.R. § 166.3 requires:

> Each Commission registrant, except an associated person who has no supervisory duties, must diligently supervise the handling by its partners, officers, employees and agents (or persons occupying a similar status or performing a similar function) of all commodity interest accounts carried, operated, advised or introduced by the registrant and all other activities of its partners, officers, employees, and agents (or persons occupying a similar status or performing a similar function) relating to its business as a Commission registrant.

95.     EOX violated 17 C.F.R. § 166.3 by, among other things: (i) failing to establish, implement, and enforce policies or procedures to detect or prevent Gizienski's misuse of confidential customer information; (ii) failing to review Gizienski's discretionary trading, his communications with Customer A, or the brokerage services he provided to Customer A; and (iii) failing to establish, implement, or enforce policies or procedures governing its brokers' handling of customer orders, the preparation and retention of required records, and the protection of confidential customer information.

96.     The foregoing acts, omissions, and failures of EOX employees and principals relating to insufficient supervision occurred within the scope of their employment, office, or agency

with EOX.  Therefore, pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2, EOX is liable for the acts, omissions, and failures constituting violations of 17 C.F.R. § 166.3.

97.    Each failure to supervise, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of 17 C.F.R. § 166.3.

## VII.    RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers:

A.    Find that EOX violated Sections 4g and 6(c)(1) of the Act, 7 U.S.C. §§ 6g, 9(1) (2012), and Regulations 1.31, 1.35, 155.4(b), 166.3, and 180.1(a), 17 C.F.R. §§ 1.31, 1.35, 155.4(b), 166.3, 180.1(a) (2013);

B.    Find that Gizienski violated 7 U.S.C. § 9(1) (2012) and 17 C.F.R. §§ 155.4(b) and 180.1(a) (2013);

C.    Enter an order of permanent injunction enjoining EOX, and its affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. §§ 6g and 9(1) (2012) and 17 C.F.R. §§ 1.31, 1.35, 155.4(b), 166.3, and 180.1(a) (2018);

D.    Enter an order of permanent injunction enjoining Gizienski, and his affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. § 9(1) (2012) and 17 C.F.R. §§ 155.4(b) and 180.1(a) (2018);

E.      Enter an order of permanent injunction restraining and enjoining EOX and

Gizienski, as well as their affiliates, agents, servants, employees, successors, assigns, attorneys, and

all persons in active concert with them, from directly or indirectly:

1.   Trading on or subject to the rules of any registered entity (as that term is defined in Section

1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

2.   Entering into any transactions involving "commodity interests" (as that term is defined in

Regulation 1.3, 17 C.F.R. § 1.3 (2018), for accounts held in the name of any Defendant or

for accounts in which any Defendant has a direct or indirect interest;

3.   Having any commodity interests traded on any Defendant's behalf;

4.   Controlling or directing the trading for or on behalf of any other person or entity, whether

by power of attorney or otherwise, in any account involving commodity interests;

5.   Soliciting, receiving, or accepting any funds from any person for the purpose of

purchasing or selling of any commodity interests;

6.   Applying for registration or claiming exemption from registration with the Commission in

any capacity, and engaging in any activity requiring such registration or exemption from

registration with the Commission except as provided for in Regulation 4.14(a)(9), 17

C.F.R. § 4.14(a)(9) (2018), and/or;

7.   Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a)

(2018)), agent, or any other officer or employee of any person registered, exempted from

registration, or required to be registered with the Commission except as provided for in

17 C.F.R. § 4.14(a)(9).

F.      Enter an order directing EOX and Gizienski, as well as any third-party transferee

and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all

benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest;

G.     Enter an order directing EOX and Gizienski to pay civil monetary penalties, to be assessed by the Court, in an amount not more than the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2014, Pub. L. 114-74, 129 Stat. 584, title VII, Section 701, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2018), for each violation of the Act and Regulations, as described herein;

H.     Enter an order requiring EOX and Gizienski to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2) (2012); and

I.     Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Date: September 28, 2018                              Respectfully submitted,

s/ Daniel R. Burstein
Daniel R. Burstein (IL Bar #6292485)
Robert Howell (IL Bar #6286438)
Scott Williamson (IL Bar # 6191293)
Rosemary Hollinger (IL Bar # 3123647)
COMMODITY FUTURES TRADING COMMISSION
525 W. Monroe Street, Suite 1100
Chicago, IL 60661
Telephone:   (312) 596-0700
Facsimile:   (312) 596-0714
E-mail:       dburstein@cftc.gov
              rhowell@cftc.gov
              swilliamson@cftc.gov
              rhollinger@cftc.gov