United States District Court
Southern District of Texas
**ENTERED**
September 26, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

COMMODITY FUTURES TRADING       §
COMMISSION,                     §
                                §
            Plaintiff,          §
                                §
v.                              §        CIVIL ACTION NO. H-19-2901
                                §
EOX HOLDINGS L.L.C., and        §
ANDREW GIZIENSKI,               §
                                §
            Defendants.         §

## MEMORANDUM OPINION AND ORDER

This action is brought by plaintiff, the Commodity Futures Trading Commission ("CFTC" or "Plaintiff"), against defendants, EOX Holdings L.L.C. ("EOX") and Andrew Gizienski ("Gizienski") (collectively, "Defendants"), for violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1-27f, and the Regulations promulgated thereunder, 17 C.F.R. parts 1-190, during the period beginning in or about August of 2013 and continuing through May of 2014 ("relevant period"). Pending before the court is the Notice of Motion to Dismiss and for Summary Judgment on Counts I and II of the Complaint as to EOX and Gizienski, and Motion to Dismiss All Counts Against Gizienski for lack of personal jurisdiction and improper venue (Docket Entry No. 23). Because this case was transferred from the Southern District of New York, Gizienski's motion to dismiss for lack of personal jurisdiction and improper

-1-

venue is considered moot and withdrawn.[1]  For the reasons stated below the Defendants' pending motion to dismiss and for summary judgment on Counts I and II will be denied.

## I.  <u>Factual Allegations and Procedural Background</u>

Plaintiff alleges that it is a federal agency "charged by Congress with the administration and enforcement of the [CEA] and the Regulations promulgated thereunder,"[2] and that defendant

> EOX has been registered with the [CFTC] as an Introducing Broker ("IB") since 2009. EOX is a wholly owned subsidiary of OTC Global Holdings LP ("OTC Global"), an inter-dealer broker in the over-the-counter energy commodities.  EOX executes block futures and options trades on behalf of OTC Global's affiliate companies, and all of OTC Global's individual brokers within the United States are registered with the [CFTC] as Associated Persons ("AP") of EOX.[3]

Plaintiff alleges that at all relevant times defendant Gizienski "has been employed by Choice Power, an OTC Global affiliate company, as a broker[,] . . . and has been registered with the [CFTC] as an AP of EOX since February 2013."[4]

---

[1]<u>See</u> Order, Docket Entry No. 52, p. 16 n. 4.  <u>See also</u> Defendants' Advisement of Intent ("Defendants' Advisement"), Docket Entry No. 70, p. 2 (acknowledging that Gizienski's motion to dismiss is moot).  Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system.

[2]Complaint for Injunctive Relief, Civil Monetary Penalties, and Other Equitable Relief ("Plaintiff's Complaint"), Docket Entry No. 1, p. 3 ¶ 11.

[3]<u>Id.</u> at 4 ¶ 12.

[4]<u>Id.</u> ¶ 13.

Plaintiff alleges that EOX brokers report their block trades to ICE Futures U.S. ("IFUS"), which "at all times during the relevant period . . . [was] a board of trade designated as a contract market, and self-regulatory organization."[5]   Plaintiff alleges that "[t]he unlawful conduct described in [its] Complaint was in connection with the trading of futures and options contracts listed for trading on IFUS and subject to its rules and regulations."[6]

In pertinent part Plaintiff alleges:

17.  An "order," in the context of electronic exchange trading, is a request submitted to an exchange to buy (that is, "bid") or sell (that is, "offer" or "ask") a certain quantity (number of contracts) of a specified futures or options contract.  Orders are entered into the exchange's order book.  When there exists both a willing buyer and seller for a contract at a given price, a transaction occurs and is referred to as a "fill" (or a "trade" or "execution").

18.  A block trade is a permissible, privately negotiated transaction either at or exceeding an exchange-determined minimum threshold quantity of futures or options contracts which is executed apart and [a]way from the open outcry or electronic markets.  IFUS Rule 4.07 sets forth the requirements for executing and reporting block trades.

19.  With respect to the futures and options contracts at issue in this Complaint, at all relevant times IFUS required that block trades be reported to the exchange within fifteen (15) minutes from the time of execution. Block trades outside of normal trading hours are required to be reported to the exchange no later than five (5) minutes prior to the open of the next trading session for that particular contract.

---

[5] Id.  ¶ 14.

[6] Id.

20.   At all relevant times, Defendants owed duties of trust and confidentiality to EOX customers by law or rule, by agreement, and by understanding.

21.   During the relevant period, EOX maintained written agreements with customers which prohibited EOX from using or disclosing confidential customer information, such as the customer's trading activity, except as necessary for the facilitation of block trades with third parties.

22.   During the relevant period, Gizienski was employed by EOX pursuant to a written agreement that expressly provided for his access to confidential information relating to EOX customers, including the customers' trading histories, patterns, preferences, tendencies, and market positions.   The written agreement prohibited Gizienski from revealing, disclosing, or communicating such confidential information to anyone outside of EOX.

.   .   .

26.   At relevant times, IFUS Rule 4.02(i) provided that, in connection with the placement of any order or execution of any transaction, it shall be a violation of exchange rules for any person to disclose or divulge the buy or sell order of another person except in furtherance of executing the order or pursuant to other exceptions not applicable here.

27.   With respect to block trading conducted subject to IFUS rules, a broker negotiating a potential trade for a customer may, with the customer's consent, disclose the customer's identity and whether the negotiation has ended, to one or more of the parties involved in negotiating the block trade.   Parties involved in the solicitation or negotiation of a block trade are prohibited from disclosing the terms of a block trade to non-involved parties prior to the block trade being publicly reported by the IFUS.

28.   As an experienced broker, Gizienski understood he was expected and obligated to maintain the confidentiality of customer information.   In the course of an IFUS interview, Gizienski acknowledged that brokers are prohibited from disclosing nonpublic customer information. .   .   .

29.   At all relevant times, EOX provided brokerage services for customers interested in purchasing or

-4-

selling certain futures or options contracts via block
trades.  To arrange block trades on behalf of customers,
brokers must generally disclose the existence of a
potential buyer or seller and the buyer's or seller's
interest in a particular contract.  It is neither
necessary nor, in the absence of a customer's consent,
appropriate for EOX or its brokers to disclose such
customer's identity or trading activity.

30.  As a broker, Gizienski had access to material,
nonpublic information about EOX customers, including
their identities, the prices at which they bought or sold
particular contracts, the prices at which they were
interested in buying or selling particular contracts,
their trading positions, and their trading patterns.

31.  Over the course of the spring and summer of 2013,
Gizienski sought and obtained discretionary trading
authority from Customer A, a successful trader and friend
with whom he socialized in Las Vegas, Nevada, Scottsdale,
Arizona, and elsewhere.  Gizienski also sought and
obtained from EOX a waiver of the firm policy prohibiting
brokers from exercising discretion over customer
accounts. . . .

32.  During the relevant period, Gizienski acted as a
trader for Customer A while continuing to work as a
broker for other EOX customers, and while continuing to
have access to material, nonpublic information about EOX
customers.

. . .

34.  In an effort to curry favor with Customer A and
prove his worth as a trader, and in violation of duties
of trust and confidence owed to EOX customers, Gizienski
disclosed to Customer A material, nonpublic information
about other EOX customers, knowing, or in reckless
disregard of the fact, that the information would be used
for trading.  Gizienski also traded, or attempted to
trade, for Customer A while in knowing possession of
material, nonpublic information relating to other EOX
customers.[7]

Plaintiff alleges that

---

[7]Id. at 5-9 ¶¶ 17-22, 26-32, and 34.

[o]n at least twenty instances throughout the relevant
period, Gizienski disclosed material, nonpublic
information about other EOX customers to Customer A, not
for the purpose of effecting execution of block trades
for the other customers, but rather for the purpose of
trading, or attempting to trade, futures or options
contracts.[8]

Plaintiff alleges that

[o]ver the course of 2013 and 2014, in addition to the
prospect of becoming a trader and/or establishing an
investment venture with Customer A, Gizienski received
benefits from Customer A, including assorted
entertainment in Las Vegas and Scottsdale, including
restaurants and nightclubs, and reimbursement for tens of
thousands of dollars in additional entertainment
expenses, including tickets to championship boxing
fights.[9]

Plaintiff alleges:

57. During the relevant period, EOX customers
communicated their trading interest to Gizienski
believing he was acting solely in the capacity of a
broker, when in fact, on behalf of Customer A, Gizienski
was trading in the same contracts and at the same time as
those customers.

58. During the relevant period, Gizienski provided
customers with bid and/or ask prices without disclosing
that he was doing so for the benefit of his discretionary
trading on behalf of another EOX customer, and was not
merely relaying the interest of third parties.

59. On more than 100 occasions, Gizienski executed block
trades against other EOX customers, without their prior
consent and without disclosing that he was taking the
opposite side of their order for the benefit of Customer
A.

60. During the relevant period, Gizienski traded, or
attempted to trade on behalf of Customer A, based on

_____

[8]Id. at 13 ¶ 53.

[9]Id. ¶ 54.

confidential customer information he had access to by virtue of being an EOX broker, and further acted as a conduit of such information to Customer A.

61. At no time during the relevant period did EOX or Gizienski disclose to customers that he would be acting as a trader for the benefit of a preferred customer while continuing his role as a broker on EOX's North East Power Desk.[10]

Plaintiff initiated this action on September 28, 2018, by filing Plaintiff's Complaint in the Southern District of New York asserting claims against EOX and Gizienski for violations of § 6(c)(1) of the CEA, 7 U.S.C. § 9(1), and Regulation 180.1(a), 17 C.F.R. § 180.1(a), arising from multiple instances in which Gizienski allegedly traded on the basis of material, nonpublic information or tipped material, nonpublic information to Customer A (Count I),[11] and for violations of Regulation 155.4(b), 17 C.F.R. § 155.4(b), arising from multiple instances in which Gizienski allegedly disclosed to Customer A the orders of other customers held by EOX or any of its affiliated persons when such disclosures were not necessary to the effective execution of customer orders, and Gizienski knowingly took the other side of customer orders revealed to EOX or its affiliated persons without the customer's prior consent (Count II).[12] Plaintiff's Complaint also asserts claims against EOX for violation of § 4g of the CEA, 7 U.S.C. § 6g, and Regulations 1.31 and 1.35 promulgated thereunder, 17 C.F.R.

---

[10]Id. at 14 ¶¶ 57-61.

[11]Id. at 16-17 ¶¶ 75-80.

[12]Id. at 18 ¶¶ 81-85.

§§ 1.31 and 1.35 arising from EOX's alleged failure to keep records of all pre-trade communications with customers and alleged failure to prepare and keep adequate written records of customer orders (Count III), and for violation of Regulation 166.3, 17 C.F.R. § 166.3 arising from EOX's alleged failures (1) to establish, implement, and enforce policies and procedures to detect and prevent Gizienski's misuse of confidential customer information, (2) to review Gizienski's discretionary trading, his communications with Customer A, or the brokerage services he provided to Customer A, and (3) to establish, implement, or enforce policies or procedures governing its brokers' handling of customer orders, preparation and retention of required records, and protection of confidential customer information (Count IV).

On December 3, 2018, Defendants filed the Notice of Motion to Transfer (Docket Entry No. 20), the pending motion to dismiss and for summary judgment (Docket Entry No. 23), and the Joint Memorandum of Law of Defendants EOX Holding LLC and Andrew Gizienski in Support of Their Motion to Dismiss and for Summary Judgment on Counts I and II of the Complaint as to Both Defendants, and to Dismiss All Claims Against Gizienski ("Memorandum in Support of MD") (Docket Entry No. 24).

On July 31, 2019, the Southern District of New York entered an Order pursuant to 28 U.S.C. § 1404(a) granting defendants' motion to transfer the action to this court (Docket Entry No. 52).

-8-

On August 27, 2019, the court entered an Order setting an initial pretrial and scheduling conference for September 27, 2019, at 3:00 p.m. (Docket Entry No. 59).

On August 30, 2019, Defendants filed Expedited Motion by Defendants to Postpone the Pretrial Conference Until After the Court Rules on Defendants' Motion to Dismiss and for Summary Judgment on Counts I and II of the Complaint (Docket Entry No. 65). On September 5, 2019, Plaintiff filed Plaintiff's Response in Opposition to Defendants' Motion to Postpone the Pretrial Conference Until After the Court Rules on Defendants' Motion to Dismiss and for Summary Judgment on Counts I and II of the Complaint (Docket Entry No. 68). On the same day, the court entered an Order denying Defendants' expedited motion to postpone the pretrial conference, advising defendants that the court normally limits the parties to one dispositive motion, and directing the defendants to advise the court by September 10, 2019, whether they wished to proceed with their dispositive motion or to withdraw the motion and reserve their right to file a motion for summary judgment pursuant to the scheduling order that the court will enter at the September 27, 2019, initial pretrial and scheduling conference (Docket Entry No. 69). On September 10, 2019, Defendants advised the court that they wish to proceed with their motion to dismiss and for summary judgment on Counts I and II of Plaintiff's Complaint (Docket Entry No. 70).

-9-

## II.  Rule 12(b)(6) Provides the Appropriate Standard of Review

Defendants argue that "[w]hen considering the Complaint and the documents referenced therein, and two undisputed facts set forth in a declaration (*see* 56.1 Stmt.), the Court should dismiss under Rule 12(b)(6) and grant summary judgment under Rule 56 for [them] on Counts I and II of the Plaintiff's Complaint."[13]

### A.  Standards of Review

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the Plaintiffs, and draw all reasonable inferences in the Plaintiffs' favor. Id.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To defeat a motion to dismiss pursuant to Rule 12(b)(6) a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

---

[13]Memorandum in Support of MD, Docket Entry No. 24, p. 11.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 127 S. Ct. at 1966).

Allegations of fraud or mistake are subject to the pleading requirements of Rule 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." United States ex rel. Riley v. St. Luke's Episcopal Hospital, 355 F.3d 370, 381 (5th Cir. 2004). A dismissal for failure to plead fraud with particularity is a dismissal on the pleadings for failure to state a claim. Southland Securities Corp. v. INSpire Insurance Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004).

When considering a motion to dismiss courts are generally limited to the complaint and its proper attachments.  Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). Courts may, however, rely on "'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007)).  If on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

Federal Rule of Civil Procedure 56 authorizes summary judgment if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56.  See Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986) (interpreting the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").  A "party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."  Id.

-12-

## B.   Analysis

Defendants contend that their pending motion

> primarily presents an issue of law for this Court to
> decide: are Counts I and II of the Complaint precluded by
> the fundamental principle of agency law that when an
> agent represents two principals in the same transaction,
> the agent's knowledge is imputed to both principles and
> the agent does not owe a duty of confidentiality to
> either principal?[14]

Defendants argue, however, that

> [t]o present this legal issue, Defendants needed to
> introduce two facts beyond the Complaint: (1) in the type
> of trading at issue here, it is customary for a broker to
> act on behalf of both the buyer and the seller in the
> same transaction, and this is well understood by the
> buyer and seller; and (2) a broker acting for both sides
> of a transaction must disclose information of one
> customer to another in order to match a buyer and seller
> to execute a trade.
>
>     Because these two facts beyond the Complaint are
> necessary to present the legal issue, Defendants' Motion
> seeks summary judgment in addition to dismissal.   The
> Motion is fully briefed, and therefore ready for
> decision.[15]

In support of their argument that they are entitled to summary

judgment, defendants submit a Rule 56.1 Statement of Undisputed

Facts taken almost verbatim from the Declaration of Steven Valji

("Valji Declaration") (Docket Entry No. 26):

> 1.   In block trading, it is customary for a broker or
> brokerage firm to act as broker for both the buyer and
> the seller in a transaction, and this is well understood
> by customers of brokers in block trading.   (*See*
> Declaration of Steven Valji ("Valji Decl.") at ¶ 6.)

---

[14]Defendants' Advisement, Docket Entry No. 70, p. 1.

[15]Id. at 1-2.

> 2.   In block futures trading, a request submitted to a
> broker to buy (that is, "bid") or sell (that is, "offer"
> or "ask") a certain quantity (number of contracts) of a
> specified futures or options contract constitutes an
> order.   (*Id.* at ¶ 7.)   It is necessary for the broker to
> disclose this information to potential counterparties in
> order to identify both a willing buyer and seller whom
> the broker can match for a transaction to occur, which is
> referred to as a "fill" (or "trade" or "execution").
> (*Id.*)[16]

Plaintiff does not dispute that brokers customarily represent parties to both sides of a block trade, and that to arrange block trades, a broker must generally disclose the existence of a potential buyer or seller and their interest in a particular contract to potential counterparties.[17]   But plaintiff does dispute defendants' contention that they are entitled to judgment as a matter of law because their Rule 56.1 Statement establishes that brokers are permitted to disclose other confidential, nonpublic information such as a buyer's or seller's identity and trading history without prior consent.[18]   Plaintiff also argues that defendants' "Rule 56.1 statement fails to address the CFTC's allegations or any factual issues determinative of liability."[19]

---

[16]Defendants' Rule 56.1 Statement of Undisputed Facts in Support of Their Motion for Summary Judgment ("Defendants' Rule 56.1 Statement"), Docket Entry No. 25, p. 1 ¶¶ 1-2 (citing Valji Declaration, Docket Entry No. 26, pp. 2-3 ¶¶ 6-7).

[17]Plaintiff's Response to Defendants' Rule 56.1 Statement of Undisputed Facts, Docket Entry No. 36, p. 1 ¶ 2.

[18]<u>Id.</u>

[19]Plaintiff's Memorandum of Law in Opposition to Defendants'
(continued...)

Defendants' Rule 56.1 Statement and the Valji Declaration on which it is based make general statements about customary practices in block trading, but fail to cite evidence that bears on the specific transactions alleged in the Plaintiff's Complaint. Defendants' statements about customary practices in block trading are not capable of establishing that there is no genuine dispute about any material fact regarding specific transactions alleged in the Plaintiff's Complaint or that the law entitles them to judgment.   Because neither Defendants' Rule 56.1 Statement nor the Valji Declaration on which it is based are capable of eliminating issues of material fact about specific transactions alleged in the Plaintiff's Complaint, the court concludes that at this early stage of the case before discovery has taken place, it is not appropriate to consider matters outside of the pleadings or to evaluate defendants' motion as a motion for summary judgment under Rule 56. Accordingly, the court declines to consider Defendants' Rule 56.1 Statement and the Valji Declaration on which it is based.

---

[19](...continued)
Motion to Dismiss and for Summary Judgment on Counts I and II of the Complaint, and to Dismiss All Claims Against Gizienski ("Plaintiff's Memorandum"), Docket Entry No. 35, p. 10 ("Because Defendants do not provide any evidence of material facts entitling them to summary judgment, the CFTC is not required to come forward with admissible evidence at the pleading stage in support of its claims.").

-15-

## III. **Analysis of Defendants' Motion to Dismiss**

Defendants argue that Counts I and II should be dismissed for failure to state a claim because they "ignore the nature of the block futures trading that EOX and Gizienski brokered, and attempt to impose duties on defendants that were designed for competitive trading on an exchange, and do not apply to off-exchange block trading.[20] Plaintiff responds that its Complaint pleads duties of confidentiality and trust that defendants owed to EOX customers, and that its allegations fall squarely within the parameters of established law governing misappropriation of material, nonpublic information.[21]

### A. **Count I**

Count I of Plaintiff's Complaint alleges that

[d]uring the relevant period, Gizienski violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by, in connection with swaps, contracts of sale of commodities in interstate commerce, or contracts for future delivery on or subject to the rules of any registered entity: (i) intentionally or recklessly trading on the basis of material, nonpublic information in breach of a pre-existing duty owed to EOX customers; (ii) intentionally or recklessly tipping material, nonpublic information about EOX customers to Customer A in breach of a pre-existing duty owed to EOX customers; and/or (iii) intentionally or recklessly engaging, or attempting to engage, in acts, practices, or a course of business which operated or would operate as a fraud or deceit upon other persons.[22]

---

[20]Memorandum in Support of MD, Docket Entry No. 24, p. 11.

[21]Plaintiff's Memorandum, Docket Entry No. 35, pp. 6-7.

[22]Plaintiff's Complaint, Docket Entry No. 1, p. 17 ¶ 78.

-16-

Asserting that Gizienski committed the alleged acts within the scope of his employment,[23] plaintiff alleges that EOX is liable for Gizienski's violations,[24] and that a violation occurred each time Gizienski traded on the basis of material, nonpublic information or tipped material, nonpublic information to Customer A.[25]

Defendants argue that Count I should be dismissed because they did not owe duties of trust and confidentiality to EOX customers,[26] and because plaintiff alleges that they violated duties of trust and confidentiality to EOX's customers but that the misappropriation theory recognized in United States v. O'Hagan, 117 S. Ct. 2199 (1997), only applies "when an individual owes a *fiduciary* duty to the principal whose information was allegedly misappropriated."[27]   In their reply brief defendants argue for the first time that plaintiff's allegations that they owed a legal duty of trust and confidentiality to EOX's customers fail to satisfy the pleading standards of Rule 9(b).[28]

---

[23]Id. ¶ 79.

[24]Id.

[25]Id. ¶ 80.

[26]Memorandum in Support of MD, Docket Entry No. 24, p. 13.

[27]Id.

[28]Joint Reply of Defendants EOX Holdings LLC and Andrew Gizienski in Support of Their Motion to Dismiss and for Summary Judgment on Counts I and II of the Complaint as to Both Defendants, and to Dismiss All Claims Against Gizienski ("Defendants' Reply"), Docket Entry No. 46, p. 9.

1.   Applicable Law

Section 6(c)(1) makes it

unlawful for any person, directly or indirectly, to use
or employ, or attempt to use or employ, in connection
with any swap, or a contract of sale of any commodity in
interstate commerce, or for future delivery on or subject
to the rules of any registered entity, any manipulative
or deceptive device or contrivance, in contravention of
such rules and regulations as the Commission shall
promulgate by not later than 1 year after July 21, 2010,
provided no rule or regulation promulgated by the
Commission shall require any person to disclose to
another person nonpublic information that may be material
to the market price, rate, or level of the commodity
transaction, except as necessary to make any statement
made to the other person in or in connection with the
transaction not misleading in any material respect.

7 U.S.C. § 9(1).

Rule 180.1(a), promulgated pursuant to § 6(c)(1) in 2011

provides in pertinent part:

It shall be unlawful for any person, directly or
indirectly, in connection with any swap, or contract of
sale of any commodity in interstate commerce, or contract
for future delivery on or subject to the rules of any
registered entity, to intentionally or recklessly:

(1) Use or employ, or attempt to use or employ, any
manipulative device, scheme, or artifice to defraud;

(2) Make, or attempt to make, any untrue or misleading
statement of a material fact or to omit to state a
material fact necessary in order to make the statements
made not untrue or misleading;

(3) Engage, or attempt to engage, in any act, practice,
or course of business, which operates or would operate as
a fraud or deceit upon any person; . . .

17 C.F.R. 180.1(a).

-18-

The parties do not cite and the court has not found a case in which a broker has been held liable for misappropriating material, nonpublic information in violation of § 6(c)(1) and Rule 180.1. It is undisputed, however, that § 6(c)(1) of the CEA and Rule 180.1 are modeled on § 10b of the Securities Exchange Act ("Exchange Act") and Securities Exchange Commission ("SEC") Rule 10b-5, and that misappropriation of material, nonpublic information in breach of pre-existing duty violates § 10b and Rule 10b-5.   In adopting Rule 180.1, the CFTC stated:

> The language of CEA [§] 6(c)(1), particularly the operative phrase "manipulative or deceptive device or contrivance," is virtually identical to the terms used in [§] 10(b) of the Securities Exchange Act of 1934 ("Exchange Act").   The Supreme Court has . . . stated that the statute was "designed as a catchall clause to prevent fraudulent practices."
>
> Based on the language in Exchange Act [§] 10(b), the [SEC] promulgated SEC Rule 10b-5 . . .
>
> Given the similarities between CEA [§] 6(c)(1) and Exchange Act [§] 10(b), the Commission deems it appropriate and in the public interest to model final Rule 180.1 on SEC Rule 10b-5.   To account for the differences between the securities markets and the derivatives markets, the Commission will be guided, but not controlled, by the substantial body of judicial precedent applying the comparable language of SEC Rule 10b-5. . .
>
> Final Rule 180.1 prohibits fraud and fraud-based manipulations, and attempts: (1) By any person (2) acting intentionally or recklessly (3) in connection with (4) any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity (as defined in the CEA).   CEA [§] 6(c)(1) and final Rule 180.1, like Exchange Act [§] 10(b) and SEC Rule 10b-5 upon which they are modeled, focus on conduct involving manipulation and deception.

-19-

Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation [Final Rules], 76 Fed. Reg. 41,398, 41,399-400 (July 14, 2011). Acknowledging that it received comments regarding trading on the basis of material, nonpublic information, and that those comments used the label "insider trading," which can mean different things in different contexts, the CFTC recognized

> that unlike securities markets, derivatives markets have long operated in a way that allows for market participants to trade on the basis of lawfully obtained material nonpublic information. This final Rule does not prohibit trading on the basis of material nonpublic information except as provided in the following paragraph or otherwise prohibited by law. Further, the Commission reiterates that the final Rule does not create an affirmative duty of disclosure (except, as provided by [§] 6(c)(1), "as necessary to make any statement made to the other person in or in connection with the transaction not misleading in any material respect").

> Depending on the facts and circumstances, a person who engages in deceptive or manipulative conduct in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, for example by trading on the basis of material nonpublic information in breach of a pre-existing duty (established by another law or rule, or agreement, understanding, or some other source), or by trading on the basis of material nonpublic information that was obtained through fraud or deception, may be in violation of final Rule 180.1. The Commission believes that this application of the final Rule would be consistent with our responsibility to protect market participants and promote market integrity and with our statement in the [Notice of Proposed Rulemaking] that [§] 6(c)(1) is a broad catch-all provision, reaching any manipulative or deceptive device or contrivance.

-20-

Id. at 41,403 (citations omitted).[29]

The misappropriation theory developed under § 10b of the Exchange Act and Rule 10b-5 promulgated thereunder "holds that a person commits fraud 'in connection with' a securities transaction, and thereby violates § 10(b) and Rule 10b-5, when he

[29]The Notice of Proposed Rulemaking states:

Section 6(c)(1)

The text of CEA section (c)(1) is patterned after [§] 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). Exchange Act section 10(b) has been interpreted as a broad, "catch-all" prohibition on fraud and manipulation. Likewise, the Commission proposes to interpret CEA section 6(c)(1) as a broad, catch-all provision reaching fraud in all its forms — that is, intentional or reckless conduct that deceives or defrauds market participants. Subsection (c)(1) is also similar to the anti-manipulation authority granted to the Federal Energy Regulatory Commission ("FERC") in sections 315 and 1283 of the Energy Policy Act of 2005, amending the Natural Gas Act and the Federal Power Act, respectively, and the Federal Trade Commission ("FTC") in sections 811 and 812 of the Energy Independence and Security Act of 2007.

The SEC promulgated Rule 10b-5 to implement section 10(b) of the Exchange Act. The FERC and the FTC have promulgated rules based on SEC Rule 10b-5 to implement their respective statutory anti-manipulation authority, but have modified SEC Rule 10b-5 as appropriate to reflect their distinct regulatory missions and responsibilities.

Guided by [§] 6(c)(1)'s similarity to Exchange Act [§] 10(b), the Commission proposes an implementing rule that is also modeled on SEC Rule 10b-5, with modification to reflect the CFTC's distinct regulatory mission and responsibilities.

Prohibition of Market Manipulation [Notice of Proposed Rulemaking], 75 Fed. Reg. 67,657, 67,658 (November 3, 2010) (citations omitted).

misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information." O'Hagan, 117 S. Ct. at 2207. O'Hagan involved an appeal of a criminal conviction for insider trading. A lawyer named O'Hagan traded the securities of a company his client was targeting for a takeover. Although O'Hagan could not be held liable under the classical theory of insider trading because he owed no duty to the shareholders of the target company, the Court nevertheless found that he had violated § 10(b). The Court held that in trading the target company's securities, O'Hagan misappropriated confidential information regarding the planned corporate takeover, breaching "a duty of trust and confidence" that he owed to his law firm and client. Id. at 2208. The Court explained that trading on misappropriated information violated § 10(b) because it involved feigning fidelity to the source of the information and thus constituted a deceptive device. Id. at 2209. The Court explained that "full disclosure forecloses liability under the misappropriation theory," id., and that although there is "no general duty between all participants in market transactions to forgo actions based on material nonpublic information," id. at 2211-12, breach of a duty to the source of misappropriated information is sufficient to give rise to liability. Id.

-22-

2. Application of the Law to the Allegations

    (a) Defendants Fail to Establish They Had No Duty to Keep Information Confidential Between Customers

Defendants argue that

> Count I should be dismissed because its attempt to apply [§] 6(c)(1) and Regulation 180.1 to this case ignores the nature of the block trading that EOX brokered and basic principles of agency law. In particular, in the block futures trading that EOX and Gizienski brokered here, the broker, EOX represented *both* the buyer and seller, so there is no duty to keep information confidential between customers. Indeed, where, as here, a broker serves as a dual agent, agency law deems the agent's knowledge to be known by both principals.[30]

Defendants argue that because they had no duty to keep information confidential between customers, they could not have misappropriated material nonpublic information in violation of CEA § 6(c)(1), 7 U.S.C. § 9(1), or Regulation 180.1(a), 17 C.F.R. § 180.1(a).[31]

    Defendants argue that they did not owe duties of trust and confidentiality to EOX customers because "[b]y law, the block futures trading that EOX and Gizienski brokered here is non-competitive and private,"[32] "in the non-competitive, privately-negotiated block trading market, a broker, in this case EOX, represents *both* sides of every transaction, and the broker's customers know that the broker represents both sides[, . . . t]hus,

---

[30]Memorandum in Support of MD, Docket Entry No. 24, p. 13.

[31]Id. at 13-19.

[32]Id. at 14.

-23-

EOX acts as a dual agent in block futures trading,"[33] and under Texas law "when . . . there is a dual agent, operating with the consent and knowledge of both principals, the agent's knowledge is imputed to its principals."[34] Defendants argue therefore that they could not have misappropriated material, nonpublic information because their block trading customers "cannot have any reasonable expectation that the broker, EOX, would keep information shared with the broker confidential from the customer on the other side of the transaction."[35]

Defendants' argument that Count I fails to state a claim because as brokers of block trades they owed no duty of trust and confidentiality to their customers is not persuasive because it assumes facts and law that are not pleaded in Plaintiff's Complaint, e.g., that EOX represented both sides of every transaction alleged in the complaint, that the customers in every alleged transaction knew that EOX represented both sides, and that as a representative of both sides in every transaction EOX was a dual agent and under Texas law a dual agent's knowledge is imputed to both principals.[36] Moreover, the principle that a dual agent's

---

[33]Id. at 15.

[34]Id. at 16 (quoting Grant Thornton LLP v. Prospect High Income Fund, 314 S.W.3d 913, 924 (Tex. 2010)).

[35]Id.

[36]Defendants' contention that their Rule 56.1 Statement and the Valji Declaration, which are matters outside of the pleadings, (continued...)

-24-

knowledge is imputed to both principals only applies in the absence of fraud. See Grant Thornton, 314 S.W.3d at 925-26 & n. 18 (general rule of imputation does not apply where a dual agent has colluded with one principal to defraud the other). See also United States Fidelity & Guaranty Co. v. San Diego State Bank, 155 S.W.2d 411, 413 (Tex. Civ. App. — El Paso, 1941, writ ref'd w.o.m.) (stating that principals who share a "common agent," "acting as such with the knowledge and consent of each," will be charged with the agent's knowledge but that "[a] principal is not charged with the knowledge of the agent when such agent is acting in fraud of [the principal's] rights"). Because the violations of § 6(c)(1) and Rule 180.1 alleged in Plaintiff's Complaint sound in fraud, even assuming without deciding that Texas law of dual agency applies, Texas law would not support the defendants' motion to dismiss Count I of the Plaintiff's Complaint. The court concludes therefore that the defendants have failed to establish that Count I should be dismissed because they owed no duties of trust and confidence to EOX customers.

---

[36](...continued)
which the court has declined to consider, establish these facts is misplaced because the Valji Declaration states only that "[i]n block trading, it is customary for a broker or brokerage firm to act as broker for both the buyer and seller in a transaction, and this is well understood by customers of brokers in block trading," and that "[i]t is necessary for the broker to disclose . . . information [that constitutes an order] to potential counterparties in order to identify both a willing buyer and seller whom the broker can match for a transaction to occur." Valji Declaration, Docket Entry No. 26, pp. 2-3 ¶¶ 6-7). Neither Defendants' Rule 56.1 Statement nor the Valji Declaration provide evidence about any specific transaction alleged in the Plaintiff's Complaint.

(b)   The Misappropriation Theory is Not Limited to Fiduciary Relationships

Citing <u>O'Hagan,</u> 117 S. Ct. 2199, defendants argue that the Plaintiff's Complaint alleges "EOX owed 'duties of trust and confidentiality' to EOX customers 'by rule, by agreement, and by understanding,'" but "the duty of trust and confidence under the misappropriation theory has been applied only when an individual owes a *fiduciary* duty to the principal whose information was allegedly misappropriated."[37]   Defendants argue that

> extending the duty of trust or confidence under the misappropriation theory to these non-fiduciary relationships would unfairly transform violations of an exchange rule, a breach of a private contract, or a breach of an understanding between individuals into federal fraud.[38]

Arguments similar to that made by the defendants have been raised and rejected in cases holding that the predicate relationship in a case of this type need not always be a recognized, fiduciary or fiduciary-type relationship. <u>See, e.g., SEC v. Cuban,</u> 620 F.3d 551, 555 (5th Cir. 2010) ("Cuban II") (recognizing that "<u>O'Hagan</u> did not set the contours of a relationship of 'trust and confidence' giving rise to the duty to disclose or abstain and misappropriation liability."). <u>See also SEC v. Dorozhko,</u> 574 F.3d 42, 49 (2d Cir. 2009) ("[W]hat is sufficient is not always what is necessary, and none of the Supreme

---

[37]Memorandum in Support of MD, Docket Entry No. 24, p. 17.

[38]<u>Id.</u>

Court opinions . . . *require* a fiduciary relationship as an element of an actionable securities claim under [§] 10(b)").

Cuban was a civil enforcement action brought by the SEC under the misappropriation theory. See SEC v. Cuban, 634 F. Supp. 2d 713 (N.D. Tex. 2009) ("Cuban I"). Before dismissing the SEC's complaint under Rule 12(b)(6), the district court concluded that "a duty sufficient to support liability under the misappropriation theory can arise by agreement absent a preexisting fiduciary or fiduciary-like relationship." Id. at 725. The district court explained that the agreement "must consist of more than an express or implied promise merely to keep information confidential. It must also impose on the party who receives the information the legal duty to refrain from trading on or otherwise using the information for personal gain." Id. After assessing whether the SEC had adequately pleaded that "Cuban entered into an express or implied agreement . . . not to disclose material, nonpublic information," id. at 727, the court concluded that, "while the SEC adequately plead[ed] that Cuban entered into a confidentiality agreement, it [did] not allege that he agreed, expressly or implicitly, to refrain from trading on or otherwise using for his own benefit the information." Id. at 728. The court dismissed the SEC's action with leave to replead, id. at 731, but the SEC opted to appeal rather than amend, id. at 732.

On appeal, the Fifth Circuit vacated and remanded after holding that the district court had erred in deeming the complaint inadequate. Cuban II, 620 F.3d at 558. The court declined to address the analysis and legal conclusions in Cuban I, including the district court's determination that liability under the misappropriation theory of insider trading could arise where there was an express or implied agreement to maintain the confidentiality of material, nonpublic information and not to trade on or otherwise use the information. Id. The court explained that

> [g]iven the paucity of jurisprudence on the question of what constitutes a relationship of 'trust and confidence' and the inherently fact-bound nature of determining whether such a duty exists, we decline to first determine or place our thumb on the scale in the district court's determination of its presence or to now draw the contours of any liability that it might bring . . .

Id. Because the Fifth Circuit refused to disturb the Cuban I court's conclusion that "a duty sufficient to support liability under the misappropriation theory can arise by agreement absent a preexisting fiduciary or fiduciary-like relationship," 634 F. Supp. 2d at 725, the court concludes that Count I need not be dismissed because the duties of trust and confidentiality that plaintiff alleges the defendants owed to EOX customers "by rule, by agreement, and by understanding," are not fiduciary or fiduciary-type relationships.

(c) Plaintiff's Allegations of Duty of Confidentiality
Satisfies Rule 9(b)

In their reply brief defendants argue for the first time that plaintiff's allegations they owed a legal duty of trust and confidentiality fail to satisfy the Rule 9(b) pleading standards because Plaintiff's Complaint contains only generalized allegations that EOX had agreements with customers prohibiting the use or disclosure of confidential information except as necessary to facilitate block trades with third parties, that Gizienski's employment agreement provided for his access to confidential information and prohibited him from inappropriately disclosing it, and that Gizienski and EOX were subject to CFTC regulations and IFUS rules that impose duties of trust and confidence with respect to customer orders.[39] Defendants argue that these allegations fail to meet Rule 9(b)'s pleading standard because plaintiff has failed to offer the alleged agreements as evidence, failed to point to specific language in any agreement that establishes a duty of trust and confidentiality, failed to allege that any conduct described in the Complaint violates any particular agreement, and failed to cite any CFTC regulations or IFUS rules that impose duties of trust and confidentiality with respect to customer orders other than those that form the basis for Count II.[40]

---

[39]Defendants' Reply, Docket Entry No. 46, pp. 9-11.

[40]Id.

-29-

"Arguments raised for the first time in a Reply brief are generally waived." <u>Jones v. Cain,</u> 600 F.3d 527, 541 (5th Cir. 2010). <u>See also Morin v. Moore,</u> 309 F.3d 316, 328 (5th Cir. 2002) (quoting <u>Cavallini v. State Farm Mutual Auto Insurance Co.,</u> 44 F.3d 256, 260 n. 9 (5th Cir. 1995) ("[W]e do not consider issues raised for the first time in a reply brief."). A district court may rely on arguments presented for the first time in a reply brief as long as the court has provided the nonmovant adequate opportunity to respond. <u>See In re Enron Corporation Securities, Derivative & "ERISA" Litigation,</u> 491 F.Supp.2d 690, 704-05 (S.D. Tex. June 12, 2007) (quoting <u>Vais Arms, Inc. v. Vais,</u> 383 F.3d 287, 292 n. 10 (5th Cir. 2004) (addressing the issue of arguments raised for the first time in a reply brief in the context of a Rule 56 motion for summary judgment). Defendants filed their Reply Memorandum on March 6, 2019. Because defendants' Reply Memorandum has been on file for over six months, plaintiff has had ample opportunity to request leave to file a sur-reply, which the court would have granted, but has not done so. Accordingly, the court will consider the defendants' Rule 9(b) argument.

Defendants' argument that Plaintiff's Complaint fails to satisfy Rule 9(b)'s pleading standards is not persuasive because plaintiff does not need to establish the existence of such a duty to survive a motion to dismiss. <u>See SEC v. Lyon,</u> 529 F. Supp. 2d 444, 452 (S.D.N.Y. 2008). At this early stage of the litigation, plaintiff only needs to plead facts — albeit with the particularity

required by Rule 9(b) — that state a plausible claim for relief.
Id. (citing Twombly, 127 S. Ct. at 1974).  Plaintiff has alleged
facts with the requisite specificity to plausibly support its claim
that a confidential relationship arose between defendants and EOX
customers by alleging that "EOX maintained written agreements with
customers which prohibited EOX from using or disclosing
confidential customer information, such as the customer's trading
activity, except as necessary for the facilitation of block trades
with third parties,"[41] that

> Gizienski was employed by EOX pursuant to a written
> agreement that expressly provided for his access to
> confidential information relating to EOX customers,
> including the customers' trading histories, patterns,
> preferences, tendencies, and market positions.  The
> written agreement prohibited Gizienski from revealing,
> disclosing, or communicating such confidential
> information to anyone outside of EOX,"[42]

that at "all relevant times" Regulation 155.4(a)

> required that EOX establish and enforce internal
> procedures to insure that the firm and its affiliated
> persons, including Gizienski, did not use their knowledge
> of customer orders to trade ahead of or against the
> interests of . . . customers for their own benefit or
> that of their preferred customers,[43]

and that pursuant to IFUS rules "[p]arties involved in the
solicitation or negotiation of a block trade are prohibited from

---

[41]Plaintiff's Complaint, Docket Entry No. 1, p. 6 ¶ 21.

[42]Id. ¶ 22.

[43]Id. ¶ 23.

-31-

disclosing the terms of a block trade to non-involved parties prior to the block trade being publicly reported by IFUS."[44]

Even if the court were to conclude that the allegations did not satisfy Rule 9(b)'s pleading requirements, courts have held that Rule 9(b) is relaxed in insider trading cases where the facts about the alleged fraud are "peculiarly within the [defendants'] knowledge." SEC v. Payton, 97 F. Supp. 3d 558, 563 n. 3 (S.D.N.Y. 2015) (quoting Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972)). See also Cuban, 620 F.3d at 558 (acknowledging "the paucity of jurisprudence on the question of what constitutes a relationship of 'trust and confidence' and the inherently fact-bound nature of determining whether such a duty exists"). Segal explained that "while the rule is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded." 467 F.2d at 608. Plaintiff's Complaint satisfies the Segal directive by quoting statements that Gizienski made "[i]n the course of an IFUS interview," to substantiate plaintiff's allegations that "[a]s an experienced broker, Gizienski understood he was expected and obligated to maintain the confidentiality of customer information."[45]

---

[44]Id. at 7 ¶ 27.

[45]Id. ¶ 28.

-32-

The Fifth Circuit has recognized that one of "the central purposes of Rule 9(b) [is] 'to provide defendant with fair notice of claim.'" United States, ex rel., Rigsby v. State Farm Fire & Casualty Co., 794 F.3d 457, 467 (5th Cir. 2015) (quoting Shushany v. Allwaste, Inc., 992 F.2d 517, 521 (5th Cir. 1993)), aff'd, 137 S. Ct. 436 (2016). See also Frith v. Guardian Life Insurance Co., 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (first purpose of Rule 9(b) is "to ensure that the allegations are specific enough to inform a defendant of the act of which the plaintiff complains and to enable him to prepare an effective response and defense"). The Plaintiff's Complaint is not simply boilerplate and conclusory allegations; it provides defendants fair notice of the claims made against them by alleging specific communications that Gizienski had with Customer A regarding specific transactions of other customers. Whether relationships of trust and confidentiality actually existed between the defendants and the other customers need not be resolved now before the parties have conducted discovery. Regardless of how — or whether — the CFTC ultimately carries its burden of proving that defendants were bound by duties of trust and confidentiality to their customers in the alleged transactions, all that the CFTC need do now is state with particularity a plausible claim for the existence of such a duty. Because the CFTC has done so, the court concludes that Count I of the Plaintiff's Complaint should not be dismissed for failure to plead the existence of a duty of confidentiality with the particularity as required by Rule 9(b).

-33-

**B.     Count II**

Count II of Plaintiff's Complaint alleges that

[d]uring the relevant period, Gizienski violated 17 C.F.R. § 155.4(b) by: (i) disclosing to Customer A the orders of other customers held by EOX or any of its affiliated persons, when such disclosures were not necessary to the effective execution of the customer orders; and (ii) knowingly taking the other side of customer orders revealed to EOX or any of its affiliated persons without the customers' prior consent.[46]

Plaintiff also alleges that "[t]he foregoing acts, omissions, and failures of Gizienski occurred within the scope of his employment, office, or agency with EOX,"[47] that EOX is liable for Gizienski's violations of 17 C.F.R. § 155.4(b),[48] and that "each instance in which Gizienski unlawfully disclosed a customer order or traded against an EOX customer without the customer's consent is alleged as a separate and distinct violation of 17 C.F.R. § 155.4(b)."[49] Defendants argue that Plaintiff's Complaint does not allege a violation of Regulation 155.4(b)(1) or (b)(2) because that regulation does not apply to block trading in general or to Gizienski's conduct in particular.[50]

---

[46]Id. at 18 ¶ 83.

[47]Id. ¶ 84.

[48]Id.

[49]Id. ¶ 85.

[50]Memorandum in Support of MD, Docket Entry No. 24, pp. 19-22.

1.   <u>Applicable Law</u>

Regulation 155.4(b) provides, in relevant part:

No introducing broker or any of its affiliated persons shall:

(1)   Disclose that an order of another person is being held by the introducing broker or any of its affiliated persons, unless such disclosure is necessary to the effective execution of such order . . ., or

(2)   (i) Knowingly take, directly or indirectly, the other side of any order of another person revealed to the introducing broker or any of its affiliated persons by reason of their relationship to such other person, except with such other person's prior consent and in conformity with contract market rules approved by or certified to the Commission.

17 C.F.R. § 155.4(b).   Regulation 155.4 is intended to deter practices such as "frontrunning," "trading ahead," "bucketing," and the improper disclosure of customer orders. <u>See</u> Rules Relating to Intermediaries of Commodity Interest Transactions [Final Rules], 66 Fed. Reg. 53510, 53513-14 (October 23, 2001).   As a registered introducing broker and associated person, EOX and Gizienski are subject to Regulation 155.4. <u>See</u> 17 C.F.R. 155.1 ("the term affiliated person . . . of an introducing broker means . . . associated person or employee . . . of the introducing broker").

2.   <u>Application of the Law to the Alleged Facts</u>

(a)   Regulation 155.4(b)(1)

Defendants argue that Count II of Plaintiff's Complaint, alleging that Gizienski violated Regulation 155.4(b)(1) by disclosing to Customer A orders of other customers held by EOX or

-35-

its affiliated persons when such disclosures were not necessary to effect and execution of an order, should be dismissed because the Complaint does not allege that defendants disclosed an "order" as defined in the Complaint, because in block futures trading order disclosure is always necessary to effect an execution, and because the regulation prohibits only the disclosure of an "order," not the disclosure of other information such as a customer's identity or trading activity, all of which fall outside the Complaint's definition of "order" and therefore do not constitute a violation of Regulation 155.4(b)(1).[51]

The definition of the term "order" as used in Regulation 155.4(b)(1) is not the definition included in the Plaintiff's Complaint, but is the definition set forth in the regulations: "Order. This term means an instruction or authorization provided by a customer to a . . . introducing broker . . . regarding trading in a commodity interest on behalf of the customer." 17 C.F.R. § 1.3. Because Plaintiff's Complaint alleges that Gizienski disclosed orders to Customer A in violation of Regulation 155.4(b)(1) on multiple occasions by alleging that he disclosed Customer B's bid, Customer C's bid, offer activity, and attempt to buy puts, Customer E's offer, and Customer F's bid and purchase of puts,[52] defendants are not entitled to dismissal of the claim asserted against them under Regulation 155.4(b)(1).

---

[51]Id. at 19-20.

[52]Plaintiff's Complaint, Docket Entry No. 1, pp. 9-13 ¶¶ 35, 38, 40, 42, 44, 47, and 51.

(b)    Regulation 155.4(b)(2)

Defendants argue that Count II of Plaintiff's Complaint alleging that Gizienski violated Regulation 155.4(b)(2) by "knowingly taking the other side of customer orders revealed to EOX or any of its affiliated persons without the customers' prior consent,"[53] should be dismissed because

"[t]aking the other side," and Regulation 155.4(b)(2), have not been applied to brokered trades where the broker is not alleged to own or have any financial interest in either account in the transaction (*i.e.*, it has not been applied where the broker serves as an agent to the transaction, not a principal).[54]

Asserting that Regulation 155.4(b)(2) applies to principals, defendants argue that it is not applicable to them.[55]    Citing Stoller v. CFTC, 834 F.2d 262, 265-66 (2d Cir. 1987), defendants argue that "to the extent the CFTC is attempting to expand the reach of Regulation 155.4(b)(2) to cover agents, such an unprecedented expansion fails to state a claim because it would be unduly prejudicial to [them]."[56]    Defendants cite Stoller for its observations that while "[a]n agency is free . . . to interpret its governing statute case by case through adjudicatory proceedings rather than by rulemaking," but that if the agency "suddenly

[53]Id. at 18 ¶ 83.

[54]Memorandum in Support of MD, Docket Entry No. 24, p. 21.

[55]Id. at 22.

[56]Id.

-37-

changes its view . . . with respect to what transactions are "bona fide trading transactions," the agency may not charge a knowing violation of that revised standard and thereby cause undue prejudice to a litigant who may have relied on [the agency's] prior policy or interpretation."  834 F.3d at 265-66.

Defendants fail to cite any authority supporting their contentions that Regulation 155.4(b)(2) applies only to principals or that plaintiff's allegations against them in this case represent a sudden change in view capable of causing undue prejudice. Nothing in the language of Regulation 155.4(b)(2) limits its application to principals with an ownership or financial interest in a particular account, and none of the cases cited by the defendants either cite Regulation 155.4 or describe the CFTC's view of that regulation's scope.  Because defendants have failed to cite authority showing that the CFTC has expressed any view regarding the scope of Regulation 155.4(b)(2), defendants' contention that the allegations in Plaintiff's Complaint represent a sudden change of view capable of causing them undue prejudice has no merit. Accordingly, defendants have failed to show that they are entitled to dismissal of the claim asserted against them under Regulation 155.4(b)(2).

## IV. **Conclusions and Order**

For the reasons stated in § II, above, the court concludes
that defendants have failed to establish that their pending motion
should be considered as a motion for summary judgment under Federal
Rule of Civil Procedure 56, and for the reasons stated in § III,
above, the court concludes that defendants have failed to show that
Counts I or II of the Plaintiff's Complaint are subject to
dismissal under Federal Rule of Civil Procedure 12(b)(6) for
failure to state a claim for which relief may be granted.
Accordingly, Defendants' Motion to Dismiss and for Summary Judgment
on Counts I and II of the Complaint as to EOX and Gizienski (Docket
Entry No. 23) is **DENIED**.

**SIGNED** at Houston, Texas, on this 26th day of September, 2019.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-39-