IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 4:19-cv-02901 |
| | ) Hon. Sim Lake, Presiding |
| EOX HOLDINGS LLC and ANDREW GIZIENSKI, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO COMPEL DISCOVERY REGARDING THE SOURCE OF THE CFTC'S ALLEGED "DUTY OF TRUST AND CONFIDENTIALITY"**

Pursuant to Federal Rule of Civil Procedure (FRCP) 37(a)(1), Defendants EOX Holdings LLC and Andrew Gizienski respectfully move to compel Plaintiff Commodity Futures Trading Commission to respond to Defendants' Fourth Set of Interrogatories and Third Set of Production Requests directed at the source of the supposed duty of "trust and confidentiality" that the CFTC seeks to impose on Defendants.

**1.    Certification of Conferral**

Pursuant to FRCP 37(a)(1) and Local Rule 7.1.D., Defendants certify that they have in good faith conferred with Counsel for the Plaintiff regarding the failure to respond to Defendants' discovery in an effort to obtain those responses without court action, but that effort was not successful because Counsel could not agree about the disposition of this Motion.

**2.    Factual & Procedural Background.**

*The CFTC's press release* – On September 28, 2018, the CFTC issued a press release that touted the provenance of this case as an "insider trading" prosecution. Here are some excerpts:

> The CFTC's Complaint charges Defendants with misusing material, nonpublic information in connection with block trades of energy contracts on ICE Futures US….
>
> Director of Enforcement James McDonald, stated: "Illegal use of inside or

1

> otherwise confidential information significantly undermines market integrity and harms customers in our markets. Today's enforcement action shows that the Commission will vigorously pursue this type of misconduct. To that end, we are also announcing an Insider Trading and Information Protection Task Force—with members from our offices in Chicago, Kansas City, New York, and Washington, DC—to root out this nefarious conduct from our markets." …
>
> This case was brought in connection with the CFTC Division of Enforcement's Insider Trading and Information Protection Task Force…. (Exhibit 1: 9/28/18 CFTC Press Release, https://www.cftc.gov/PressRoom/PressReleases/7811-18 (last visited June 30, 2020).

Obviously such a publicity splash, and the charges themselves necessarily, inflict serious damage, reputational and otherwise, on Defendants, especially Andrew Gizienski, the individual broker subject to these serious charges. This is so even though the events underlying the case were by then four-and-a-half to five years old, having occurred from August 2013 through May 2014. (ECF 1: *See, e.g.,* Complaint ¶ 1, p. 1.)

*This is a case of first impression* –The CFTC's Complaint alleged a novel duty of "trust and confidentiality" that it says Defendants violated – specifically a supposed duty not to disclose information about one counterparty to an energy derivative block trade to the other counterparty. (*Id.*, ¶ 2, p. 1.)

The novelty arises partly from the fact that such a duty has never before been conceived for, let alone applied to, block trading in the futures, options and derivatives industries.

There can be no reasonable dispute about that. Early in this case, under close questioning by District Judge Daniels in the hearing on transfer from the Southern District of New York, the CFTC made the following admissions:

> THE COURT: Can you point to or have you cited any cases that have applied the rules to block trading in this way? I have just never heard of this theory being applied to this circumstance.
>
> [CFTC COUNSEL]: I am not aware of a misappropriation theory case that has been litigated in the context of block trading. I believe this is the first.

2

> THE COURT: I have never thought of it in this context because I have never seen it in this context. It doesn't mean it doesn't apply in this context. Obviously, it's easier for me to look at case law or application of these rules in previous situations. I rarely like to be the first judge to do anything. I like to be the one that is relying on circumstances that occurred in the past, because there is 200 years of history before I got here.
>
> It is somewhat of a novel theory to apply these rules to block trading.
>
> [CFTC COUNSEL]: It is, and I believe in this context, a case has not ever been brought before.
>
> With respect to the misappropriations allegations, that's being brought under Section 6(c) of the Commodity Exchange Act and CFTC regulation 180.1.

[Exhibit 2: ECF Docket No. 50: 4/11/19 Tr., p. 38-39].

\* \* \* \*

> THE COURT: As you say, the application of these two sections to block trading, there is not another example out there that I can look at?
>
> [CFTC COUNSEL]: With respect to the CFTC, I don't believe that a misappropriation theory case has ever been brought in block trading. I don't believe that the Securities and Exchange Commission has brought one. I am not aware of precedents, is what I am saying. [*Id.*, p. 53].[1]

It is therefore no exaggeration to say that the source of the supposed duty that the CFTC seeks to impose on block trading in derivatives is a key starting point in this case.

*This Court's ruling on the absence of allegations of the source of the supposed duty* – In its Dismissal/Summary Judgment Ruling, this Court recognized that absence of directly controlling precedents, albeit in part recognizing SEC law as the conceptual source:

> The parties do not cite and the court has not found a case in which a broker has been held liable for misappropriating material, nonpublic information in violation

---

[1] The fact the SEC has apparently never brought a misappropriation in the block trading is highly instructive given that block trading is a massive part of equities trading, measured in the billions of trading dollars and millions of stock shares, all by highly sophisticated traders. (Exhibit 3: Bloomberg Block Trade Analysis – 2004-2014.) New York Stock Exchange Rule 72.10: "Definition of a Block - For purposes of this rule, a 'block' shall be at least 10,000 shares or a quantity of stock having a market value of $200,000 or more, whichever is less." https://nyseguide.srorules.com/rules/document?searchId=360119061&treeNodeId=csh-da-filter!WKUS-TAL-DOCS-PHC-%7B4A07B716-0F73-46CC-BAC2-43EB20902159%7D--WKUS_TAL_19401%23teid-148 (last visited June 29, 2020).

of § 6(c) (1) and Rule 180.1. [ECF Dkt No. 74, p. 19].

The CFTC's Complaint is of no help because it omits any allegation about the source of this supposed duty. In dealing with that omission, this Court ruled that it was a matter for discovery:

> Whether relationships of trust and confidentiality actually existed between the defendants and the other customers need not be resolved now before the parties have conducted discovery. Regardless of how - or whether - the CFTC ultimately carries its burden of proving that defendants were bound by duties of trust and confidentiality to their customers in the alleged transactions, all that the CFTC need do now is state with particularity a plausible claim for the existence of such a duty. [ECF Dkt No. 74, p. 33.]

*The initial discovery about the source of the supposed duty* – So Defendants asked the CFTC to disclose the source(s) of the alleged duty: (Exhibit 4: Dfs' 3rd Ints. No 7, p.1.)[2]

In response, the CFTC first identified the massive body of SEC "insider trading" law as the source of the duty it seeks to impose here.

> Defendants owed duties of trust and confidentiality to EOX customers by law, including, but not limited to: …
>
> • §10b of the Securities Exchange Act and Securities Exchange Commission Rule 10b-5
>
> • *United States v. O'Hagan,* 521 U.S. 642 (1997); *SEC v. Cuban*, 620 F.3d 551 (5th Cir. 2010); *SEC v. Dorozhko*, 574 F.3d 42 (2d Cir. 2009); *SEC v. Obus,* 693 F.3d 276 (2d Cir. 2001); *United States v. Falcone*, 257 F.3d 226 (2d Cir. 2001), *United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991); *Steginsky v. Xcelera Inc.*, 741 F.3d 365 (2d. Cir. 2014); *United States v. Whitman*, 904 F. Supp. 2d 369 (S.D.N.Y. 2012). aff'd 555 Fed. App'x 98 (2d. Cir 2014); *United States v. McGee*, 763 F.3d 304 (3d. Cir. 2014); *SEC v. Yun*, 327 F.3d 1263 (11th Cir. 2003); *SEC v. Kirch*, 263 F. Supp. 2d 1144 (N.D. Ill. 2003).

(Exhibit 5: CFTC 3d Int. Response 7(1), pp. 5-6.)

---

[2] Defendants' Interrogatory No. 7 asked that the CFTC "[i]dentify each 'law,' 'rule,' "agreement' and 'understanding' pursuant to which you contend Defendants owed duties of trust or confidentiality, and each EOX customer to whom you contend owed such duties as a result of each 'law,' 'rule,' 'agreement' and/or 'understanding,'" as alleged in paragraph 20 of the complaint." (*Id.*).

4

*The CFTC's assertion of CME & FINRA Rules* – But, the CFTC also responded that this supposed duty arose

"by rule including but not limited to IFUS Rule 4.02(i)"[3] (*Id.*, ¶ 7(2), p. 6); and

"by understanding, including but not limited to ... CME Rule 526 [and] FINRA Rules 2010, 2020, 2060."[4] (*Id.*, ¶ 7(4), pp. 8 & 10).

The CFTC's invocation of IFUS Rule 4.02(i) is no surprise because what the CFTC seeks in this case is to criminalize alleged violations of at least this IFUS trading rule, a private organization though it may be. Cf *Bernstein v. Lind-Waldock Co.*, 738 F.2d 179, 186 (7th Cir. 1984) (a securities or futures exchange is a private association, and though heavily regulated by the federal government is not a government agency). Whether that is an overreach is a debate for another day.

But it is the CFTC's odd invocation of the CME and FINRA Rules that is puzzling and gives rise to the greater part of this discovery dispute.

First, the block trades in this case occurred on IFUS, not CME. It surely stretches, indeed breaks, the limits of fairness, common sense and notice to apply rules of a different trading entity. The CFTC's implied assertion that when one trades on IFUS, one is bound by CME Rules is, to put it plainly, ridiculous.

Second, FINRA also has nothing to do with this case. Defendants are not and have never

---

[3] In the CFTC's jargon "IFUS" is the Intercontinental Futures Exchange. [See Complaint, ECF 1, ¶ 14, p. 4]. IFUS Rule 402(i) is attached as Exhibit 6. That usually calls itself "ICE" as does the entire industry, but Defendants will use Plaintiff's acronym "IFUS" so as to avoid acronymic confusion.

[4] "CME" refers to the Chicago Mercantile Exchange, a Chicago exchange that is part of CME Group, that in turn is comprised of four exchanges (CME, CBOT, NYMEX & COMEX) making it the world's largest financial derivatives exchange organization. https://www.cmegroup.com/. "FINRA" is the "government-authorized not-for-profit organization that oversees U.S. broker-dealers." https://www.finra.org. *See* Discussion, *infra*, pp. 5-6.

Copies of CME Rule 526 and FINRA Rules 2010, 2020, and 2060 are attached respectively as Exhibit 7 (www.cmegroup.com/content/dam/cmegroup/rulebook/CME/I/5/5.pdf), and Exhibit 8 (https://www.finra.org/rules-guidance/rulebooks/finra-rules/2000) (both last visited June 30, 2019).

been FINRA members. And, energy derivatives transactions are at issue, they are completely outside the jurisdiction of FINRA which is regulated by the SEC, 15 U.S.C. § 78s, (esp. Subsection (b)). *See*, *e.g.*, *Bd. of Trade of City of Chicago* v. *S.E.C.*, 187 F.3d 713, 716 (7th Cir. 1999) ("Congress allocated securities and options on securities to exchanges regulated by the SEC, futures and options on futures to boards of trade regulated by the CFTC."); and *Chicago Mercantile Exch.* v. *S.E.C.*, 883 F.2d 537, 539 (7th Cir. 1989) ("The CFTC regulates futures and options on futures; the SEC regulates securities and options on securities; jurisdiction never overlaps.")

Even FINRA itself warns investors of that important difference:

The Commodity Futures Trading Commission (CFTC) is the federal government agency that regulates the commodity futures, commodity options, and swaps trading markets. Anyone who trades futures with the public or gives advice about futures trading must be registered with the National Futures Association (NFA), the independent regulator for anyone who trades futures with the public. (Exhibit 9: www.finra.org/investors/learn-to-invest/types-investments/commodity-futures (last visited June 30, 2011).

So, the CFTC is seeking to impose duties on Defendants arising from an organization they didn't belong to, that didn't have any jurisdiction over them, and most fundamentally that regulates a different industry.

Instead, it is the National Futures Association (NFA) that registers and regulates futures, options, swaps, and derivative professionals and promulgates limited rules applicable to trading practices of their members. (Exhibits 10 & 11: Defendants' NFA Registration pages.) *Intl Fcstone Fin., Inc. v. Jacobson*, No. 19 C 1438, at *12 (N.D. Ill. June 4, 2019), *appeal dismissed on other grounds*, 2020 WL 881270, No. 19-2111, Slip Op. at *3 n. 1 (7th Cir. Feb. 24, 2020) ("FINRA, as a self-regulatory organization in the securities market, is overseen by the U.S. Securities and Exchange Commission and has a distinct sphere of influence that Congress has carefully separated from the CFTC's sphere.") Both Defendants were NFA members; Defendant EOX still is. And thus the question arises about what NFA rules might apply here.

The answer is none. NFA has no rules governing block trading. None. This obviously puts the CFTC in a quandry in that the self-regulatory organization that regulates the futures, options and derivatives industry and of which Defendants are members have no prohibitions of the conduct the CFTC says is illegal.

The sum of this is puzzling. The CFTC apparently wants to tag Defendants with confidentiality obligations imposed by rules of FINRA, a self-regulatory organization whose rules do not apply and of which Defendants are not members, and CME, an exchange on which the transactions at issue did not occur, even though the NFA, the self-regulatory organization for the investment vehicles at issue here, have no such even remotely similar rules applicable to block trades, indeed, almost no rules of about block trades at all.

It seems a fair argument that the CFTC is making this up as it goes along. More on this later in the case as well.

*Defendants' Discovery of Rules of Other Exchanges.–* Thus, given the CFTC's surprise invocation of the CME and FINRA rules that clearly cannot apply, along with the inapplicability of any NFA rules, Defendants Fourth Set of Interrogatories and Third Set of Production Requests asked about rules of other "registered entit[ies]" that may provide a source that supposed duty or that might negate that source. (Exhibit 12, Dfs' 4th Ints. & 2d RFPs, esp. Ints 1 & 2, pp. 5&6.):

> 1. For each and every Exchange, Board of Trade or Other Trading Market Entity, identify each and every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto, that prohibits or at any time prohibited, limits or limited, or regulates or regulated in any way whatsoever the disclosure of information by one party to any counterparty and/or potential counterparty to a block trade and/or potential block trade (including but not limited to the types of disclosures involved in this case that You are contending were improper). If any such entity does not have or did not have any such rule or other published mandatory policy, state "None" for that entity.
>
> 2. For each and every Exchange, Board of Trade or Other Trading Market Entity, identify each and every rule and/or other policy or guidance of any kind

7

>whatsoever, and any amendment thereto (including but not limited to CME Rule 532, CBOT Rule 532, NYMEX Rule 532, COMEX Rule 532, and ICE Europe Futures Rule G.4) that (1) exempts parties and counterparties in block trades and/or the negotiation of block trades from any of the any rule or other published mandatory policy that prohibits or at any time prohibited, limits or limited, or regulates or regulated in any way whatsoever the disclosure of information by one party to any counterparty and/or potential counterparty to a block trade and/or potential block trade, including the types of disclosures involved in this case that You are contending were improper, and/or (2) permits them, whether conditionally or not, to disclose such information and/or to engage in pre-execution communications, including communications for the purpose of discerning interest in the execution of a transaction prior to the terms of an order being submitted for execution. If any such entity does not have or did not have any such rule or other published mandatory policy, state "None" for that entity

Defendants' simultaneous production requests required the production of the rules and all related documents and communications regarding their promulgation, submission to the CFTC, approval and amendment. (*Id.*, RFPs 1-5, pp. 6-8.) The Interrogatory includes CME Rules because an important question is what was the form of Rule 526, that the CFTC cites for the supposed duty, in 2013-14 when the instant trades occurred.

*Defendants also requested production of "insider trading" precedent materials* – Given the CFTC's admission that there are no precedents for this case, and because the CFTC's press release nevertheless trumpeted the connection between this case and its insider trading "task force," Defendants also requested the production of all documents related to any other investigation or proceeding by the CFTC into block trading or "insider trading," including two cases the CFTC has touted as part of its "Insider Trading Task Force. (*Id.*)

*The CFTC's stonewalling* – The CFTC made a blanket objection to all Defendants' discovery requests, interrogatories and production requests alike. The refusal to answer was asserted on various grounds: burden, proportionality, availability from other sources, but most startlingly "relevancy." (Exhibit 13: CFTC's Int. Resps., *passim*).

On essentially the same grounds, it also declined to produce any documents or other materials. (Exhibit 14: CFTC's RFP Resps., *passim*.) The answers to Production Requests 2, 3 and 6 were also incorrect insofar as they stated that Plaintiff had already produced responsive documents "CFTC-02-000000933-2926" (*Id.*, Responses 2&3, pp. 5-6), and "CFTC-02--0000000932-1062." (*Id.,* Response 5, p. 8). In fact, those document ranges contain nothing responsive and are merely some bank records, correspondence by IFUS, and trade documents, including a 1500 page "trade register" that states the details of hundreds of trades (CFTC-02-0000001411- 2910).[5] Nothing from other exchanges and no other insider case materials.

3.      **Argument.**

As noted above, the CFTC made blanket objections on various grounds: burden, proportionality, availability from other sources, but most startingly "relevancy." (Exhibit 13: CFTC's Int. Resps., *passim*). All are meritless.

*Burden and availability from other sources* – These are baseless objections. The CFTC is intimately involved in the approval of the rules of registered entities, and reviews all rules, new or amended of registered entities including IFUS, CME and other exchanges. The CFTC website, www.cftc.gov/IndustryOversight/RuleAmendments/index.htm (last visited June 30, 2020) summarizes that process which proceeds under Part 40 of its Regulations. 17 CFR Pt 40, § 40.1 *et seq.* Although there is a procedure for "self-certification" of new rules and rule changes, CFTC retains final review and approval authority over new and amended exchange rules. The statutory authority appears in Sections 5c(c) and 8a(7) of the Commodity Exchange Act, as amended (CEA), 7 U.S.C. 7a-2(c) & 12a(7) . *See U.S. Futures Exch., L.L.C. v. Bd. of Trade, Inc.*, 953 F.3d 955, Slip

---

[5] These unresponsive materials are too voluminous to attach to this Motion. Hopefully, the CFTC will not contest this description and the unresponsiveness, but Defendants stand ready to submit these materials to the Court for review if needed.

9

Op. at *20 (7th Cir. Mar. 23, 2020) ("[T]he Commission has clear and adequate regulatory authority to approve exchange rules.")[6]

Thus, the CFTC is the central clearing house for rule review, and the burden of forcing Defendants to separately seek discovery from each registered entity would be substantially greater than requiring the CFTC to respond to these requests about information and materials it already has, no doubt in organized and readily accessible form.

*Custody and Control* – The CFTC says that the requests seek information not in its custody and control. This is another baseless objection. First, the Interrogatories seeks information, and as shown above, the CFTC has significant information regarding block trading rules. So much is shown by its citation of the IFUS and CME block trading rules.

In regard to the production requests, Instruction No. 8 limits the production to items in the CFTC's custody and control, a limitation specifically included in Federal Rule of Civil Procedure 34(a)(1) ("A party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control…."). Because the CFTC has substantial authority over the rules of registered entities it is obviously has possession, custody and control of information and materials about the narrow block trading rules at issue.

*Relevancy* –. "Generally, the scope of discovery is broad and permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed, R Civ. P. 26(b)(1); *see Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). A discovery request is relevant when the request seeks admissible evidence or "is reasonably calculated to lead to the discovery of admissible evidence." *Crosby v. Louisiana Health Service and Indem. Co.*, 647 F.3d 258, 262 (5th

---

[6] The CFTC also reviews new and amended rules of the NFA. CEA Subsections 17(a) & (j), 7 U.S.C. 21(a) & (j).

Cir. 2011) (citing & quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004) (citation and internal marks omitted).

It should be apparent from the above analysis that the block trading rules of "registered entities,"[7] are relevant within the meaning of Rule 26(b)(1) to the question of the source of the duty that the CFTC seeks to impose. The CFTC cites the IFUS Rule 402(i), but then goes beyond to the rules of other entities–CME and FINRA-for further support. Thus, the CFTC's choices create the issue of whether and how rules of all exchanges and other trading entities might impact the source and scope of the supposed duty, but for example, permit the disclosure of counterparty information with or without consent, or setting different procedural steps for the disclosure or meaning of consent, and setting different requirements for obtaining consent.

*Overbreadth* – The CFTC objects on the grounds of overbreadth. On its face, this objection is frivolous. Plaintiff's discovery requests ask pointedly about exchange rules regarding disclosure of information by one counterparty to a block trade to the other counterparty. This is a narrow and specific request.

*Proportionality* – This is no minor case. Adding up the potential civil penalties alone arising from the "at least twenty instances" of alleged impropriety, each alleged as a separate violation against Defendants, the total is staggering–somewhere between $2 Million and $20 Million–pursuant to Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012). (ECF 1: Complaint, ¶¶ 53, 80, & Relief Request, ¶ G).

The CFTC is a regulatory juggernaut that requested a Congressional appropriation for 2020 of $315 Million with $56 Million earmarked for the Division of Enforcement which prosecutes

---

[7] The term "registered entity" is defined in Section 1a(40), 7 U.S.C. 1a(40), to include two kinds of board of trade designated as a contract market (i.e., an exchange), derivatives clearing organizations, swap execution facilities, and swap data repositories. There is no need to ask about the NFA, at least not yet; we already know that it has no block trading rules. There are also no other self-regulatory organizations to ask about.

11

this case. (https://www.cftc.gov/sites/default/files/2019-03/cftcbudget2020.pdf (last visited June 30, 2020). It obviously has ready access to the information and materials sought, certainly easily categorized, pulled and produced, and the resources to do so. These narrowly tailored discovery requests are certainly proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the obvious fact that the likely benefit of this discovery far outweighs the trivial production burden and expense on the CFTC. FRCP 26(b)(1).

*Privileges* – Plaintiff's blanket privilege objections (attorney/client; deliberative, investigative & law enforcement, etc.) are frivolous. As an experienced litigant, the CFTC knows full well that Rule 26(b)(5) requires it "to describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

It has failed to comply with that command.

Moreover, given the CFTC's intimate involvement with exchange rule review and approval, it is unquestionable that there must be non-privileged materials that can be produced.

*Insider Trading Materials* – Finally, the discoverability of the CFTC's insider trading materials (Exhibit 13: Defendants' RFP 6, p. 8) fairly arises from the CFTC's citation of SEC insider trading law as a source of the duty, as well as its own chest-pounding press release that cloaked this case with its "insider trading" program.

This Court's Dismissal/Summary Judgment ruling quotes the CFTC's July 2011 Federal Register release about Regulation 180.1 that includes the following admission by the CFTC:

> To account for the differences between the securities markets and the derivatives markets, the Commission will be guided, but not controlled, by the substantial body

of judicial precedent applying the comparable language of SEC Rule l0b-5…

[ECF 74, pp. 19-20 (quoting 76 Fed. Reg. 41,398, 41,399-400 (July 14, 2011)].

July 2011 is a long time ago but this vague statement introduces nothing but confusion and uncertainty into his important industry which is entitled to know with reasonable certainty what rules it must play by. This statement is hardly guidance for the investment community. What "guidance"? To what extent? What has the CFTC said about this in the interim?

Given that the contours of insider trading in the futures, options and derivatives arena is fraught with uncertainty, therefore, policy statements, briefs and filings in other cases, and all related materials are clearly relevant to figuring out what the CFTC's own view is of the breadth and scope of the statutes and regulations it seeks to enforce for the block trades at issue here.

The CFTC should be ordered to respond in full to all Defendants' interrogatories and production requests forthwith.

## CONCLUSION

WHEREFORE, Defendants move to compel the Plaintiff Commodity Futures Trading Commission to respond to Defendants' Interrogatories and Production Requests directed at the source of the supposed duty of "trust and confidentiality" that the CFTC seeks to impose on Defendants.

Date:   June 30, 2020                               Respectfully submitted,

  s/ Constantine John Gekas
Constantine John Gekas
ATTORNEY-IN-CHARGE
State of Illinois Bar No. 3126670
Southern District of Texas Bar No. 2799779
 CJG@gekaslaw.com
GEKAS LAW LTD.
33 North LaSalle Street STE 2220
Chicago, Illinois 60602
Tel: (312) 726-4501; Fax: (312) 726-4505
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on June 30, 2020, I electronically filed the foregoing document using the Court's CM/ECF system, which will automatically send notifications of such filing to the following:

>Candice Haan (chaan@cftc.gov)
>Joseph Konizeski (jkonizeski@CFTC.gov)
>Robert Howell (rhowell@cftc.gov)
>U.S. COMMODITY FUTURES TRADING COMMISSION
>525 W. Monroe, Suite 1100
>Chicago, Illinois 60660

    /s/ Constantine John Gekas