**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 4:19-cv-02901** |
| | ) **Hon. Sim Lake, Presiding** |
| **EOX HOLDINGS LLC and ANDREW GIZIENSKI,** | ) |
| | ) |
| **Defendants.** | ) |

**INDEX OF EXHIBITS**

| Tab | Description |
|---|---|
| 1. | CFTC Release No. 7811-18 – "CFTC Charges Block Trade Broker with Insider Trading" (available at https://www.cftc.gov/PressRoom/PressReleases/7811-18 - last visited June 30, 2020). |
| 2. | Transcript of 4/11/19 Proceedings before Hon. George B. Daniels, District Judge for the South District of New York in *CFTC v. EOX Holdings LLC & Andrew Gizienski*, Case No. 19-cv-8890 (GBO). |
| 3. | Kapil Phadnis, "Reading the Electronic Tape: Block Trading in Today's Electronic Markets" at (https://data.bloomberglp.com/tradebook/sites/6/91716_BlockTrading-WP.pdf) (last visited June 30, 2020). |
| 4. | 10/22/19 - Defendants' Third Set of Interrogatories to Plaintiff. |
| 5. | 11/21/19 - Plaintiff's Response to Defendants' Third Set of Interrogatories. |
| 6. | ICE Futures U.S., Inc., Trading Rules 4.00 *et seq.* including Rule 4.02(i) (available at https://www.theice.com/publicdocs/rulebooks/futures_us/4_Trading.pdf - last visited June 30, 2020). |
| 7. | Excerpts from Chicago Mercantile Exchange (CME) Rulebook, Chapter 5, Trading Qualifications and Practices, including Rule 526 "Block Trades" (available at https://www.cmegroup.com/content/dam/cmegroup/rulebook/CME/I/5/5.pdf - last visited June 30, 2020). |
| 8. | FINRA Rules 2010 (Standards of Commercial Honor and Principles of Trade), 2020 (Use of Manipulative, Deceptive or Other Fraudulent Devices), and 2060 (Use of Information Obtained in Fiduciary Capacity (available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/2000 - last visited June 30, 2020). |

1

9.      FINRA Investment Advisory – "Commodity Futures" (available at
        www.finra.org/investors/learn-to-invest/types-investments/commodity-futures  (last
        visited June 30, 2011).

10.     NFA Online BASIC Registration Page of Defendant Andrew Gizienski (available at
        www.nfa.futures.org/BasicNet/basic-profile.aspx?nfaid=41Io3ieKbUA%3D – last
        visited June 30, 2020).

11.     NFA Online BASIC Registration Page of Defendant EOX Holdings LLC
        www.nfa.futures.org/BasicNet/basic-profile.aspx?nfaid=irCMxLFcw%2Bw%3D –
        last visited June 30, 2020).

12.     3/9/20 - Defendant EOX Holdings LLC's Fourth Set of Interrogatories and Second
        Set of Production Requests.

13.     4/8/20 - Plaintiff's Response to Defendants' Fourth Set of Interrogatories.

14.     4/8/20 - Plaintiff's Response to Defendants' Second Set of Requests for Production.

                                        * * * *

Date:   June 30, 2020                    Respectfully submitted,

                                          s/ Constantine John Gekas
                                         Constantine John Gekas
                                         ATTORNEY-IN-CHARGE
                                         State of Illinois Bar No. 3126670
                                         Southern District of Texas Bar No. 2799779
                                          CJG@gekaslaw.com
                                         GEKAS LAW LTD.
                                         33 North LaSalle Street STE 2220
                                         Chicago, Illinois 60602
                                         Tel: (312) 726-4501; Fax: (312) 726-4505

                                         *Counsel for Defendants*

**EXHIBIT 1**

RELEASE Number
7811-18

**September 28, 2018**

## CFTC Charges Block Trade Broker with Insider Trading

### Broker's Firm Is Additionally Charged with Supervisory and Recordkeeping Failures

**Washington, DC** – The Commodity Futures Trading Commission (CFTC or Commission) today filed a civil enforcement action in the U.S. District Court for the Southern District of New York against **EOX Holdings LLC** (EOX), an Introducing Broker (IB), and one of its registered Associated Persons (AP), **Andrew Gizienski** of Houston, Texas.  The CFTC's Complaint charges Defendants with misusing material, nonpublic information in connection with block trades of energy contracts on ICE Futures US, in violation of the Commodity Exchange Act (CEA) and CFTC Regulations.  The Complaint also charges EOX with failing to maintain certain required records and failing to diligently supervise its employees.

**CFTC Director of Enforcement Comments**

Director of Enforcement James McDonald, stated:  "Illegal use of inside or otherwise confidential information significantly undermines market integrity and harms customers in our markets.  Today's enforcement action shows that the Commission will vigorously pursue this type of misconduct.  To that end, we are also announcing an Insider Trading and Information Protection Task Force—with members from our offices in Chicago, Kansas City, New York, and Washington, DC—to root out this nefarious conduct from our markets."

According to the Complaint, beginning in or about August 2013 through May 2014, Gizienski exercised discretionary trading authority over an account belonging to a friend, while continuing to broker block trades for other EOX customers and while continuing to have access to material, nonpublic information relating to EOX customers.  The Complaint alleges that, during this period, Gizienski disclosed to his friend confidential information about other customers, such as their identities, trading activity, and positions, in breach of a pre-existing duty of trust and confidence owed to those customers.  As further alleged, Gizienski also traded the discretionary account while in possession of, and on the basis of, confidential information relating to EOX customers.

The Complaint further alleges that EOX waived a company policy prohibiting brokers from exercising discretion over customer accounts to allow Gizienski to trade on behalf of his friend, but failed to institute policies or procedures to monitor Gizienski's trading and to minimize the readily apparent conflicts of interest.  Among other things, the Complaint alleges that, since at least 2013, EOX has failed to establish, implement, or enforce policies or procedures governing its brokers' handling of customer orders, the preparation and retention of required records, and the protection of confidential customer information.  In addition, the Complaint alleges that, since at least 2013, EOX has failed to keep all pre-trade communications with customers, as well as adequate written records of customer orders.  EOX's recordkeeping failures hindered the CFTC's ability to fully investigate potential violations of the CEA and CFTC Regulations.

In its continuing litigation, the CFTC seeks civil monetary penalties, permanent registration and trading bans, and a permanent injunction against further violations of the CEA and CFTC Regulations, as charged.

The CFTC thanks the staff of the Alberta Securities Commission for their cooperation and assistance in this matter.

This case was brought in connection with the CFTC Division of Enforcement's Insider Trading and Information Protection Task Force, and CFTC staff members responsible for this case are Daniel Burstein, Heather Dasso, Robert Howell, Lindsey Evans, Scott Williamson, and Rosemary Hollinger.

\*   \*   \*   \*   \*   \*

**CFTC's Insider Trading & Information Protection Task Force**

The CFTC's Insider Trading & Information Protection Task Force is a coordinated effort across the Division to identify and charge those who engage in insider trading or otherwise improperly use confidential information in connection with markets regulated by the CFTC.

The Commission will thoroughly investigate and, where appropriate, prosecute instances in which individuals have abused access to confidential information—for example, by misappropriating confidential information, improperly disclosing a client's trading information, front running, or using confidential information to unlawfully prearrange trades. In addition, the Commission will ensure that its registrants develop and enforce policies prohibiting the misuse of confidential information, as they are required to do under the law.

You can report suspicious activities or information, such as possible violations of commodity trading laws, to the CFTC Division of Enforcement via a Toll-Free Hotline 866-FON-CFTC (866-366-2382) or file a tip or complaint online.

**EXHIBIT 2**

J4B8CFTA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

COMMODITY FUTURES TRADING
COMMISSION,

                    Plaintiff,

          v.                              18 Cv. 8890 (GBD)

EOX HOLDINGS LLC and
ANDREW GIZIENSKI,

                    Defendants.

------------------------------x

                                        April 11, 2019
                                        10:35 a.m.

Before:

                    HON. GEORGE B. DANIELS,

                                        District Judge

                         APPEARANCES

U.S. COMMODITY FUTURES TRADING COMMISSION
BY:   ROBERT T. HOWELL III
      DANIEL BURSTEIN

SIDLEY AUSTIN LLP
      Attorneys for Defendants
BY:   WILLIAM J. NISSEN
      CHRISTOPHER Y. LEE

```
1              (Case called)

2              THE DEPUTY CLERK:  Counsel, please state your

3     appearances for the record.

4              MR. BURSTEIN:  Daniel Burstein and Robert Howell of

5     the CFTC.

6              MR. NISSEN:  William Nissen and Christopher Lee for

7     the defense.

8              THE COURT:  Good morning.

9              Why don't I hear you on your motions.

10             MR. NISSEN:  Your Honor, should we do them one at a

11    time?

12             THE COURT:  However you want to start.

13             MR. NISSEN:  I would like to start with the motion to

14    transfer, your Honor.

15             THE COURT:  Sure.

16             MR. NISSEN:  This case focuses on the actions of

17    Andrew Gizienski, a defendant in this case.  He was an employee

18    of defendant EOX Holdings.  Andrew Gizienski was and is located

19    in Houston, Texas, and the office of EOX where he worked, which

20    is their principal office, with more employees than any other

21    office, is also in Houston, Texas.  He brokered trades in

22    energy futures contracts between customers located in various

23    parts of the country as well as in Canada.  The plaintiff CFTC

24    is the federal agency that regulates the futures markets and is

25    alleging various regulatory violations in this case.
```

**Pages Omitted**

1        think both of those are addressed in the CFTC's complaint.

2                We think that the confidentiality provisions that are

3        in the written agreements with customers as well as Mr.

4        Gizienski's own employment agreement provide for that manner of

5        protection, as well as the fact that Mr. Gizienski is an

6        experienced broker, he has been doing this for many years, and

7        when asked about it, he frankly admitted it, he acknowledged.

8        Everybody knows this, names don't get passed.

9                THE COURT:  Can you point to or have you cited any

10       cases that have applied the rules to block trading in this way?

11       I have just never heard of this theory being applied to this

12       circumstance.

13               MR. BURSTEIN:  I am not aware of a misappropriation

14       theory case that has been litigated in the context of block

15       trading.  I believe this is the first.

16               THE COURT:  I have never thought of it in this context

17       because I have never seen it in this context.  It doesn't mean

18       it doesn't apply in this context.  Obviously, it's easier for

19       me to look at case law or application of these rules in

20       previous situations.  I rarely like to be the first judge to do

21       anything.  I like to be the one that is relying on

22       circumstances that occurred in the past, because there is 200

23       years of history before I got here.

24               It is somewhat of a novel theory to apply these rules

25       to block trading.

1          MR. BURSTEIN:  It is, and I believe in this context, a

2    case has not ever been brought before.

3          With respect to the misappropriations allegations,

4    that's being brought under Section 6(c) of the Commodity

5    Exchange Act and CFTC regulation 180.1.

6          At the outset, I just would note the arguments that

7    block trading is somehow outside the scope of that statute and

8    that regulation is simply without merit.  By the plain

9    language, they apply both to on-exchange trading, which Andrew

10   Gizienski was doing, but also to conduct subject to the rules

11   of a registered entity.  And the exchange is a designated

12   contract market.

13         THE COURT:  You can't apply the entire rule to block

14   trading.  For example, the two of you seem to be arguing over

15   whether or not an order can be disclosed.  Well, I guess the

16   answer is it depends.  Obviously, you're not going to argue

17   that, if the defendants are trying to put together a deal, that

18   they can't disclose a bid or offer from one side to the other

19   side, or disclose an acceptance of a bid or an offer from one

20   side to the other side.

21         MR. BURSTEIN:  No, we would never argue that.

22         THE COURT:  That part of the rule doesn't really apply

23   to block trading.  The theory that I understand that you are

24   proceeding under is that, look, there's information that

25   primarily has to do with trading history and trading activity

**Pages Omitted**

1    been developed.  If you disclose to the source of information

2    that you're going to disclose it and they give permission, then

3    there is no misappropriation.  It's the dissemination of

4    material, nonpublic information, in breach of a duty to the

5    source, that underlies that theory of insider trading.

6              THE COURT:  As you say, the application of these two

7    sections to block trading, there is not another example out

8    there that I can look at?

9              MR. BURSTEIN:  With respect to the CFTC, I don't

10   believe that a misappropriation theory case has ever been

11   brought in block trading.  I don't believe that the Securities

12   and Exchange Commission has brought one.  I am not aware of

13   precedents, is what I am saying.

14             THE COURT:  Let me just go back then to the

15   jurisdictional issue.  To what extent are the two of you

16   talking past each other?  You disagree because you're giving me

17   a different standard.

18             MR. BURSTEIN:  With respect to the personal

19   jurisdiction issues raised by Mr. Gizienski, I understand that

20   the defendants have pointed to a couple of cases where it

21   appears that New York's long-arm statute was applied in the

22   context of a jurisdictional challenge.  I have looked at those

23   and I think those cases are wrong.  One was *Amaranth*.  I looked

24   at the cases that the judge cited in support of that

25   conclusion, and it traces to a Supreme Court decision *Omni*,

**Pages Omitted**

J4B8CFTA

1    cause of action that doesn't exist, and they are putting all

2    kinds of requirements that don't exist as a matter of law, and

3    duties that don't exist as a matter of law, and claiming,

4    because they want to have a cause of action of this sort, that

5    all these things should be implied, that have not been

6    established in law, that are not set in law.  And for all those

7    reasons, we would ask that the Court grant both of our motions.

8              THE COURT:  Thank you very much.  This has been

9    helpful.  Let me go back to the papers.  I think I want the

10   transcript.  I will try to get back to you in 30 to 60 days.

11             Thank you.

12             (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT 3**

# READING THE ELECTRONIC TAPE: BLOCK TRADING IN TODAY'S ELECTRONIC MARKETS

Kapil Phadnis, *Bloomberg Tradebook Head of Quantitative Research*

**Bloomberg Tradebook**

**GLOBAL AGENCY BROKERAGE**

/////////////////////////////////////////////////////////////////////////////////////////

## INTRODUCTION

Block trading, or trades with sizes much larger than average, has been a feature of equity markets for a long time. Electronic markets have made information about such trades more readily available. Additionally, block trade analytics, like MBTR <GO> on the Bloomberg Professional service®, can monitor and analyze the information. Our goal in this series of papers is to analyze otherwise hard-to-read information based on publicly available datasets and find nuggets of information that might prove useful to the participants in today's "big data"–driven markets. In this paper, we look at block trading, however ambiguously defined, to highlight characteristics of how markets publish and digest information regarding blocks being printed on the tape.

## CAN WE IDENTIFY ALL BLOCK TRADES ON THE TAPE?

We looked at stocks listed on the U.S. exchanges (NYSE EURONEXT and NASDAQ OMX listed) and the London Stock Exchange for this study. U.S. equity markets are some of the most transparent markets in the world. They feature a consolidated tape, which shows all trades done in a given security in a publicly available data feed. Regulation dictates that all off-exchange or ATS-executed trades be reported to one of two trade reporting facilities at NYSE or NASDAQ. Regulation ATS rules[1] govern all off-exchange activity in all publicly traded securities. Block trading desks are subject to similar reporting requirements, hence, all block trades can be seen on the tape within a limited amount of time.

NYSE Rule 72[2] defines a "Block" as at least 10,000 shares or $200,000 USD, whichever is less. Thus, for stocks priced at less than $20, a 10,000 share trade can be a block, but in higher-priced stocks even a 1,000 share trade could constitute a block. Large trade sizes are extremely valuable to institutional investors to access liquidity. As markets have moved to higher levels of fragmentation and electronic access, larger-size trades have been on the decline. NYSE's "Facts and Figures"[3] provides data for blocks going back to 2004. Figure 1 shows the block volume as a percent of total NYSE volume and average block trade size in listed stocks. Contrary to intuition, block trading on NYSE has been inching higher since Regulation NMS and the financial crisis of 2008. The most recent data point suggests around 25% of NYSE volume is blocks. Moreover, average block size has gone up steadily over the years. One thing to note is that NYSE's market share, and hence volume, has gone down steadily over a similar time frame. This could explain the high block market share in recent years. It's unclear if the NYSE dataset filters the open and closing auction prints, as the open and closing prints are frequently large prints and can be considered a block by that definition.

---

[1] https://www.sec.gov/rules/final/34-40760.txt
[2] http://rules.nyse.com/NYSETools/PlatformViewer.asp?
selectednode=chp_1_3_4_10&manual=%2Fnyse%2Frules%2Fnyse-rules%2F
[3] http://www.nyxdata.com/Data-Products/Facts-and-Figures

**Bloomberg Tradebook**

**GLOBAL AGENCY BROKERAGE**



Figure 1. NYSE block volume percent and average trade size from Jan 2004 to Jan 2014

## BLOCK STATISTICS THAT HELP TRADING STRATEGIES

We performed a study on a profile of blocks across stocks based on groups of average daily volume of shares traded and time of day. We used 10,000 shares or more as a definition for the rest of the study. In a later study, we will discuss the effect of determining the size that constitutes a block and how to do so on an individual-stock basis. The results are shown in Table 1. Our dataset allows us to compute block-based statistics for different sizes of blocks and specifically exclude trades that we believe are not blocks, such as auction prints, from our analysis.

Interestingly, Table 1 shows block volume as a percent of total continuous trading volume declining with average daily volume. This is a bit surprising at first, since one might think that the less liquid stocks are more likely to have blocks than are the more liquid ones. One explanation for this trend is that more institutional interest exists for liquid stocks given that they tend to have a larger market cap or cheaper price. This attracts larger portfolio positions, hence, the larger trade sizes. These numbers



**GLOBAL AGENCY BROKERAGE**

////////////////////////////////////////////////////////////////////////////////////

might also have seasonality within the year or the investment cycle, which is why we need to monitor these numbers regularly. Tradebook's STAZ <GO> analytic on the Bloomberg terminal enables traders to monitor block percentage on their stocks. This further enables traders to appropriately allocate liquidity for block opportunities. Additional analysis shows that average block size increases as average daily volume increases—confirming a widely held belief that traders are trading larger trade sizes in the more liquid stocks.

| ADV Bucket | Block Pct | Avg Size |
|---|---|---|
| > 5MM | 7.1% | 31,087 |
| 1MM–5MM | 6.8% | 28,379 |
| 500K–1MM | 5.5% | 29,380 |
| 250–500K | 3.9% | 29,300 |
| 0–250K | 2.1% | 30,751 |

Table 1

Let's take look at intraday block profiles in Figure 2. For U.S. equities, the block volume (absolute number of shares as percent of daily volume) shows a profile similar to the VWAP profile observed in U.S. stocks. The profiles are also very similar across the different ADV buckets, indicating the time of day traders have the most success in trading blocks. Blocks tend to trade during the first and last half hour of the day. In fact, blocks are almost three times more likely to be executed during those times than in the middle of the day. This had led to the conclusion that if a trader has an order that is a large percent of the day's volume, a liquidity-seeking trading strategy must include a dark aggregator order with minimum fill sizes set to 10,000 for the first and last 30 minutes of the day. Tradebook's B-Dark Algorithm offers access to almost 95% of the block volume[4] in dark pools and can be set easily to include only block dark pools. B-Dark also provides easy options to have the strategy active during specific times, say 3:30 pm to 4:00pm.

---

[4] Tradebook connects to the dark pools that represent almost 95% of the executed volume of the Rosenblatt Securities universe.



**GLOBAL AGENCY BROKERAGE**



Figure 2. Intraday block volume distribution across the market NOT normalized by market volume

Figure 3 shows intraday block *percent* volume profiles across the different average daily volume groups. This is computed as a percent of the total volume for the individual stocks. Each data point shows the block volume as a percent of total volume at a given point in the trading day. This chart clearly shows how the block volume profile compares with the daily volume profile. The flatness across the day shows that these individual profiles are very similar to each other, i.e., as volume increases during the day, so does block volume; as volume goes down, block volume also decreases. It also shows a clear peak in the first 10 minutes of trading. This is consistent with anecdotal evidence that block traders find liquidity earlier in the day.



**GLOBAL AGENCY BROKERAGE**

Another feature clearly indicated in this chart is the separation of the individual ADV group profiles. This separation follows from Table 1, but is shown to be prevalent across the entire day. Thus, our actionable conclusions for Table1 are applicable throughout the day.



Figure 3. Intraday profile of block volume as a percent of total volume on the day

Bloomberg
**Tradebook**

**GLOBAL AGENCY BROKERAGE**

## INTRADAY EFFECTS FOR EVEN MORE BLOCKS

One major driver of blocks is an urgency to execute large institutional orders, which leads to our first intraday effect in blocks: if the old adage is true that liquidity begets liquidity, then in the block world—how likely are blocks to be followed by more blocks in the same stock?. It appears that there is a time window.

Figure 4 shows the likelihood of blocks following other blocks by time. This plot, like others in our analysis, has a data point per every 10 minutes. Thus, every 6.5 hours is a trading day. Each effect around the 6.5-hour multiple is around the same time each day and multiple of it, for example, the first peak at 6.5-hour lag could indicate that if blocks are higher at 9:30 am today, they are higher close to end of day 4 pm and next day around 9:30 am. The spike at the beginning is the highest in the chart and potentially more interesting because it indicates that blocks at any time of the day are more likely to be followed by more blocks within an hour or so and the likelihood falls off very quickly in the ensuing hours. This is a clear indication that if you see blocks go off in a given stock (can be tracked by the STAZ <GO> analytic in real time), you should allocate volume to the strategies that pursue blocks in approximately the next hour.



**Figure 4. Autocorrelation across block volume percent shows distinctive peaks at short range and daily overlapping intervals**



**GLOBAL AGENCY BROKERAGE**

/////////////////////////////////////////////////////////////////////////////////////////

**DO BLOCKS TRADES HAVE LASTING IMPACT?  (SPOILER ALERT: NO**)

Finally, we looked at price movement before and after a block is traded to understand the effect of a block trade on the price of stocks. Figure 5 shows the average return in the price of individual stocks 100 seconds before and 100 seconds after the print-by-venue type in 10-second intervals. Like the other charts in the study, we ran this analysis with 10,000 shares or more as the block size. The X-axis shows time in milliseconds before (negative) and after (positive) the block was executed. The Y-axis shows the mid-quote move (Toxicity) in basis points from the mid-quote at the time the block was traded. The black vertical line indicates the time the block went off and corresponds to a zero-basis-point move from itself. Each data point indicates the change in the mid-quote between the block trade and the reference time. We assigned all block trades a side based on an algorithm that examines the trade price versus the best bid and ask price just before the trade was executed. The change in mid-quote is then adjusted for side for each block. All timestamps used were exchange-level timestamps with millisecond accuracy. Thus, for a "Buy"-classified block, a price move from $8 before the block was executed to $10 after the block was executed, with the trade going off at $9, will show a positive 12.5% move before and 11.1% move after the block was printed. Similarly, a "Buy" block showing a move down indicates that the price has gone down since the block executed.

The exchanges with majority market share have a similar trend—a small uptrend in the time frame before the block is executed; this is consistent with institutions with large "Buy" positions having price impact on the market before they find a larger counterparty to trade with. There is immediate price impact (10 seconds) on the mid-quote after the block execution. One might think this is temporary impact, but the major exchanges do not show any signs of reversions within the next 100 seconds. This might be an indication that the major exchange liquidity-providing participants anticipate larger orders and react adversely immediately after the trade. This phenomenon is not visible in the smaller exchanges, and there is an absence of any pattern in the "dark" venues. We surmise that liquidity providers are reading the major exchange trades very closely to glean information about large orders. The exchanges with smaller market share are also inverted rebate venues, but the trend across these is not obvious. "Dark" block trades are the most interesting—attesting to our earlier claim that impact in dark is much more muted and advantageous to institutions trading large orders. This is consistent with "dark" block market share being much higher—almost 70% of all blocks traded.

The exchange termed as CINN is NSX, and has a distinctively different profile than all other exchanges in figure 5.The after-price impact in this exchange is similar to the major exchanges. It is not clear to the author why this is the case. Another exchange that has a different profile is the AMEX, also known as NYSE MKT LLC, which trades small-capitalization companies. If you look at the trading fees, DMMs and SLPs have large incentives to provide liquidity on this venue. These factors could affect the profile of blocks traded there and, consequently, the price impact around the trade.



**GLOBAL AGENCY BROKERAGE**



**Figure 5. Block "Toxicity" or price movement in mid-quote before and after the block was printed on the tape**

**Bloombergtradebook.com**    **New York**    **London**    **Singapore**    **Hong Kong**
**TBH<GO>**    **+1 212 617 7070**    **+44 20 7330 7099**    **+65 6212 9798**    **+852 2977 6064**

This communication is directed only to market professionals who are eligible to be customers of the relevant Bloomberg Tradebook entity.  Communicated, as applicable, by Bloomberg Tradebook LLC; Bloomberg Tradebook Europe Limited, authorized and regulated by the U.K. Financial Conduct Authority; Bloomberg Tradebook (Bermuda) Ltd., member of the Bermuda Monetary Authority; Bloomberg Tradebook Services LLC. Please visit http://www.bloombergtradebook.com/pdfs/disclaimer.pdf for more information and a list of Tradebook affiliates involved with Bloomberg Tradebook products in applicable jurisdictions. Nothing in this document constitutes an offer or a solicitation of an offer to buy or sell a security or financial instrument or investment advice or recommendation of a security or financial instrument.  Bloomberg Tradebook believes the information herein was obtained from reliable sources but does not guarantee its accuracy.



**EXHIBIT 4**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 4:19-cv-02901 |
| v. | ) |
| | ) |
| EOX HOLDINGS LLC and ANDREW GIZIENSKI, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' THIRD SET OF INTERROGATORIES TO PLAINTIFF

Pursuant to Federal Rule of Civil Procedure 33, Defendants EOX Holdings LLC and

Andrew Gizienski hereby propound the following interrogatories to Plaintiff Commodity Futures

Trading Commission, to be answered within 30 days of service:

6.      Identify all of the "benefits" (by nature/type, including but not limited to any

monetary amount(s), and the date(s) received) that you contend Andrew Gizienski received from

Jason Vaccaro, as alleged in paragraph 54 of the complaint.

7.      Identify each "law," "rule," "agreement" and "understanding" pursuant to which

you contend Defendants owed duties of trust or confidentiality, and each EOX customer to

whom you contend Defendants owed such duties as a result of each "law," "rule," "agreement"

and/or "understanding," as alleged in paragraph 20 of the complaint.

8.      Identify (by date, content, method of communication, sender, and recipient) all

confidential information that you contend Defendants used to the disadvantage of their

customers, including identifying which customer was disadvantaged and how that customer was

1

disadvantaged, including but not limited to any monetary amount(s) by which the customer was disadvantaged.

9.      Identify all "pre-trade communications with customers," including by date and document type, that you contend EOX has failed to keep, as alleged in paragraph 64 of the complaint.

10.     Identify each of the "written records of orders" that you contend EOX brokers have failed to prepare, as alleged in paragraph 66 of the complaint.

Dated:  October 22, 2019                          Respectfully,

                                                  By:  /s/  William J. Nissen
                                                     William J. Nissen
                                                     Christopher Y. Lee
                                                     **SIDLEY AUSTIN LLP**
                                                     One South Dearborn Street
                                                     Chicago, Illinois 60603
                                                     Telephone: (312) 853-7000

                                                     Conrad Coutinho
                                                     **SIDLEY AUSTIN LLP**
                                                     1000 Louisiana Street
                                                     Houston, Texas 77002
                                                     Telephone: (713) 495-4500

                                                     *Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

      I, William J. Nissen, hereby certify that on October 22, 2019, I served the foregoing **Defendants' Third Set of Interrogatories to Plaintiff** on the following counsel by email:

Candice Haan (chaan@cftc.gov)
Robert Howell (rhowell@cftc.gov)
U.S. COMMODITY FUTURES TRADING COMMISSION
525 W. Monroe, Suite 1100
Chicago, Illinois 60660

                                  /s/ William J. Nissen
                                  William J. Nissen

3

**EXHIBIT 5**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiff, | Case No.: 4:19-cv-02901 |
| v. | |
| EOX HOLDINGS LLC and ANDREW GIZIENSKI, | Hon. Sim Lake |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**THIRD SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff U.S. Commodity Futures Trading Commission ("Commission") hereby objects and responds to Defendants EOX Holdings LLC and Andrew Gizienski ("Defendants") Third Set of Interrogatories ("Interrogatories") as follows:

**GENERAL OBJECTIONS**

1.      The Commission's responses and objections as set forth herein are made without prejudice to the Commission's right to assert further responses or objections should it discover additional grounds for such responses or objections. The Commission makes the following general objections to each interrogatory. The assertion of the same, similar, or additional objections, or the provision of any responses to any of these Interrogatories, shall not waive any of the Commission's objections as set forth below.

1

2.      The Commission objects to the Interrogatories to the extent that they seek to impose obligations greater than those required by the Federal Rules of Civil Procedure ("Rules") or other applicable law.

3.      The Commission objects to the Interrogatories to the extent they seek or purport to require the disclosure of information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, the government investigative privilege, the law enforcement privilege, or any other principle of non-disclosure, privilege, protection or immunity applicable under governing law.

4.      The Commission objects to the Interrogatories to the extent that they seek information that is not relevant to the allegations in the Complaint or reasonably calculated to lead to the discovery of admissible evidence.

5.      The Commission objects to the Interrogatories to the extent that they seek information already in Defendants' possession, or materials equally available to the Commission and Defendants, and are, therefore, unduly burdensome.

6.      The Commission objects to each Interrogatory to the extent it assumes facts not in evidence.

7.      The Commission objects to each Interrogatory to the extent that it is vague, ambiguous or confusing.

8.      Discovery in this case and the Commission's investigation into Defendants' conduct is ongoing. The Commission responds to the Interrogatories based upon information and documentation available as of the date hereof and reserves the right to supplement or amend its responses.

2

9.      The Commission objects to the Interrogatories to the extent that they require more than a reasonable search to locate responsive information.

10.     Any offer to produce documents is made subject to these General Objections, the Specific Objections to each individual Interrogatory, and any limitations or qualifications contained in the General Objections or Specific Objections.

11.     Subject to and without waiving the foregoing objections, the Commission will respond to the Interrogatories below by providing relevant, non-privileged information currently available to it (to the extent that documents responsive to such Interrogatories have not already produced to Defendants). Any disclosure of privileged or protected information is inadvertent and is not intended to be a waiver of any privilege or of any ground for objecting to discovery.

<u>**RESPONSES AND SPECIFIC OBJECTIONS**</u>

<u>**INTERROGATORY NO. 6:**</u> Identify all of the "benefits" (by nature/type, including but not limited to any monetary amount(s), and the date(s) received) that you contend Andrew Gizienski received from Jason Vaccaro, as alleged in paragraph 54 of the complaint.

**RESPONSE:**

The Commission objects to Interrogatory No. 6 on the grounds that it is overbroad and unduly burdensome, especially at this stage of the case.  The Commission further objects to Interrogatory No. 6 on the basis that it seeks information that is readily or more accessible to Defendants from Defendant Gizienski, and Defendants' own files, including but not limited to, documents Defendants produced to the Commission. Providing such information in answering this interrogatory would be oppressive, unduly burdensome and unnecessarily expensive, and the burden of providing such information in answering this interrogatory is substantially the same or less for Defendants as for the Commission.  *See* Federal Rule of Civil Procedure 33(d).  The

3

Commission further objects to Interrogatory No. 6 on the basis that it is an overly broad contention interrogatory. *See Kaneka Corp. v. JBS Hair, Inc.*, 2012 WL 12941120, * 2 (N.D. Tex. Oct. 9, 2012) (plaintiff's objections to defendants' contention interrogatories as overly broad were substantially justified); *Steil v. Humana Kansas City, Inc.,* 197 F.R.D. 445, 447 (D. Kan. 1998) (contention interrogatories that ask for each and every fact are overly broad); *IBP, Inc. v. Mercantile Bank of Topeka,* 179 F.R.D. 316, 321 (D. Kan. 1998) (same).  The Commission's investigation continues, and the Commission reserves the right to supplement this answer after conducting additional discovery.

Subject to and without waiving these objections and the General objections, the Commission states that Andrew Gizienski (1) pursued future employment opportunities with Jason Vaccaro (*see* Andrew Gizienski Investigative Testimony Transcript at 57-59; Torres Investigative Testimony at 73-76, 87-88); (2) pursued business ventures and reputational enhancement with Jason Vaccaro (*see* Andrew Gizienski Investigative Testimony Transcript at 114-120; Jason Vaccaro Investigative Testimony at 77-80, 90-99, 121-127); and, (3) took trips, attended various entertainment/events and received gifts from Jason Vaccaro (*see* Andrew Gizienski Investigative Testimony Transcript at 35-36, 154, 233-35, 248-49; Jason Vaccaro Investigative Testimony Transcript at 65-70, 91-93; Torres Investigative Testimony at 68-71; EOX—0060116-0060117, EOX-0108098-0108115).

**INTERROGATORY NO. 7:** Identify each "law," "rule," "agreement" and "understanding" pursuant to which you contend Defendants owed duties of trust or confidentiality, and each EOX customer to whom you contend owed such duties as a result of each "law," "rule," "agreement" and/or understanding," as alleged in paragraph 20 of the complaint.

**RESPONSE:**

4

The Commission objects to Interrogatory No. 7 on the grounds that it is overbroad and unduly burdensome, especially at this stage of the case.  The Commission further objects to Interrogatory No. 7 on the basis that it seeks information that is readily or more accessible to Defendants from Defendant Gizienski, and Defendants' own files, including but not limited to, documents Defendants produced to the Commission. Providing such information in answering this interrogatory would be oppressive, unduly burdensome and unnecessarily expensive, and the burden of providing such information in answering this interrogatory is substantially the same or less for Defendants as for the Commission.  *See* Federal Rule of Civil Procedure 33(d).  The Commission further objects to Interrogatory No. 7 on the basis that it is an overly broad contention interrogatory.  *See Kaneka Corp. v. JBS Hair, Inc.*, 2012 WL 12941120, * 2 (N.D. Tex. Oct. 9, 2012) (plaintiff's objections to defendants' contention interrogatories as overly broad were substantially justified); *Steil v. Humana Kansas City, Inc.,* 197 F.R.D. 445, 447 (D. Kan. 1998) (contention interrogatories that ask for each and every fact are overly broad); *IBP, Inc. v. Mercantile Bank of Topeka,* 179 F.R.D. 316, 321 (D. Kan. 1998) (same).  The Commission further objects to Interrogatory No. 7 as it includes two discrete subparts. *Erfindergemeinschaft GbR v. Eli Lilly and Co*., 315 F.R.D. 191, 196 (E.D. Tex. 2016)("where the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within [it].") (internal citations omitted).

Subject to and without waiving these objections and the General objections, the Commission responds to Interrogatory No. 7, subpart 1, by stating:

1. Defendants owed duties of trust and confidentiality to EOX customers by law, including, but not limited to:

5

- 7 U.S.C. §9(1) and 17 C.F.R. §180.1(a)

- 17 C.F.R. §155.4(b)(2013)

- §10b of the Securities Exchange Act and Securities Exchange Commission Rule

  10b-5

- *United States v. O'Hagan*, 521 U.S. 642 (1997); *SEC v. Cuban*, 620 F.3d 551 (5th
  Cir. 2010); *SEC v. Dorozhko*, 574 F.3d 42 (2d Cir. 2009); *SEC v. Obus*, 693 F.3d
  276 (2d Cir. 2001); *United States v. Falcone*, 257 F.3d 226 (2d Cir. 2001), *United
  States v. Chestman*, 947 F.2d 551 (2d Cir. 1991); *Steginsky v. Xcelera Inc.*, 741
  F.3d 365 (2d. Cir. 2014); *United States v. Whitman*, 904 F. Supp. 2d 369
  (S.D.N.Y. 2012). *aff'd* 555 Fed. App'x 98 (2d. Cir 2014); *United States v. McGee*,
  763 F.3d 304 (3d. Cir. 2014); *SEC v. Yun*, 327 F.3d 1263 (11th Cir. 2003); *SEC v.
  Kirch*, 263 F. Supp. 2d 1144 (N.D. Ill. 2003).

2.   Defendants owed duties of trust and confidentiality to EOX customers by rule,

including, but not limited to:

- IFUS Rule 4.02(i)

3.   Defendants owed duties of trust and confidentiality to EOX customers by

agreement, including, but not limited to:

- EOX—0007983—7991 and EOX—0007992—8000, Employment Agreement,

  Section 10.A, defining as "Confidential Information":

  the identity and contact information for businesses and individual
  employees of such business responsible for trading products brokered by
  Employer ("Traders"); the trading histories, patterns, preferences,
  tendencies and market positions of such Traders . . . and other confidential
  and proprietary information of the Employer or customers of Employer.

  And requiring that

  Employee agrees and understands that all confidential Information is at all
  times and shall remain the confidential and proprietary property of
  Employer.  Employee agrees not to reveal, disclose or communicate,
  directly or indirectly, any of the Confidential Information to anyone
  outside of Employer.  Employee further agrees during the term of his
  employment, not to use, directly or indirectly, any of the Employer's
  Information except in the course of his employment with Employer.

Employee acknowledges that Employer diligently protects the
Confidential Information against exposure to non-employees and that
Confidential Information is accessible only to employees of Employer . . .

- EOX—0007263—EOX—7268, Independent Introducing Broker Referral

  Agreement between FCStone, LLC and EOX Holdings, LLC, which includes the

  following Confidentiality Agreement:

  Each party agrees that in the course of performance of this Agreement it
  may receive or otherwise learn of certain items of information that are
  nonpublic, proprietary, or secret to the other party, the disclosure of which
  to <u>third</u> parties would be injurious to the disclosing party.  The receiving
  party shall not use confidential information or disclose confidential
  information to any third party for any reason without the disclosing party's
  prior express written consent.  Each party further agrees not to use
  confidential information for any purpose outside of this Agreement.  Each
  party agrees that in the event of an actual or threatened disclosure of the
  confidential information, the disclosing party would not be adequately
  compensated by money damages and therefore agrees that the disclosing
  party shall be entitled to specific performance or other equitable relief to
  limit or prevent such actual or threatened disclosure.  The obligations of
  confidentiality shall not apply to any information which: (a) was known to
  the receiving party or was in the public domain prior to disclosure
  thereunder; or (b) becomes known to the public from a source other than
  the disclosing party; or (c) is disclosed to the receiving party by a third
  party having a legal right to make sure disclosure.

- EOX—0134546—0134549, Brokerage Services Agreement, Section 5, between

  Geosol Capital Onshore I LP and Choice Natural Gas, LP and Choice Power, LP,

  which states:

  Choice specifically agrees that is shall not at any time divulge, disclose, or
  communicate to any person, firm, or corporation in any manner
  whatsoever any information or which Choice has knowledge by virtue of
  its performing Choice Services hereunder concerning any matters related
  to the purchase or sale activities of Counterparty including, but not limited
  to, the names of Counterparty's potential or actual buyers or sellers, the
  prices at which Counterparty obtains or has obtained or sells or has sold
  Products, or any other information regarding Counterparty Product
  Transactions or negotiations for Counterparty Product Transactions;
  provided however, nothing herein shall prevent Choice from

7

communicating information to potential Product(s) buyers or seller(s)
which is necessary or appropriate to perform Choice Services hereunder.

- EOX—0134566—0134572, Broker Agreement, Section 6, between PSEG Energy

  Resources & Trade LLC and Edge Energy LLC and EOX Holdings LLC, which

  states:

  All information and data provided to Broker to Client or created by Broker
  for Client under this Agreement, including Transaction information such as
  price, quantity and dates, shall become and remain confidential information
  of Client.  Broker and its personnel shall keep all such information strictly
  confidential and shall not disclose or use such confidential information for
  the benefit of Broker or any other third parties except to a Third Party as
  defined herein, to the appropriate clearing agency if applicable (e.g.
  NYMEX Clearport), or to a court or governmental agency as required by
  law.  If requested by Client, Broker shall execute and deliver a separate
  confidentiality agreement in a reasonable form required by Client and
  approved by Client.

- EOX—0134624—0134629, Brokerage Services Agreement, Section 6, between

  DTE Energy Trading, Inc. and Equus Energy Group, LLC, which states:

  The Parties agree that all information exchanged by them shall be
  confidential and shall not be disclosed to any Third Party (nor shall any
  public announcement relating to this Agreement be made by either Party),
  except for such information (i) as may become generally available to the
  public, (ii) as required (a) in response to any summons, subpoena, or
  otherwise in connection with any litigation or regulatory proceeding or (b)
  to comply with any applicable law, order, regulation, ruling or accounting
  disclosure rule or standard, or (iv) as may be furnished to each of such
  person's auditors, attorneys, affiliates, advisors, rating agencies or lenders
  which are required to keep the information that is disclosed in confidence.
  With respect to information provided with respect to a Counterparty
  Product Transaction, this obligation shall survive for a period of two (2)
  years following the expiration or termination of such Counterparty
  Product Transaction.  With respect to information provided with respect to
  this Agreement, this obligation shall survive for a period of two (2) years
  following the expiration of or termination of this Agreement.

4. Defendants owed duties of trust and confidentiality to EOX customers by

understanding, including but not limited to:

8

- Defendant Gizienski's description of industry compliance policy during his IFUS

  interview:

  You can't give up that information.  There is a confidentiality agreement
  between the broker and trader, and . . . you know . . . no information I
  receive from one client goes to another.  That's just ah . . . I mean that's
  industry policy . . . I don't even want to say that's EOX policy . . . that is
  Series 3 compliance.  That is an industry compliance policy.  As a general
  rule 101 of being a broker you cannot disclose, unless you are brokering a
  physical market which I do not I broker futures, and you can pass cleared
  information when everything is cleared, you are not passing tangible
  names . . . just cleared.

- Defendant Gizienski's investigative testimony, page 29: 17-24:

  Q   Let me ask you this.  So as an
  experienced broker, what do you consider to
  be material confidential information related to
  customers?
     A   The legal entity, name of the trading
  company, trader's first and last name.
     Q   So customer identities?
     A   Yeah.

  Page 140: 10-14

     Q   Did you have a standing agreement
  with any of your customers that you could share
  their identity and position or price levels with
  other customers?
     A   No.

- CFTC-02-0000001156: DTE Energy Response Letter to ICE Futures U.S., dated

  October 26, 2015

- CFTC-02-0000001158: Dynasty Power Inc. email response to ICE Futures Inc.

  dated October 5, 2016

- CFTC-02-0000001161: Exelon Company response to ICE Futures, Inc. dated

  October 20, 2016

9

- CFTC-02-0000001162-63: Geosol Capital LLC email response to ICE Futures, Inc. dated October 20, 2015

- CFTC-02-0000001167: Velocity Energy Trading letter response to ICE Futures, Inc. dated October 5, 2016

- CME Rule 526

- FINRA Rules 2010, 2020, 2060

The Commission's investigation continues, and the Commission reserves the right to supplement this answer after conducting additional discovery.

Subject to and without waiving these objections and the General objections, the Commission responds to Interrogatory No. 7, subpart 2, by stating that by law, rule, agreement and understanding Defendants owed duties of trust and confidentiality to all customers.

The Commission's investigation continues, and the Commission reserves the right to supplement this answer after conducting additional discovery.

**INTERROGATORY NO 8:** Identify (by date, content, method of communication, sender, and recipient) all confidential information that you contend Defendants used to the disadvantage of their customers, including identifying which customer was disadvantaged and how that customer was disadvantaged, including but not limited to any monetary amount(s) by which the customer was disadvantaged.

**RESPONSE:**

The Commission objects to Interrogatory No. 8 on the grounds that it is overbroad and unduly burdensome, especially at this stage of the case. The Commission further objects to Interrogatory No. 8 on the basis that it seeks information that is readily or more accessible to Defendants from Defendant Gizienski, and Defendants' own files, including but not limited to,

10

documents Defendants produced to the Commission. Providing such information in answering this interrogatory would be oppressive, unduly burdensome and unnecessarily expensive, and the burden of providing such information in answering this interrogatory is substantially the same or less for Defendants as for the Commission.  *See* Federal Rule of Civil Procedure 33(d).  The Commission further objects to Interrogatory No. 8 on the basis that it is an overly broad contention interrogatory.  *See Kaneka Corp. v. JBS Hair, Inc.*, 2012 WL 12941120, * 2 (N.D. Tex. Oct. 9, 2012) (plaintiff's objections to defendants' contention interrogatories as overly broad were substantially justified); *Steil v. Humana Kansas City, Inc.,* 197 F.R.D. 445, 447 (D. Kan. 1998) (contention interrogatories that ask for each and every fact are overly broad); *IBP, Inc. v. Mercantile Bank of Topeka,* 179 F.R.D. 316, 321 (D. Kan. 1998) (same).  Finally, the Commission objects to the term "disadvantaged" as vague and ambiguous (for example, it is unclear if Defendants' intend the term to include reduced benefits).  The Commission's investigation continues, and the Commission reserves the right to supplement this answer after conducting additional discovery.

Subject to and without waiving these objections and the General objections, the Commission states that Defendants' customers were disadvantaged, or potentially disadvantaged, every time Defendant Gizienski (1) arbitraged and/or front run an EOX customer, (2) failed to execute a transaction consistent with the best execution principle, (3) consummated two transactions by trading from the AC Power discretionary account, thereby charging double commission, where the transaction could have been completed in one transaction, and/or (4) took the other side of a transaction by trading from the AC Power discretionary trading account without disclosing and obtaining consent from the EOX customer that he was doing so.  The Commission directs Defendants to the following examples of Defendant Gizienski's conduct:

11

- Jason Vaccaro Investigative Testimony, 128-131

- Jason Vaccaro Investigative Testimony, Exhibit 29

- Andrew Gizienski Investigative Testimony, 141-142, 184-186, 193-194, 205-209

**INTERROGATORY NO. 9:**  Identify all "pre-trade communications with customers," including by date and document type, that you contend EOX has failed to keep, as alleged in paragraph 64 of the complaint.

**RESPONSE:**

The Commission objects to Interrogatory No. 9 on the grounds that it is overbroad and unduly burdensome, especially at this stage of the case.  The Commission further objects to Interrogatory No. 9 on the basis that it seeks information that is readily or more accessible to Defendants from Defendant Gizienski, and Defendants' own files, including but not limited to, documents Defendants produced to the Commission. Providing such information in answering this interrogatory would be oppressive, unduly burdensome and unnecessarily expensive, and the burden of providing such information in answering this interrogatory is substantially the same or less for Defendants as for the Commission.  *See* Federal Rule of Civil Procedure 33(d).  The Commission further objects to Interrogatory No. 9 on the basis that it is an overly broad contention interrogatory.  *See Kaneka Corp. v. JBS Hair, Inc.*, 2012 WL 12941120, * 2 (N.D. Tex. Oct. 9, 2012) (plaintiff's objections to defendants' contention interrogatories as overly broad were substantially justified); *Steil v. Humana Kansas City, Inc.,* 197 F.R.D. 445, 447 (D. Kan. 1998) (contention interrogatories that ask for each and every fact are overly broad); *IBP, Inc. v. Mercantile Bank of Topeka,* 179 F.R.D. 316, 321 (D. Kan. 1998) (same).  For evidence that Defendant EOX "has not adequately retained all of its brokers' pre-trade communications with customers," the Commission refers Defendants to (1) its own records (2) Defendant EOX's

12

Response to Request for Admission Nos. 3, 4 and 7, and (3) Defendants' Answer to Plaintiff's Complaint, ¶ 64.

**INTERROGATORY NO. 10:**  Identify each of the "written records of orders" that you contend EOX brokers have failed to prepare, as alleged in paragraph 66 of the complaint.

**RESPONSE:**

The Commission objects to Interrogatory No. 9 on the grounds that it is overbroad and unduly burdensome, especially at this stage of the case.  The Commission further objects to Interrogatory No. 9 on the basis that it seeks information that is readily or more accessible to Defendants from Defendant Gizienski, and Defendants' own files, including but not limited to, documents Defendants produced to the Commission. Providing such information in answering this interrogatory would be oppressive, unduly burdensome and unnecessarily expensive, and the burden of providing such information in answering this interrogatory is substantially the same or less for Defendants as for the Commission.  *See* Federal Rule of Civil Procedure 33(d).  The Commission further objects to Interrogatory No. 9 on the basis that it is an overly broad contention interrogatory.  *See Kaneka Corp. v. JBS Hair, Inc.*, 2012 WL 12941120, * 2 (N.D. Tex. Oct. 9, 2012) (plaintiff's objections to defendants' contention interrogatories as overly broad were substantially justified); *Steil v. Humana Kansas City, Inc.,* 197 F.R.D. 445, 447 (D. Kan. 1998) (contention interrogatories that ask for each and every fact are overly broad); *IBP, Inc. v. Mercantile Bank of Topeka,* 179 F.R.D. 316, 321 (D. Kan. 1998) (same).  For evidence that "EOX brokers have failed to prepare adequate written records of orders received from customers," the Commission refers Defendants to (1) their own records, (2) Defendant EOX's responses to Request for Admission Nos. 5, 6 and 7.

13

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 21, 2019, I caused Plaintiff's Responses to

Defendants' Third Set of Interrogatories to be served on all counsel of record for Defendants.

s/ Candice Haan
_____

14

## **VERIFICATION**

I, Heather Dasso, have read the response to Defendants' Third Set of Interrogatories to Plaintiff CFTC and verify under penalty of perjury that it is true and correct to the best of my knowledge, information, and belief based on reasonable inquiry.


Dated: November 21, 2019                    /s/ Heather Dasso
                                            Heather Dasso

15

**EXHIBIT 6**

# ICE Futures U.S.®, Inc.

## TRADING RULES

## TABLE OF CONTENTS

**Rule**                                          **GENERAL TRADING RULES**

4.00          Compliance with Rules and Orders; Consent to Jurisdiction
4.01          Duty to Supervise
4.02          Trade Practice Violations
4.03          Dual Trading Violations
4.04          Conduct Detrimental to the Exchange
4.05          Prohibition on Dissemination of False Information
4.06          Exchange for Related Positions
4.07          Block Trading
4.08          Access to ETS
4.09          Access for Submitting Block Trades and Other Non-Competitive Transactions
4.10          Clearing Member Responsibilities
4.11          ETS Access From the Trading Floor
4.12          Revocation of Direct Access Authorization by Clearing Member
4.13          eBadges and Responsible Individuals
4.14          Effect of Termination or Suspension of Clearing Member
4.15          Required Identifications

                          **ORDERS**

4.16          Customer Disclosure Statement
4.17          Acceptable Orders
4.18          Order Entry
4.19          Audit Trail Requirements for Electronic Orders Submitted Through Direct
                 Access or Order Routing Systems
4.20          Revising Orders
4.21          Deactivating and Deleting Orders

                          **TRADING**

4.22          Pre-Trading Session
4.23          Opening Match
4.24          Open and Close of Electronic Trading Session
4.25          Trading Hours
4.26          Order Execution
4.27          Priority of Execution
4.28          Interval Price Limits
4.29          Invalid Trades
4.30          Error Trades
4.31          Errors and Omissions in Handling Orders

4.32        Misuse of ETS
4.33        Termination of ETS Connection

## SETTLEMENT AND CLEARING

4.34        Settlement Prices
4.35        Settlement Premiums
4.36        Allocation of Trades
4.37        Transfer Transactions Not Required To Be Made Competitively

## TRADING FLOOR RULES

4.38        Discretionary Account
4.39        Hours Exchange and Trading Floor is Open
4.40        Trading Floor Access; Trading Restrictions; and Authorized
                 Representation
4.41        Clerk Qualification Requirements, Registration Procedures,
                 and Trading Prohibitions
4.42        Electronic Devices

## INSTANT MESSAGE (IM) POLICY

## APPENDIXES

APPENDIX I    -  Error Trade Policy
APPENDIX II   -  Exchange Messaging Policy
APPENDIX III -  Self-Trade Prevention Functionality Policy

# ICE FUTURES U.S.®, INC.

## TRADING RULES

## GENERAL TRADING RULES

**Rule 4.00.  Compliance with Rules and Orders, Consent to Jurisdiction**

(a) Any Person initiating or executing a Transaction on or subject to the Rules of the Exchange directly or through an intermediary, and any Person for whose benefit such a transaction has been initiated or executed, expressly consents to the jurisdiction of the Exchange and agrees to be bound by and comply with the Rules of the Exchange in relation to such transactions, including, but not limited to, rules requiring cooperation and participation in investigatory and disciplinary processes.  Any futures commission merchant, introducing broker, associated person, or foreign Person performing a similar role that charges a commission or fee in connection with a Transaction on or subject to the Rules of the Exchange also expressly consents to the Exchange's jurisdiction.

(b) It shall be a violation of the Rules for any Person to furnish false information, or fail to furnish information when requested, to the Board or to any committee, subcommittee, officer or employee of the Exchange in the course of its, their, or his duties.

(c) It shall be a violation of the Rules for any Person to violate, or fail to comply with, the terms of any agreement with the Exchange or any order or decision of, or any suspension imposed by, the Exchange, the Board or any committee or subcommittee of the Exchange, including, without limitation, any Hearing, Arbitration or Appeals Panel.

> **Amended by the Board June 22, 2017; effective July 13, 2017.**
> **Amended by the Board January 22, 2020; effective February 7, 2020 [¶ (a)].**

**Rule 4.01.  Duty to Supervise**

(a) Every Person shall diligently supervise the Exchange-related activities of such Person's employees and agents.  For purposes of this Rule, the term "agent" includes any Exchange-related activities associated with automated trading systems that generate, submit and/or cancel messages without human intervention. Every Person shall also be responsible for the acts and omissions of such employees and agents.

(b) Each Firm shall establish, administer and enforce supervisory systems, policies and procedures, based on the nature and size of its Exchange-related activities, which are reasonably designed to achieve compliance with Exchange Rules.

(c) Each Member and Member Firm which employs a Clerk must be present or have a Member who is either an associate of the Brokers Association or Member Firm that employs such Clerk present on the premises occupied by the Exchange at all times during which such Clerk is engaged in Exchange-related activities.

> **Amended by the Board September 30, 2015; effective January 1, 2016 [¶¶ (a) and (b)].**
> **Amended by the Board June 22, 2017; effective July 26, 2017 [¶ (a)].**

**Amended by the Board June 22, 2017; effective July 26, 2017 [¶ (a)].**
**Amended by the Board  September 25, 2019; effective January 1, 2020 [¶¶ (b) and (c)].**

### Rule 4.02.  Trade Practice Violations

In connection with the placement of any order or execution of any Transaction, it shall be a violation of the Rules for any Person to:

(a) Manipulate, or attempt to manipulate, the price of any Commodity traded on the Exchange;

(b) Corner, or attempt to corner, any Commodity traded on the Exchange;

(c) Execute a wash sale, accommodation Trade, fictitious sale or prearranged Trade;

(d) Commit or attempt to commit fraudulent action on the Exchange or use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;

(e) Withhold or withdraw from the market any order or any part of an order for the convenience of another Person;

(f) Prearrange the execution of transactions in Exchange products for the purpose of passing or transferring equity between accounts;

(g) Engage in cross trading other than in accordance with the following procedures:

(1) Independently initiated orders on opposite sides of the market for different beneficial account owners that are immediately executable against each other may be entered without delay provided that the orders did not involve pre-execution communications as defined in sub-paragraph (k) of this Rule.

(2) Futures orders on opposite sides of the market that are simultaneously placed for different beneficial accounts by a Person with discretion over both accounts may be entered into ETS as Crossing Order ("CO") which contains both the buy and sell orders; or by separately entering one order and allowing it to be exposed on the ETS for a minimum of five (5) seconds before entering the opposing order.

(3) A futures order that allows for price and/or time discretion, if not entered immediately upon receipt, may be knowingly entered opposite a second order received by the same intermediary using a CO which contains both the buy and sell orders; or by entering the second order immediately upon receipt and allowing it to be exposed on the ETS for a minimum of five (5) seconds before entering the opposing order.

(4) In the case of Options which are listed on the ETS, orders on opposite sides of the market that are simultaneously placed for different beneficial accounts by a Person with discretion over both accounts must be entered into the ETS as a CO which contains both the buy and sell orders.

(5) In the case of Options which are listed on the ETS, an order that allows for price and/or time discretion, if not entered immediately upon receipt, may be knowingly entered opposite a second order received by the same intermediary only as part of a CO which contains both the buy and sell orders.

(h) Engage in front running;

(i) Disclose or divulge the buy or sell order of another Person except (1) in furtherance of executing the order, (2) at the request of an authorized representative of the CFTC or (3) pursuant to sub-paragraph (k) of this Rule regarding certain pre-execution communications.

(j) knowingly enter, or cause to be entered, a Transaction in which the opposite side of a Customer order is executed for an account which is owned or controlled, or in which an ownership interest is held, by an intermediary handling the Customer order, or for the proprietary account of the employer of such an intermediary, without submitting to ETS a Crossing Order ("CO") consisting of both the Customer order and the order for such other account, provided, however, that any Transaction that is consummated without the knowledge of the intermediary shall not be considered to have violated this Rule.

(k) Engage in pre-execution communications, except in accordance with the following procedures:

(1) For the purposes of this Chapter, pre-execution communications shall mean communications between two (2) market participants for the purpose of discerning interest in the execution of a Transaction prior to the terms of an order being entered on the ETS and visible to all market participants on the electronic trading screen.

(2) A market participant may engage in pre-execution communications with regard to Transactions executed on ETS where a market participant wishes to be assured that another market participant will take the opposite side of an order under the following circumstances:

(A) If a Customer order is involved, the Customer has previously consented to such communications being made on its behalf;

(B) A party to pre-execution communications shall not disclose the details of such communications to any Person who is not a party to the communications;

(C) A party to pre-execution communications shall not enter an order to take advantage of information conveyed during such communications, except in accordance with this Rule;

(D) Each Options order that results from pre-execution communications must be executed by entry into the ETS of a CO consisting of both the buy and sell orders. A party that has agreed to an Options CO resulting from pre-execution communications may enter an order in a related market to hedge the risk associated with the pending CO, except for an intermediary taking the opposite side of its own Customer order. The CO must transact in the ETS before an order to hedge may be entered for: (i) any account in which the intermediary has a direct or indirect interest; or (ii) the account of any Person(s) that holds a relationship to the intermediary of a type enumerated in the definition of "proprietary account" in CFTC Regulation 1.3;

(E) Each Futures order that results from pre-execution communications may be entered as a CO, which contains both the buy and sell order; or by separately entering one order and allowing it to be exposed on the ETS for a minimum of five (5) seconds before entering the opposing order;

    (F)  Once the terms of a CO have been agreed to, the parties may not delay entry of the CO and may not enter a Request for Quote ("RFQ") with the intent to distract other participants from the pending CO.

    (l)  Engage in any other manipulative or disruptive trading practices prohibited by the Act or by the Commission pursuant to Commission regulation, including, but not limited to:

    (1)  Entering an order or market message, or cause an order or market message to be entered, with:

        (A)  The intent to cancel the order before execution, or modify the order to avoid execution;

        (B)  The intent to overload, delay, or disrupt the systems of the Exchange or other market participants;

        (C)  The intent to disrupt the orderly conduct of trading, the fair execution of transactions or mislead other market participants, or

        (D)  Reckless disregard for the adverse impact of the order or market message.

    (2)  Knowingly entering any bid or offer for the purpose of making a market price which does not reflect the true state of the market, or knowingly entering, or causing to be entered, bids or offers other than in good faith for the purpose of executing *bona fide* Transactions.

**Amended by the Board March 22, 2018; effective April 23, 2018 [¶¶ (k)(2)(E)].**
**Amended by the Board June 21, 2018; effective July 13, 2018 [¶¶ (g)(2) through (5) and (k)(D)]**
**Amended by the Board August 7, 2019; effective August 23, 2019 [¶¶ (k)(2)(D) through (k)(2)(F)].**

## Rule 4.03. Dual Trading Violations

(a)  Prohibited Purchases. It shall be a violation of the Rules for any Person to purchase, on the ETS market, any Exchange Futures Contract or any Exchange Call Option or sell any Exchange Put Option for his own account or for any account in which he has any direct or indirect interest while holding an order of another Person for the same Commodity for the purchase of an Exchange Futures Contract or Exchange Call Option or sale of an Exchange Put Option, which is executable at the market price or at the price at which such purchase can be made for such Person's own account or for the account in which he has an interest.

(b)  Prohibited Sales. It shall be a violation of the Rules for any Person to sell, on the ETS market, any Exchange Futures Contract or any Exchange Call Option or buy any Exchange Put Option for his own account or for any account in which he has any direct or indirect interest while holding an order of another Person for the sale of an Exchange Futures Contract or Exchange Call Option or purchase of an Exchange Put Option, which is executable at the market price or at the price at which such sale can be made for such Person's own account or for the account in which he has an interest.

## Rule 4.04. Conduct Detrimental to the Exchange

It shall be a violation of the Rules for any Person to fail to conform to, the Rules or the procedures of the Exchange or the Clearing Organization, or to engage in conduct or practices inconsistent with just and equitable principles of trade or conduct detrimental to the best interests of the Exchange.

**Pages Omitted**

**EXHIBIT 7**

CME **Rulebook**

cme
Chicago Mercantile Exchange

CHAPTER 5
TRADING QUALIFICATIONS AND PRACTICES

500.           SCOPE OF CHAPTER

FLOOR PRIVILEGES
501.           EMPLOYEES OF MEMBERS
502.           ADMISSION TO FLOOR
503.           RETIRED MEMBERS
504.           [RESERVED]
505.           BOOTH AND FLOOR PRIVILEGES
506.           HEADSET PRIVILEGES ON THE TRADING FLOOR
               506.A.   Access and Supervision
               506.B.   Use of Headsets
507.           ELECTRONIC DEVICES
               507.A.   General Provisions
               507.B.   Terms and Conditions of Use
               507.C.   Electronic Surveillance
               507.D.   Personal Electronic Devices
               507.E.   Cameras and Video Equipment
508.           GIVING AND RECEIVING OF GRATUITIES
509.           ACCOUNTS OF MEMBERS AND MEMBER FIRMS

TRADING QUALIFICATIONS AND REGULATIONS
510.           REQUIREMENTS FOR MEMBERS AND THEIR EMPLOYEES ON THE
               TRADING FLOOR
511.           QUALIFIED TRADERS AND BROKERS
               511.A.   Floor Trading
               511.B.   Globex Trading
512.           REPORTING INFRACTIONS
               512.A.   General
               512.B.   Sanctions
               512.C.   Hearings and Appeals
513.           CONDUCT, APPAREL AND BADGES
               513.A.   General
               513.B.   Sanctions
               513.C.   Hearings and Appeals
514.           TRADING INFRACTIONS
               514.A.   Definition
               514.B.   Floor Conduct Committee Fining Authority
515.           REGISTRATION AND IDENTIFICATION OF BROKER ASSOCIATIONS
               515.A.   Definitions
               515.B.   Registration Requirements
               515.C.   Prohibition on Sharing of Personal Trading Profits
               515.D.   Supervision
               515.E.   Trading Restrictions
516.           ERROR ACCOUNTS



CME Rulebook

517.-519.        [RESERVED]

TRADING PRACTICES
520.        TRADING CONFINED TO EXCHANGE FACILITIES
521.        REQUIREMENTS FOR OPEN OUTCRY TRADES
522.        ACCEPTANCE OF BIDS AND OFFERS
523.        ALL-OR-NONE TRANSACTIONS
524.        TRADING AT SETTLEMENT ("TAS"), BASIS TRADE AT INDEX CLOSE ("BTIC")
            AND BASIS TRADE AT CASH OPEN ("TACO") TRANSACTIONS
525.        [RESERVED]
526.        BLOCK TRADES
527.        OUTTRADES, ERRORS AND MISHANDLING OF ORDERS
            527.A.    Outtrades Discovered During a Regular Trading Hours Trading Session
            527.B.    Outtrades Discovered After a Regular Trading Hours Trading Session
            527.C.    Outtrades Resolution
            527.D.    Errors and Mishandling of Orders
528.        PRICE REPORTING
529.        WITHHOLDING ORDERS PROHIBITED
530.        PRIORITY OF CUSTOMERS' ORDERS
531.        TRADING AGAINST CUSTOMERS' ORDERS PROHIBITED
            531.A.    General Prohibition
            531.B.    Exceptions
532.        DISCLOSING ORDERS PROHIBITED
533.        SIMULTANEOUS BUY AND SELL ORDERS FOR DIFFERENT BENEFICIAL OWNERS
534.        WASH TRADES PROHIBITED
535.        RESPONSIBILITY OF FLOOR TRADERS AND FLOOR BROKERS
536.        RECORDKEEPING REQUIREMENTS FOR PIT, GLOBEX, AND NEGOTIATED TRADES
            536.A.    General Requirements for Open Outcry Pit Trades
            536.B.    Globex Order Entry
            536.C.    Bunched Orders and Orders Eligible for Post Execution
                      Allocation
            536.D.    Customer Type Indicator (CTI) Codes
            536.E.    Negotiated Trades
            536.F.    CTR Enforcement Program and Sanction Schedule
            536.G.    Telephone Recordings
            536.H.    Retention of Records
537.        DATA SUBMITTED TO THE EXCHANGE
538.        EXCHANGE FOR RELATED POSITIONS
            538.A.    Parties to an EFRP
            538.B.    Independently Controlled Accounts
            538.C.    Related Position
            538.D.    EFPs in Connection with Inventory Financing of Storable, Non-Financial Commodities
            538.E.    Quantity Equivalence
            538.F.    Prices and Price Increments
            538.G.    EFRPs Following the Termination of Trading in Exchange Contracts
            538.H.    Recordkeeping
            538.I.    Submission to the Clearing House

© Copyright Chicago Mercantile Exchange, Inc. All rights reserved.



**CME** Rulebook

| | | |
|---|---|---|
| | 538.J. | EFRP Volumes Required to be Reported with Daily Large Trader Positions |
| | 538.K. | Immediately Offsetting EFPs in Foreign Currency Futures |
| 539. | | PREARRANGED, PRE-NEGOTIATED AND NONCOMPETITIVE TRADES PROHIBITED |
| | 539.A. | General Prohibition |
| | 539.B. | Exceptions |
| | 539.C. | Pre-Execution Communications Regarding Globex Trades |
| 540. | | RESPONSIBILITY FOR CUSTOMER ORDERS |
| | 540.A. | Standard of Responsibility |
| | 540.B. | Liability for Negligence |
| 541. | | TOP STEP TRADING RESTRICTIONS IN S&P 500 STOCK PRICE INDEX™ FUTURES |
| 542. | | SIMULTANEOUS SPREAD AND COMBINATION TRANSACTIONS |
| 543. | | RESTRICTIONS ON ACCESS FOR SANCTIONED PARTIES AND JURISDICTIONS |
| 544. | | CLOSING DAY ORDERS |
| 545. | | [RESERVED] |
| 546. | | OPENING AND CLOSING RANGES DURING REGULAR TRADING HOURS |
| 547. | | DISCRETIONARY ORDERS |
| 548. | | PRIORITY OF EXECUTION |
| 549. | | LARGE ORDER EXECUTION TRANSACTIONS ("LOX Orders") |
| 550. | | POST CLOSE SESSION |
| 551. | | [RESERVED] |
| 552. | | DUAL TRADING RESTRICTIONS |
| | 552.A. | Definitions |
| | 552.B. | Prohibition |
| | 552.C. | Exceptions |
| 553. | | AVERAGE PRICE SYSTEM |
| | 553.A. | Application of Average Prices |
| | 553.B. | Average Price System Requirements |
| | 553.C. | Computation of Average Price |
| | 553.D. | Disclosure |
| 554. | | [RESERVED] |
| 555. | | TOP STEP TRADING RESTRICTIONS |
| | 555.A. | Definitions |
| | 555.B. | Top Step Restrictions |
| | 555.C. | Exceptions |
| | 555.D. | Violations |
| 556.-558. | | [RESERVED] |
| 559. | | POSITION LIMITS AND EXEMPTIONS |
| | 559.A. | Bona Fide Hedging Positions |
| | 559.B. | Risk Management Positions |
| | 559.C. | Arbitrage and Spread Positions |
| | 559.D. | Aggregation of Positions |
| | 559.E. | Exemptions from Aggregation |
| | 559.F. | Violations |
| 560. | | POSITION ACCOUNTABILITY |

© Copyright Chicago Mercantile Exchange, Inc. All rights reserved.



CME Rulebook

561.         SUBMISSION OF LARGE TRADER POSITIONS AND VOLUME THRESHOLD ACCOUNTS
         561.A.   Large Trader Reporting
         561.B.   Volume Threshold Reporting
         561.C.   Obligations of Omnibus Accounts and Foreign Brokers
         561.D.   Reportable Levels
562.         POSITION LIMIT VIOLATIONS
563.-569.       [RESERVED]
570.         RESTRICTION ON SALE OF EXCHANGE PRODUCTS IN THE EUROPEAN UNION TO EUROPEAN UNION RETAIL INVESTORS UNDER PRIIPS [PACKAGE RETAIL AND INSURANCE BASED INVESTMENT PRODUCT]
571.-572.       [RESERVED]

GLOBEX ELECTRONIC TRADING SYSTEM RULES
573.         GLOBEX OPENING
574.         GLOBEX ACCESS RESTRICTIONS
575.         DISRUPTIVE PRACTICES PROHIBITED
576.         IDENTIFICATION OF GLOBEX TERMINAL OPERATORS
577.         [RESERVED]
578.         LIMITATION OF LIABILITY, NO WARRANTIES
579.         GLOBAL COMMAND CENTER ("GCC")
         579.A.   GCC Authority
         579.B.   GCC Services
         579.C.   Order Status
580.         CME GLOBEX TRADE MATCHING ALGORITHMS
581.-582.       [RESERVED]
583.         DOMESTIC CROSS-EXCHANGE TRADING
         583.A.   Cross-Exchange Trading by Members of Other Domestic Exchanges in Contracts Listed on Globex
        583.B.   Cross-Exchange Trading by Members of CME in Contract Listed on Globex or Other Electronic Trading Systems by Participating Domestic Exchanges
584.-587.       [RESERVED]
588.         TRADE CANCELLATIONS AND PRICE ADJUSTMENTS
         588.A.   Global Command Center Authority Regarding Trade Cancellations and Price Adjustments
         588.B.   Review of Trades
         588.C.   Price Adjustments and Cancellations
         588.D.   Alternative Resolution by Agreement of Parties
         588.E.   Liability for Losses Resulting from Price Adjustments or Cancellations and Prohibition On Claims for Losses Arising from Error Trades Executed Within the Non-Reviewable Range
         588.F.   Permissible Responses to Phantom Orders
         588.G.   Schedule of Administrative Fees
         588.H.   Globex Non-Reviewable Trading Ranges
589.         SPECIAL PRICE FLUCTUATION LIMITS
         589.A.   Initial Price Fluctuation Limits for All Contract Months
         589.B.   Triggering Events and Temporary Trading Halts

© Copyright Chicago Mercantile Exchange, Inc. All rights reserved.



CME Rulebook

590.C.   Price Fluctuation Limits on Trading Floor (Floor Trading)
INTERPRETATIONS & SPECIAL NOTICES RELATING TO CHAPTER 5
        ACCESS, CONDUCT AND APPEARANCE CODE
        QUOTATION CHANGES
        POSITION LIMIT, POSITION ACCOUNTABILITY AND REPORTABLE LEVEL TABLE
        SPECIAL PRICE FLUCTUATIONS LIMITS AND DAILY PRICE LIMITS TABLE
        TRADING AT SETTLEMENT ("TAS") TABLE

# Chapter 5
# Trading Qualifications and Practices

**500.        SCOPE OF CHAPTER**

This chapter prescribes rules concerning floor access privileges, qualifications for trading privileges, and trading practices.

## FLOOR PRIVILEGES

**501.        EMPLOYEES OF MEMBERS**

Members shall register with the Exchange all persons whom they wish to employ on the trading floor. Such employees may act as runners, communicators, clerks and broker assistants. Such employees shall not be permitted to solicit customers or benefit from the production of orders. Such employees shall not trade or have any interest in an account trading in any CME or CBOT futures or options contracts. Employees must wear a prescribed identification badge. Any member permitting trading by such employee shall be guilty of an offense against the Exchange. Remuneration to such employees shall be limited to salaries and normal bonuses. The member employer shall, upon request, provide a report to Exchange staff with respect to each such employee, setting forth the hours of employment, salary and bonus, and a copy of each employee's Internal Revenue Service W-2 Form or other documentation evidencing employment.

The following shall apply to any IMM, IOM or GEM member who also holds a broker assistant badge. Such person shall not trade for, or carry in his account or an account in which he has any interest, any positions in contracts traded on the Exchange except for those contracts which he is entitled to trade as principal or broker for others by virtue of his membership status as referenced above.

A member holding a broker assistant badge shall be required to notify his qualifying clearing member, as defined in Rule 903, of the name, address and immediate supervisor of the member or member firm by whom he is employed as a broker assistant. Upon a qualifying clearing member's revocation of trading authorization in accordance with Rule 903.E., the qualifying clearing member immediately shall give written notice to the member or member firm which employs a member as a broker assistant that the member's trading authorization has been revoked. A member holding a broker assistant badge shall be denied floor access privileges upon the revocation of trading authorization by his qualifying clearing member. The floor access privileges of a member who holds a broker assistant badge may be reinstated upon the filing of a release with the Shareholder Relations and Membership Services Department by the member's qualifying clearing member in accordance with Rule 903.D.

Members shall be responsible for ensuring that their employees comply with all Exchange rules and may, subject to a determination by an Exchange disciplinary committee, be liable for any fines imposed upon such employees by the Exchange. The Exchange may, in its sole discretion, notify a member of the existence of an Exchange investigation and the conduct which is the subject of the investigation involving one of the member's employees when the Market Regulation Department interviews such employee or, if no such interview occurs, when charges are issued against the employee by the Chief Regulatory Officer.

No person shall be registered as an employee pursuant to this rule if such person is determined by Exchange staff not to be of good moral character or if it is determined that such registration may be detrimental to the interest or welfare of the Exchange.

© Copyright Chicago Mercantile Exchange, Inc. All rights reserved.

**Pages Omitted**



CME Rulebook

5. Additional product-specific TACO requirements are set forth in the applicable product chapter in the Rulebook.

## 525.    [RESERVED]

## 526.    BLOCK TRADES

The Exchange shall designate the products in which block trades shall be permitted and determine the minimum quantity thresholds for such transactions.  The following shall govern block trades:

A.  A block trade must be for a quantity that is at or in excess of the applicable minimum threshold. Orders may not be aggregated in order to achieve the minimum transaction size, except by those entities described in Sections I. and J.

B.  Each party to a block trade must be an Eligible Contract Participant as that term is defined in Section 1a(18) of the Commodity Exchange Act.

C.  A member shall not execute any order by means of a block trade for a customer unless such customer has specified that the order be executed as a block trade.

D.  The price at which a block trade is executed must be fair and reasonable in light of (i) the size of the block trade, (ii) the prices and sizes of other transactions in the same contract at the relevant time, (iii) the prices and sizes of transactions in other relevant markets, including without limitation the underlying cash market or related futures markets, at the relevant time, and (iv) the circumstances of the markets or the parties to the block trade.

E.  Block trades shall not set off conditional orders (e.g., Stop Orders and MIT Orders) or otherwise affect orders in the regular market.

F.  Unless otherwise agreed to by the principal counterparties to the block trade, the seller, or, in the case of a brokered transaction, the broker handling the block trade, must ensure that each block trade is reported to the Exchange within the time period and in the manner specified by the Exchange. The report must include the contract, contract month, price, quantity of the transaction, the respective clearing members, the time of execution, and, for options, strike price, put or call and expiration month.  The Exchange shall promptly publish such information separately from the reports of transactions in the regular market.

G.  Block trades must be reported to the Clearing House in accordance with an approved reporting method.

H.  Clearing members and members involved in the execution of block trades must maintain a record of the transaction in accordance with Rule 536.

I.  A commodity trading advisor ("CTA") registered or exempt from registration under the Act, including, without limitation, any investment adviser registered or exempt from registration under the Investment Advisers Act of 1940, shall be the applicable entity for purposes of Sections A., B., C., and D., provided such advisors have total assets under management exceeding $25 million and the block trade is suitable for the customers of such advisors.

J.  A foreign Person performing a similar role or function to a CTA or investment adviser as described in Section I, and subject as such to foreign regulation, shall be the applicable entity for purposes of Sections A., B., C., and D., provided such Persons have total assets under management exceeding $25 million and the block trade is suitable for the customers of such Persons.

## 527.    OUTTRADES, ERRORS AND MISHANDLING OF ORDERS

### 527.A.    Outtrades Discovered During a Regular Trading Hours Trading Session

It shall be the duty of a member discovering an outtrade during a Regular Trading Hours session to immediately notify the opposite trader.  Thereafter, if the matter cannot be resolved between the parties, they shall immediately determine who will cover the trade and the trade shall immediately be covered.

### 527.B.    Outtrades Discovered After a Regular Trading Hours Trading Session

A clearing member that is unable with diligent effort to resolve an outtrade with another clearing member shall notify the member who executed the trade.  Such notice shall be given prior to the following day's Regular Trading Hours session in sufficient time to allow the member to make provisions for the resolution of the outtrade.

© Copyright Chicago Mercantile Exchange, Inc. All rights reserved.

**Pages Omitted**

**EXHIBIT 8**

> FINRA RULES  >  2000. DUTIES AND CONFLICTS

# 2010. STANDARDS OF COMMERCIAL HONOR AND PRINCIPLES OF TRADE

**The Rule**  |  Notices

A member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade.

***Cross References–***

*1122, Filing of Misleading Information as to Membership or Registration*
*2111, Suitability*
*2121.01, Mark-Up Policy*
*2342, "Breakpoint" Sales*
*5130, Restrictions on the Purchase and Sale of Initial Equity Public Offerings*
*5210, Publication of Transactions and Quotations*
*5220, Offers at stated Prices*
*5270, Front Running of Block Transactions*
*5320, Prohibition Against Trading Ahead of Customer Orders*
*IM-10100, Failure to Act Under Provisions of Code of Arbitration Procedure*
*IM-11110, Refusal to Abide by Rulings of the Committee*

Amended by SR-FINRA-2008-028 eff. Dec. 15, 2008.
Amended by SR-NASD-2005-087 eff. Aug. 1, 2006

**Selected Notices:** 96-44, 08-57.

‹ 2000. DUTIES AND CONFLICTS      UP      2020. USE OF MANIPULATIVE, DECEPTIVE OR OTHER FRAUDULENT DEVICES ›

**ARBITRATION & MEDIATION**
FINRA operates the largest securities dispute resolution forum in the United States

LEARN MORE

©2020 FINRA. All Rights Reserved.
FINRA IS A REGISTERED TRADEMARK OF THE FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.

> FINRA RULES    >    2000. DUTIES AND CONFLICTS

# 2020. Use of Manipulative, Deceptive or Other Fraudulent Devices

**The Rule**    Notices

No member shall effect any transaction in, or induce the purchase or sale of, any security by means of any manipulative, deceptive or other fraudulent device or contrivance.

**Cross References–**

*2111, Suitability*

*5210, Publication of Transactions and Quotations*

Amended by SR-FINRA-2008-028 eff. Dec. 15, 2008.

**Selected Notice:** 08-57.

‹ 2010. STANDARDS OF COMMERCIAL HONOR AND PRINCIPLES OF TRADE    UP    2030. ENGAGING IN DISTRIBUTION AND SOLICITATION ACTIVITIES WITH GOVERNMENT ENTITIES ›

**ARBITRATION & MEDIATION**

FINRA operates the largest securities dispute resolution forum in the United States

LEARN MORE

©2020 FINRA. All Rights Reserved.

FINRA IS A REGISTERED TRADEMARK OF THE FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.

❯ FINRA RULES ❯ 2000. DUTIES AND CONFLICTS

# 2060. Use of Information Obtained in Fiduciary Capacity

**The Rule**    Notices

A member who in the capacity of paying agent, transfer agent, trustee, or in any other similar capacity, has received information as to the ownership of securities, shall under no circumstances make use of such information for the purpose of soliciting purchases, sales or exchanges except at the request and on behalf of the issuer.

*Cross Reference–*

*Rule 2150. Improper Use of Customers' Securities or Funds; Prohibition Against Guarantees and Sharing in Accounts*

Amended by SR-FINRA-2009-067 eff. Feb. 15, 2010.

**Selected Notice:** 09-72.

‹ 2040. PAYMENTS TO UNREGISTERED PERSONS       UP       2070. TRANSACTIONS INVOLVING FINRA EMPLOYEES ›

## ARBITRATION & MEDIATION
FINRA operates the largest securities dispute resolution forum in the United States

LEARN MORE

©2020 FINRA. All Rights Reserved.

FINRA IS A REGISTERED TRADEMARK OF THE FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.

**EXHIBIT 9**



> FOR INVESTORS   >   LEARN TO INVEST   >   TYPES OF INVESTMENTS

# Commodity Futures

Commodity futures contracts are agreements to buy or sell a specific quantity of a commodity at a specified price on a particular date in the future. Commodities include metals, oil, grains and animal products, as well as financial instruments and currencies. With limited exceptions, trading in futures contracts must be executed on the floor of a commodity exchange.

The Commodity Futures Trading Commission (CFTC) is the federal government agency that regulates the commodity futures, commodity options, and swaps trading markets. Anyone who trades futures with the public or gives advice about futures trading must be registered with the National Futures Association (NFA), the independent regulator for anyone who trades futures with the public.

Before you invest in commodity futures, check to make sure the individual and firm are registered and whether they are the subject of any disciplinary actions. Use the NFA's Background Affiliation Status Information Center (BASIC).

## Commodity Futures

1. Commodity Futures Trading Commission
   CFTC is the federal regulator of commodity futures. Its website provides alerts, education and tools related to commodity futures.
2. National Futures Association
   NFA is the non-governmental regulator for anyone who trades futures with the public. Its website offers numerous educational resources for investors, as well as information on how to file a complaint and check out a salesperson or firm.
3. Securities and Exchange Commission
   Get an overview of commodity futures from the federal securities regulator.

## More

- Background Affiliation Status Information Center (BASIC)
  Before you invest, use BASIC to get CFTC registration and NFA membership information and futures-related regulatory and non-regulatory actions.
- Commodity Pool Fraud
  Learn more about how to recognize and avoid fraud related to commodity pools.

©2020 FINRA. All Rights Reserved.

FINRA IS A REGISTERED TRADEMARK OF THE FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.

**EXHIBIT 10**

NFA ID: 0447195

**ANDREW MICHAEL GIZIENSKI**

**Not an NFA Member**



| | Regulatory Actions ? | |
|---|---|---|
| **0** | **1** | **1** |
| NFA Actions | CFTC Actions | Exchange Actions |

VIEW ALL ACTIONS



**0** | NFA Arbitration Decisions ?

**0** | CFTC Reparations Cases ?

**History Details**
Expand for history details.

| Date | Description |
|---|---|
| **EOX HOLDINGS LLC** | |
| 01/01/2019 | ASSOCIATED PERSON WITHDRAWN |
| 01/01/2019 | NFA ASSOCIATE MEMBER WITHDRAWN |
| 01/01/2019 | SWAP ASSOCIATED PERSON WITHDRAWN |
| 02/01/2013 | ASSOCIATED PERSON REGISTERED |
| 01/22/2013 | SWAP ASSOCIATED PERSON APPROVED |
| 01/22/2013 | ASSOCIATED PERSON TEMPORARY LICENSE |
| 01/22/2013 | NFA ASSOCIATE MEMBER APPROVED |
| 10/12/2012 | ASSOCIATED PERSON PENDING |
| 10/12/2012 | NFA ASSOCIATE MEMBER PENDING |
| 10/12/2012 | SWAP ASSOCIATED PERSON PENDING |

©2020 National Futures Association. All Rights Reserved. NFA and NATIONAL FUTURES ASSOCIATION are registered trademarks of National Futures Association.

**EXHIBIT 11**

NFA ID: 0409750

**EOX HOLDINGS LLC**

**NFA Member Approved**

CFTC Registered
Introducing Broker

**Activity Status**
Access activity information provided by the firm.
View Details

Business Address
5151 San Felipe
Suite 2200
Houston, TX 77056
United States

Phone Number
713-358-5446

Doing Business As
AALPHA ENERGY
CHOICE NATURAL GAS
CHOICE POWER
CHOICE REFINED PRODUCTS
EDGE
ELITE
EQUUS
ION
OB AMERICAS
PINNACLE
PMG
PVO

|  | Regulatory Actions  ? |  |
| --- | --- | --- |
| **0** | **1** | **8** |
| NFA Actions | CFTC Actions | Exchange Actions |

VIEW ALL ACTIONS

**0**   NFA Arbitration Decisions  ?

**0**   CFTC Reparations Cases  ?

**History Details**
Expand for history details.

| Date | Description |
| --- | --- |
| 12/18/2019 | SWAP FIRM WITHDRAWN |
| 10/10/2012 | SWAP FIRM APPROVED |
| 09/20/2012 | SWAP FIRM PENDING |
| 08/07/2009 | NFA MEMBER APPROVED |
| 08/07/2009 | INTRODUCING BROKER REGISTERED |
| 04/08/2009 | INTRODUCING BROKER PENDING |
| 04/08/2009 | NFA MEMBER PENDING |

Case 4:19-cv-02901   Document 103-1   Filed on 06/30/20 in TXSD   Page 73 of 104

**Listed Principals**

Determined by their ability to control a registrant's business activities, their formal title or position with the registrant, or their ownership or financial stake in a registrant.

| Name ▲ | Title ⇕ | 10% or More Financial Interest ⇕ |
|---|---|---|
| DAVID PAUL RATLIFF | CHIEF FINANCIAL OFFICER | NO |
| ENRIQUE JAVIER LOYA | CHIEF EXECUTIVE OFFICER | YES |
| JOHN FREDRICK KLOSEK | NO LISTED TITLE | YES |
| JOSEPH FRANCIS KELLY JR | CHIEF EXECUTIVE OFFICER | YES |
| OTC GLOBAL HOLDINGS LP | | YES |
| SNEHA BAGRI AGARWAL | CHIEF COMPLIANCE OFFICER | NO |

©2020 National Futures Association. All Rights Reserved. NFA and NATIONAL FUTURES ASSOCIATION are registered trademarks of National Futures Association.

**EXHIBIT 12**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 4:19-cv-02901** |
| ) | **Hon. Sim Lake, Presiding** |
| **EOX HOLDINGS LLC and ANDREW GIZIENSKI,** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANT EOX HOLDINGS LLC'S FOURTH SET OF INTERROGATORIES AND
SECOND SET OF PRODUCTION REQUESTS**

Defendants EOX Holdings LLC respectfully submits the following Fourth Set of
Interrogatories and Second Set of Production Requests to Plaintiff Commodity Futures Trading
Commission

**DEFINITIONS AND INSTRUCTIONS**

1.      The terms "You," "Your," "Plaintiff," "Commission," and "CFTC" mean the
Commodity Futures Trading Commission, its Commissioners, staff, employees, agents and
representatives.

2.      The terms "Defendant(s)" means Andrew Gizienski, and/or (as the context requires)
EOX Holdings LLC as well as any of their parents, subsidiaries, and affiliates, divisions, related
corporations, partnerships, proprietorships, associations, or organizations, and all directors, principals,
officers, partners, members, consultants, agents, employees, former employees, representatives,
beneficiaries, attorneys, accountants, assigns, and/or anyone acting or purporting to act on their behalf.

3.      "Action" shall mean this case.

4.      "Person" shall mean an individual, firm, partnership, corporation, proprietorship,
committee, or any other organization or entity.

1

5.      "Document" shall have the fullest and broadest meaning possible under the Federal Rules of Civil Procedure, including but not limited to, all materials, writings, and records information of every type and description, such as "blue sheets" or any other reports, summaries and/or compilations of customer, employee, and proprietary trading data, periodic account statements of any type, trade confirmations, orders slips, trade blotters, opening account documents, correspondence, emails, text messages, memoranda, tapes, stenographic or handwritten notes, transcripts of any kind whatsoever (including but not limited to transcripts of hearings, testimony, or interview, and all exhibits thereto, witness statements, and all exhibits thereto), declarations and all exhibits thereto, affidavits and all exhibits thereto, interviews, spreadsheets, data bases, data or data compilations, studies, publications, brochures, promotional materials, advertisements in any media, books, pamphlets, pictures, films, voice recordings, audiotapes, videotapes, computer disks or diskettes, reports, financial statements, telephone bills or other lists of telephone calls, text messages and/or emails, documents from banks or other financial or credit institutions, including bank statements, credit or debit card statements, wire transfers, checks, deposit slips, charge slips or receipts, calendars, travel records, receipts, confirmations and/or tickets, press releases, registration files and/or applications for registration, membership files, subpoenas and/or investigative demands or requests of any kind, litigation releases or other public statements, and/or other documents of any kind whatsoever. "Document" includes all versions, drafts, and copies of every such document whenever any such version, draft, or copy of a document is not an identical copy of the original or where such version, draft or copy contains any commentary, notes or markings whatsoever that do not appear on the original.

6.      "Electronically stored information" (ESI) means anything stored or maintained as in electronic, magnetic or computer readable format, and includes, all materials, writings, and records information of every type and description, including but not limited to "blue sheets" or any other

2

reports of customer, employee, and proprietary trading data, periodic account statements of any type, trade confirmations, orders slips, trade blotters, opening account documents, correspondence, emails, text messages, memoranda, tapes, stenographic or handwritten notes, transcripts of any kind whatsoever (including but not limited to transcripts of hearings, testimony, or interview, and all exhibits thereto, witness statements and all exhibits thereto), declarations and all exhibits thereto, affidavits and all exhibits thereto, interviews, spreadsheets, data bases, data or data compilations, studies, publications, brochures, promotional materials, advertisements in any media, books, pamphlets, pictures, films, voice recordings, audiotapes, videotapes, computer disks or diskettes, reports, financial statements, telephone bills or other lists of telephone calls, text messages and/or emails, documents from banks or other financial or credit institutions, including bank statements, credit or debit card statements, wire transfers, checks, deposit slips, charge slips  or receipts, and other documents of any kind whatsoever. ESI includes all versions, drafts and copies of every such thing whenever any such version, draft or copy of such thing is not an identical copy of the original or where such version, draft or copy contains any commentary, notes or markings whatsoever that do not appear on the original.

7.      "Other things" means anything of any kind, character or nature whatsoever, including but not limited to tangible things, that do not fall within the terms "documents" and/or "ESI."

8.      "Possession, custody and controls" means Your possession, custody, or control of that of any person acting in any way for You or on Your behalf, including any attorneys, insurers, agents, independent contractors.

9.      The phrase "Exchange, Board of Trade or Other Trading Market Entity" means every Registered Entity (as that term is used in the Commodity Exchange Act, as amended and any Regulations promulgated by You), exchange, futures exchange, options exchange, contract market, board of trade, foreign board of trade, derivatives clearing organization, trading facility, derivative

transaction execution facility, swap data repository, swap execution facility, and/or any other organization or entity of any kind, in existence and/or operating since January 1, 1983) including but not limited to during the Relevant Period alleged in Paragraph 1 of Your Complaint in this Action), whether or not registered with or regulated by You.

10.     By these Interrogatories and Requests for Production, Plaintiffs include all documents, ESI and other things of any kind whatsoever that are or may be within the scope of the Federal Rules of Civil Procedure, including but not limited to Rules 26 and 34.

11.     "Relate" or "Pertain" means anything, whether a person, information, document or other thing of any kind whatsoever, that constitutes, contains, concerns, embodies, responds to, describes, records, regards, refers to, analyzes, or is otherwise pertinent in any way whatsoever to the subject matter inquired about, including, without limitation, documents from which each such document is derived.

12.     "Identify" or "describe" when used in reference to (a) an individual shall mean to state the person's full name, present or last-known address, and telephone number (designating which), and present or last-known position or business affiliation (designating which), plus the person's position or business affiliation at the time referred to; (b) any other person, organization, or entity shall mean to state its full name and present or last-known address and telephone number (designating which); (c) an event shall mean to state the date on which the event occurred, the location where the event occurred, the full name and contact information of any participants and/or witnesses to the event, and a description summarizing the event in full and fair detail including all relevant details, and (d) a file, record, document, or other thing shall mean to state the type (e.g. memo, email, letter), date, subject, author, recipient, and copyee, and its form, whether electronic or hard copy.

13.     Each paragraph is to be construed independently and not by or with reference to any other paragraph for purposes of limiting the scope of any particular Interrogatory for documents.

4

14.     With respect to any document or information withheld on a claim of attorney-client or attorney-work product privilege, or any other privilege or rule or doctrine of confidentiality, provide with Your response a list identifying each withheld item of information by date, subject matter, author, and recipient(s), and the privilege or rule of doctrine of confidentiality claimed.

15.     These Interrogatories and Requests for Production are deemed to be continuing in nature pursuant to the Federal Rules of Civil Procedure, so as to require supplementation where appropriate and required.

16.     Please take notice that objection will be made at the time of trial to any attempt to introduce evidence which is sought by these Interrogatories as to which no disclosure has been made.

17.     If any information, communication or document responsive to any of the Interrogatories has previously been produced by the CFTC or any other person or entity, in lieu of re-producing the document(s), identify the responsive documents by Bates Number or, if there are no Bates Numbers, provide any other specifically identifying information.

### EOX HOLDINGS LLC'S FOURTH SET OF INTERROGATORIES

Defendant EOX Holdings LLC respectfully requests and requires Plaintiff to answer the following Interrogatories under oath within the time permitted by the Federal Rules of Civil Procedure.

1.     For each and every Exchange, Board of Trade or Other Trading Market Entity, identify each and every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto, that prohibits or at any time prohibited, limits or limited, or regulates or regulated in any way whatsoever the disclosure of information by one party to any counterparty and/or potential counterparty to a block trade and/or potential block trade (including but not limited to the types of disclosures involved in this case that You are contending were improper). If any such entity does not have or did not have any such rule or other published mandatory policy, state "None" for that entity.

2.      For each and every Exchange, Board of Trade or Other Trading Market Entity, identify each and every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto (including but not limited to CME Rule 532, CBOT Rule 532, NYMEX Rule 532, COMEX Rule 532, and ICE Europe Futures Rule G.4) that (1) exempts parties and counterparties in block trades and/or the negotiation of block trades from any of the any rule or other published mandatory policy that prohibits or at any time prohibited, limits or limited, or regulates or regulated in any way whatsoever the disclosure of information by one party to any counterparty and/or potential counterparty to a block trade and/or potential block trade, including the types of disclosures involved in this case that You are contending were improper, and/or (2) permits them, whether conditionally or not, to disclose such information and/or to engage in pre-execution communications, including communications for the purpose of discerning interest in the execution of a transaction prior to the terms of an order being submitted for execution. If any such entity does not have or did not have any such rule or other published mandatory policy, state "None" for that entity.

### EOX HOLDINGS LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

Defendant EOX Holdings LLC respectfully requests and requires Plaintiff to produce the following files, records, Documents, and other things of any kind whatsoever (including but not limited to electronically stored information (ESI)), relating or pertaining in any way whatsoever to the following:

1.      Any and all Documents related or pertaining in any way whatsoever to the foregoing Interrogatories and Your answers thereto.

2.      Each and every rule and/or other policy or guidance of any kind inquired about and/or identified in Interrogatory 1 and/or Your answers thereto, including but not limited to any Documents related thereto, as well as any Documents related thereto exchanged by You with each of those Entities,

and any all Documents showing including the date said rule or other policy was promulgated, the date it was submitted to You for review, the date it was approved by You, and the date it became effective.

3.       Each and every rule and/or other policy or guidance of any kind inquired about and/or identified in Interrogatory 2 and/or Your answers thereto, including but not limited to any Documents related thereto, as well as any Documents related thereto exchanged by You with each of those Entities, and Documents showing including the date said rule or other policy was promulgated, the date it was submitted to You for review, the date it was approved by You, and the date it became effective.

4.       (a) Each and every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto, of each and every Exchange, Board of Trade or Other Trading Market Entity that prohibits or at any time since January 1, 1983 prohibited, limits or limited, or regulates or regulated in any way whatsoever the disclosure of information by one party to any counterparty and/or potential counterparty to a block trade and/or potential block trade (including but not limited to the types of disclosures involved in this case that You are contending were improper).

(b)  Any and all files, records, Documents or other things of any kind whatsoever pertaining or relating to (i) the promulgation of every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto produced or identified by You in response to (a) above, (ii) the date each was submitted to You for review or other action, (iii) the date each was approved or other action was taken thereon by You, and (iv) the date each became effective.

5.       (a) Each and every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto of each and every Exchange, Board of Trade or Other Trading Market Entity (including but not limited to CME Rule 532, CBOT Rule 532, NYMEX Rule 532, COMEX Rule 532, and ICE Europe Futures Rule G.4) that (1) exempts parties and counterparties in block trades and/or the negotiation of block trades from any of the any rule or other published mandatory policy that prohibits or at any time prohibited, limits or limited, or regulates or regulated in any way whatsoever

7

the disclosure of information by one party to any counterparty and/or potential counterparty to a block trade and/or potential block trade, including the types of disclosures involved in this case that You are contending were improper, and/or (2) permits them, whether conditionally or not, to disclose such information and/or to engage in pre-execution communications, including communications for the purpose of discerning interest in the execution of a transaction prior to the terms of an order being submitted for execution.

(b)  Any and all files, records, Documents or other things of any kind whatsoever pertaining or relating to (i) the promulgation of every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto produced or identified by You in response to (a) above, (ii) the date each was submitted to You for review or other action, (iii) the date each was approved or other action was taken thereon by You, and (iv) the date each became effective.

6.    Any and all Documents filed in, and any and all Documents exchanged between, sent by, and/or received by, You and any other Person in or in connection with each and every case, lawsuit, enforcement action, subpoena enforcement action, and/or other proceeding of any kind whatsoever, related or pertaining in any way whatsoever to disclosure of information in connection with block trading or potential block trading and/or "insider trading," including but not limited to any cases originated, developed, assigned to, reviewed by, or handled in any way whatsoever by Your Insider Trading & Information Protection Task Force, and including but not limited to the following matters, but excluding this Action:

a.    *In re Classic Energy LLC and Matthew Webb*, CFTC Docket No. 19-50.

b.    *In re Arya Motazedi*, CFTC Docket No. 16-02.

* * * *

Date:   March 9, 2020                         Respectfully submitted,

                                               s/ Constantine John Gekas
                                              Constantine John Gekas
                                              ATTORNEY-IN-CHARGE
                                              State of Illinois Bar No. 3126670
                                              Southern District of Texas Bar No. 2799779
                                               CJG@gekaslaw.com
                                              GEKAS LAW LTD.
                                              33 North LaSalle Street STE 2220
                                              Chicago, Illinois 60602
                                              Tel: (312) 726-4501; Fax: (312) 726-4505
                                              *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on March 9, 2020, the foregoing was served by Email and regular mail

upon:

Candice Haan (chaan@cftc.gov)
Robert Howell (rhowell@cftc.gov)
U.S. COMMODITY FUTURES TRADING COMMISSION
525 W. Monroe, Suite 1100
Chicago, Illinois 60660

_/s/ Constantine John Gekas_____

**EXHIBIT 13**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiff, | Case No.: 4:19-cv-02901 |
| v. | Hon. Sim Lake |
| EOX HOLDINGS LLC and ANDREW GIZIENSKI, | |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**FOURTH SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff U.S. Commodity Futures Trading Commission ("Commission") hereby objects and responds to Defendants EOX Holdings LLC and Andrew Gizienski ("Defendants") Fourth Set of Interrogatories ("Interrogatories") as follows:

**GENERAL OBJECTIONS**

1.      The Commission's responses and objections as set forth herein are made without prejudice to the Commission's right to assert further responses or objections should it discover additional grounds for such responses or objections. The Commission makes the following general objections to each interrogatory. The assertion of the same, similar, or additional objections, or the provision of any responses to any of these Interrogatories, shall not waive any of the Commission's objections as set forth below.

1

2.      The Commission objects to the Interrogatories to the extent that they seek to impose obligations greater than those required by the Federal Rules of Civil Procedure ("Rules") or other applicable law.

3.      The Commission objects to the Interrogatories to the extent they seek or purport to require the disclosure of information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, the government investigative privilege, the law enforcement privilege, or any other principle of non-disclosure, privilege, protection or immunity applicable under governing law.

4.      The Commission objects to the Interrogatories to the extent that they seek information that is not relevant to the allegations in the Complaint or reasonably calculated to lead to the discovery of admissible evidence.

5.      The Commission objects to the Interrogatories to the extent that they seek information already in Defendants' possession, or materials equally available to the Commission and Defendants, and are, therefore, unduly burdensome.

6.      The Commission objects to each Interrogatory to the extent it assumes facts not in evidence.

7.      The Commission objects to each Interrogatory to the extent that it is vague, ambiguous or confusing.

8.      Discovery in this case and the Commission's investigation into Defendants' conduct is ongoing. The Commission responds to the Interrogatories based upon information and documentation available as of the date hereof and reserves the right to supplement or amend its responses.

9.     The Commission objects to the Interrogatories to the extent that they require more than a reasonable search to locate responsive information.

10.     Any offer to produce documents is made subject to these General Objections, the Specific Objections to each individual Interrogatory, and any limitations or qualifications contained in the General Objections or Specific Objections.

11.     Subject to and without waiving the foregoing objections, the Commission will respond to the Interrogatories below by providing relevant, non-privileged information currently available to it (to the extent that documents responsive to such Interrogatories have not already produced to Defendants). Any disclosure of privileged or protected information is inadvertent and is not intended to be a waiver of any privilege or of any ground for objecting to discovery.

## RESPONSES AND SPECIFIC OBJECTIONS

**INTERROGATORY NO. 11:** For each and every Exchange, Board of Trade or Other Trading Market Entity, identify each and every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto, that prohibits or at any time prohibited, limits or limited, or regulates or regulated in any way whatsoever the disclosure of information by one party to any counterparty and/or potential counterparty to a block trade and/or potential block trade (including but not limited to the types of disclosures involved in this case that You are contending were improper). If any such entity does not have or did not have any such rule or other published mandatory policy, state "None" for that entity.


**RESPONSE:**

The Commission objects to Interrogatory No. 11 on the grounds that it is overbroad, unduly burdensome and beyond the scope of permissible discovery because it seeks information that is irrelevant to the parties' claims and defenses and it is not proportional to the needs of the case pursuant to Fed. R. Civ. P. 26(b) to the extent it seeks "every rule and/or policy or guidance of any kind whatsoever" (collectively "Rules and Policies") from "each and every Exchange, Board of Trade or Other Trading Market Entity" (collectively "Exchanges and Trading Entities") because every Rule and Policy from every Exchange and Trading Entity is not relevant to the

3

issues in this litigation. The Commission further objects to Interrogatory No. 11 to the extent it

seeks information that is not in the Commission's possession, custody or control, and on the

basis that it seeks information that is readily accessible to Defendants. Providing such

information in answering this interrogatory would be oppressive, unduly burdensome and

unnecessarily expensive, and the burden of providing such information in answering this

interrogatory is substantially the same or less for Defendants as for the Commission.  *See* Federal

Rule of Civil Procedure 33(d).  The Commission further objects to this Interrogatory to the

extent it seeks information that is not in the Commission's possession, custody or control.

Subject to and without waiving these objections and the General objections, the

Commission refers to its answer to Interrogatory No. 7. As stated in its answer to Interrogatory

No. 7, the Commission's investigation continues, and the Commission reserves the right to

supplement this answer after conducting additional discovery.  The Commission further refers to

ECF Nos. 1 and 35.

**INTERROGATORY NO. 12:** For each and every Exchange, Board of Trade or Other Trading
Market Entity, identify each and every rule and/or other policy or guidance of any kind whatsoever,
and any amendment thereto (including but not limited to CME Rule 532, CBOT Rule 532, NYMEX
Rule 532, COMEX Rule 532, and ICE Europe Futures Rule G.4) that (1) exempts parties and
counterparties in block trades and/or the negotiation of block trades from any of the any rule or other
published mandatory policy that prohibits or at any time prohibited, limits or limited, or regulates or
regulated in any way whatsoever the disclosure of information by one party to any counterparty
and/or potential counterparty to a block trade and/or potential block trade, including the types of
disclosures involved in this case that You are contending were improper, and/or (2) permits them,
whether conditionally or not, to disclose such information and/or to engage in pre-execution
communications, including communications for the purpose of discerning interest in the execution of
a transaction prior to the terms of an order being submitted for execution. If any such entity does not
have or did not have any such rule or other published mandatory policy, state "None" for that entity.

**RESPONSE:**

The Commission objects to Interrogatory No. 12 on the grounds that it is overbroad,

unduly burdensome and beyond the scope of permissible discovery because it seeks information

that is irrelevant to the parties' claims and defenses and it is not proportional to the needs of the case pursuant to Fed. R. Civ. P. 26(b) to the extent it seeks "every rule and/or policy or guidance of any kind whatsoever" (collectively "Rules and Policies") from "each and every Exchange, Board of Trade or Other Trading Market Entity" (collectively "Exchanges and Trading Entities") because every Rule and Policy from every Exchange and Trading Entity is not relevant to the issues in this litigation. The Commission further objects to Interrogatory No. 12 to the extent it seeks information that is not in the Commission's possession, custody or control, and on the basis that it seeks information that is readily accessible to Defendants. Providing such information in answering this interrogatory would be oppressive, unduly burdensome and unnecessarily expensive, and the burden of providing such information in answering this interrogatory is substantially the same or less for Defendants as for the Commission. *See* Federal Rule of Civil Procedure 33(d).  The Commission further objects to this Interrogatory to the extent it seeks information that is not in the Commission's possession, custody or control.

Subject to and without waiving these objections and the General objections, the Commission refers Defendants to CFTC-02-0000000932-1062.   The Commission's investigation continues, and the Commission reserves the right to supplement this answer after conducting additional discovery.

Date: April 8, 2020                                     Respectfully submitted,

                                                        s/ Candice Haan
                                                        Candice Haan (IL Bar #6315007)

                                                        COMMODITY FUTURES TRADING COMMISSION
                                                        525 W. Monroe Street, Suite 1100
                                                        Chicago, IL 60661
                                                        Telephone:   (312) 596-0700
                                                        Facsimile:   (312) 596-0714
                                                        E-mail:      chaan@cftc.gov

5

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2020, I caused Plaintiff's Responses to Defendants'

Fourth Set of Interrogatories to be served on all counsel of record for Defendants.


s/ Candice Haan
_____

6

## <u>VERIFICATION</u>

I, Heather Dasso, have read the response to Defendants' Fourth Set of Interrogatories to Plaintiff CFTC and verify under penalty of perjury that it is true and correct to the best of my knowledge, information, and belief based on reasonable inquiry.


Dated: April 8, 2020                    /s/ Heather Dasso
                                        Heather Dasso

7

**EXHIBIT 14**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiff, | Case No.: 4:19-cv-02901 |
| v. | |
| EOX HOLDINGS LLC and ANDREW GIZIENSKI, | Hon. Sim Lake |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
SECOND SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff U.S. Commodity Futures Trading Commission ("Commission") hereby objects and responds to Defendants EOX Holdings LLC and Andrew Gizienski ("Defendants") Second Set of Requests for Production ("Requests for Production") as follows:

**GENERAL OBJECTIONS**

1.      The Commission's responses and objections as set forth herein are made without prejudice to the Commission's right to assert further responses or objections should it discover additional grounds for such responses or objections. The Commission makes the following general objections to each request. The assertion of the same, similar, or additional objections, or the provision of any responses to any of these Requests for Production, shall not waive any of the Commission's objections as set forth below.

1

2.      The Commission objects to the Requests to the extent that they seek to impose obligations greater than those required by the Federal Rules of Civil Procedure ("Rules") or other applicable law.

3.      The Commission objects to the Requests to the extent they seek or purport to require the disclosure of information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, the government investigative privilege, the law enforcement privilege, or any other principle of non-disclosure, privilege, protection or immunity applicable under governing law. The Commission does not intend to waive any of the privileges asserted in this objection by any inadvertent production of protected documents which may occur, despite the Commission's diligence. The Commission reserves the right to demand the return of any privileged documents inadvertently produced to Defendants. Furthermore, the Commission reserves the right to amend its list of documents for which it claims these privileges and reserves its right to supplement production.

4.      The Commission objects to the Requests to the extent that they call for the disclosure of information or material that was prepared in anticipation of litigation or trial; call for the disclosure of information or material that reflects the mental impressions of Plaintiff's attorneys or their agents; and/or call for the disclosure of communications between the CFTC and its attorneys or agents/consultants. Such information or material is protected from discovery under the work product doctrine, and/or the attorney/client privilege. The Commission does not intend to waive any of the privileges asserted in this objection by any inadvertent production of protected documents which may occur, despite the Commission's diligence. The Commission reserves the right to demand the return of any privileged documents inadvertently produced to

2

Defendants. Furthermore, the Commission reserves the right to amend its list of documents for which it claims these privileges and reserves its right to supplement production.

5.      To provide documents to Defendants in the most expeditious manner, Plaintiff will produce non-privileged documents in the Division of Enforcement's possession and subsequently generate and provide a privilege log identifying documents it is withholding on the basis of any privilege or principle of non-disclosure consistent with Rule 26.  In the interest of cost and efficiency, Plaintiff will not review, produce or create a privilege log for communications among the EOX investigation/litigation team and other CFTC staff who assisted with the investigation and internal documents created by the EOX investigation/litigation team that are covered by the attorney work product doctrine, attorney client privilege, deliberative process privilege and/or the investigative privilege.

6.      The Commission objects to the Requests to the extent that they seek information that is not relevant to the allegations in the Complaint or reasonably calculated to lead to the discovery of admissible evidence. The Commission objects to the breadth of the Requests to the extent that they impose an unreasonable expense or will create a significant delay that would be disproportionate to the probative value or relevance of the material sought.

7.      The Commission objects to the Requests to the extent that they seek information already in Defendants' possession, or materials equally available to the Commission and Defendants, and are, therefore, unduly burdensome.

8.      The Commission states that some of the documents that may be produced may contain an individual's social-security number, taxpayer-identification number, date of birth, financial-account number, or other personal information. In the interest of expediency and efficiency, and consistent with the Protective Order entered in this case, the Division of

3

Enforcement will not search for all such information in the documents it produces to Defendants and instead will produce documents pursuant to the Protective Order.

9.      Discovery in this case and the Commission's investigation into Defendants' conduct is ongoing. The Commission responds to the Requests based upon information and documentation available as of the date hereof and reserves the right to supplement or amend its responses.

10.      By responding to the Requests, the Commission does not concede the relevancy, materiality or admissibility of any information sought by Defendants.

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS'
SECOND SET OF REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:**

Any and all Documents related or pertaining in any way whatsoever to the foregoing Interrogatories and Your answers thereto.

**RESPONSE:**

The Commission objects to Request No. 1 on the grounds that it is overbroad, unduly burdensome and beyond the scope of permissible discovery because it seeks information that is irrelevant to the parties' claims and defenses and it is not proportional to the needs of the case pursuant to Fed. R. Civ. P. 26(b) to the extent it seeks "any and all documents related or pertaining in any way whatsoever."  The Commission further objects to this request to the extent that it seeks the disclosure of information or material protected from discovery under the deliberative process privilege, the government investigative privilege, the law enforcement privilege, the work product doctrine, the attorney/client privilege, and/or any other applicable privilege or immunity.

4

**REQUEST NO. 2:**

Each and every rule and/or other policy or guidance of any kind inquired about and/or identified in Interrogatory 1 and/or Your answers thereto, including but not limited to any Documents related thereto, as well as any Documents related thereto exchanged by You with each of those Entities, and any all Documents showing including the date said rule or other policy was promulgated, the date it was submitted to You for review, the date it was approved by You, and the date it became effective.

**RESPONSE:**

The Commission objects to Request No. 2 on the grounds that it is overbroad, unduly burdensome and beyond the scope of permissible discovery because it seeks information that is irrelevant to the parties' claims and defenses and it is not proportional to the needs of the case or relevant to the allegations in the Complaint. The Commission objects to this request to the extent that it seeks the disclosure of information or material protected from discovery under the deliberative process privilege, the government investigative privilege, the law enforcement privilege, the work product doctrine, the attorney/client privilege, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing general and specific objections, the Commission states that is has already produced all responsive, non-privileged documents responsive to this request. *See* CFTC-02-0000000933-2926. The Commission's investigation continues, and the Commission reserves the right to supplement this answer after conducting additional discovery.

**REQUEST NO. 3:**

Each and every rule and/or other policy or guidance of any kind inquired about and/or identified in Interrogatory 2 and/or Your answers thereto, including but not limited to any Documents related thereto, as well as any Documents related thereto exchanged by You with each of those Entities, and Documents showing including the date said rule or other policy was promulgated, the date it was submitted to You for review, the date it was approved by You, and the date it became effective.

5

**RESPONSE:**

The Commission objects to Request No. 3 on the grounds that it is overbroad, unduly burdensome and beyond the scope of permissible discovery because it seeks information that is irrelevant to the parties' claims and defenses, it is not proportional to the needs of the case pursuant to Fed. R. Civ. P. 26(b), and not tailored to the exchanges or rules relevant to the claims against Defendants.  The Commission objects to this request to the extent that it seeks the disclosure of information or material protected from discovery under the deliberative process privilege, the government investigative privilege, the law enforcement privilege, the work product doctrine, the attorney/client privilege, and/or any other applicable privilege or immunity. The Commission further objects to this Request on the basis that it seeks information that is readily accessible to Defendants and the burden of producing such information in answering this request is substantially the same or less for Defendants as for the Commission.

Subject to and without waiving the foregoing general and specific objections, the Commission states that is has already produced all responsive, non-privileged documents responsive to this request.  *See* CFTC-02-0000000933-2926.  The Commission's investigation continues, and the Commission reserves the right to supplement this answer after conducting additional discovery.

**REQUEST NO. 4:**

(a) Each and every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto, of each and every Exchange, Board of Trade or Other Trading Market Entity that prohibits or at any time since January 1, 1983 prohibited, limits or limited, or regulates or regulated in any way whatsoever the disclosure of information by one party to any counterparty and/or potential counterparty to a block trade and/or potential block trade (including but not limited to the types of disclosures involved in this case that You are contending were improper).

(b)  Any and all files, records, Documents or other things of any kind whatsoever pertaining or relating to (i) the promulgation of every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto produced or identified by You in response to (a) above, (ii) the date each was submitted to You for review or other action, (iii) the date each

6

was approved or other action was taken thereon by You, and (iv) the date each became effective.

**RESPONSE:**

The Commission objects to Request No. 4 on the grounds that it is overbroad, unduly burdensome and beyond the scope of permissible discovery because it seeks information that is irrelevant to the parties' claims and defenses, it is not proportional to the needs of the case pursuant to Fed. R. Civ. P. 26(b), and not tailored to the exchanges or rules relevant to the claims against Defendants.  The Request is also overbroad because of the timeframe "since January 1, 1983."  The Commission objects to this request to the extent that it seeks the disclosure of information or material protected from discovery under the deliberative process privilege, the government investigative privilege, the law enforcement privilege, the work product doctrine, the attorney/client privilege, Section 8(a) of the Commodity Exchange Act and Commission Regulation 145.5(c)(1), and/or any other applicable privilege or immunity.  The Commission further objects to this Request on the basis that it seeks information that is readily accessible to Defendants and the burden of producing such information in answering this request is substantially the same or less for Defendants as for the Commission.

**REQUEST NO. 5:**

(a) Each and every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto of each and every Exchange, Board of Trade or Other Trading Market Entity (including but not limited to CME Rule 532, CBOT Rule 532, NYMEX Rule 532, COMEX Rule 532, and ICE Europe Futures Rule G.4) that (1) exempts parties and counterparties in block trades and/or the negotiation of block trades from any of the any rule or other published mandatory policy that prohibits or at any time prohibited, limits or limited, or regulates or regulated in any way whatsoever the disclosure of information by one party to any counterparty and/or potential counterparty to a block trade and/or potential block trade, including the types of disclosures involved in this case that You are contending were improper, and/or (2) permits them, whether conditionally or not, to disclose such information and/or to engage in pre-execution communications, including communications for the purpose of discerning interest in the execution of a transaction prior to the terms of an order being submitted for execution.

7

(b) Any and all files, records, Documents or other things of any kind whatsoever pertaining or relating to (i) the promulgation of every rule and/or other policy or guidance of any kind whatsoever, and any amendment thereto produced or identified by You in response to (a) above, (ii) the date each was submitted to You for review or other action, (iii) the date each was approved or other action was taken thereon by You, and (iv) the date each became effective.

**RESPONSE:**

The Commission objects to Request No. 5 on the grounds that it is overbroad, unduly burdensome and beyond the scope of permissible discovery because it seeks information that is irrelevant to the parties' claims and defenses, it is not proportional to the needs of the case pursuant to Fed. R. Civ. P. 26(b), and not tailored to the exchanges or rules relevant to the claims against Defendants.  The Request is also overbroad because of the timeframe "since January 1, 1983."  The Commission objects to this request to the extent that it seeks the disclosure of information or material protected from discovery under the deliberative process privilege, the government investigative privilege, the law enforcement privilege, the work product doctrine, the attorney/client privilege, Section 8(a) of the Commodity Exchange Act and Commission Regulation 145.5(c)(1), and/or any other applicable privilege or immunity.  The Commission further objects to this Request on the basis that it seeks information that is readily accessible to Defendants and the burden of producing such information in answering this request is substantially the same or less for Defendants as for the Commission.

Subject to and without waiving the foregoing general and specific objections, the Commission states that is has already produced all responsive, non-privileged documents responsive to this request.  *See* CFTC-02-0000000932-1062.  The Commission's investigation continues, and the Commission reserves the right to supplement this answer after conducting additional discovery.

**REQUEST NO. 6:**

8

Any and all Documents filed in, and any and all Documents exchanged between, sent by, and/or received by, You and any other Person in or in connection with each and every case, lawsuit, enforcement action, subpoena enforcement action, and/or other proceeding of any kind whatsoever, related or pertaining in any way whatsoever to disclosure of information in connection with block trading or potential block trading and/or "insider trading," including but not limited to any cases originated, developed, assigned to, reviewed by, or handled in any way whatsoever by Your Insider Trading & Information Protection Task Force, and including but not limited to the following matters, but excluding this Action:

> a. *In re Classic Energy LLC and Matthew Webb*, CFTC Docket No. 19-50.

> b. *In re Arya Motazedi*, CFTC Docket No. 16-02.

**RESPONSE:**

The Commission objects to Request No. 6 on the grounds that it is overbroad, unduly burdensome and beyond the scope of permissible discovery because it seeks information that is irrelevant to the parties' claims and defenses, it is not proportional to the needs of the case pursuant to Fed. R. Civ. P. 26(b), and not tailored to the exchanges or rules relevant to the claims against Defendants.  The Request is also overbroad because of the timeframe "since January 1, 1983."  The Commission objects to this request to the extent that it seeks the disclosure of information or material protected from discovery under the deliberative process privilege, the government investigative privilege, the law enforcement privilege, the work product doctrine, the attorney/client privilege, Section 8(a) of the Commodity Exchange Act and Commission Regulation 145.5(c)(1), and/or any other applicable privilege or immunity.  The Commission also objects to this Request on the basis that it seeks information that is publicly available and thus the burden of producing such information in answering this request is substantially the same or less for Defendants as for the Commission.

9

Date: April 8, 2020                              Respectfully submitted,

                                                 s/ Candice Haan
                                                 _____
                                                 Candice Haan (IL Bar #6315007)

                                                 COMMODITY FUTURES TRADING COMMISSION
                                                 525 W. Monroe Street, Suite 1100
                                                 Chicago, IL 60661
                                                 Telephone:   (312) 596-0700
                                                 Facsimile:   (312) 596-0714
                                                 E-mail:      chaan@cftc.gov

10

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2020, I caused Plaintiff's Responses to Defendants' First Set of Requests for Production to be served on all counsel of record for Defendants.


s/ Candice Haan
_____

11