# Exhibit 1

# ICE Futures U.S.®, Inc.

## TRADING RULES

### TABLE OF CONTENTS

| Rule | GENERAL TRADING RULES |
|---|---|
| 4.00 | Compliance with Rules and Orders; Consent to Jurisdiction |
| 4.01 | Duty to Supervise |
| 4.02 | Trade Practice Violations |
| 4.03 | Dual Trading Violations |
| 4.04 | Conduct Detrimental to the Exchange |
| 4.05 | Prohibition on Dissemination of False Information |
| 4.06 | Exchange for Related Positions |
| 4.07 | Block Trading |
| 4.08 | Access to ETS |
| 4.09 | Access for Submitting Block Trades and Other Non-Competitive Transactions |
| 4.10 | Clearing Member Responsibilities |
| 4.11 | ETS Access From the Trading Floor |
| 4.12 | Revocation of Direct Access Authorization by Clearing Member |
| 4.13 | eBadges and Responsible Individuals |
| 4.14 | Effect of Termination or Suspension of Clearing Member |
| 4.15 | Required Identifications |

**ORDERS**

| 4.16 | Customer Disclosure Statement |
|---|---|
| 4.17 | Acceptable Orders |
| 4.18 | Order Entry |
| 4.19 | Audit Trail Requirements for Electronic Orders Submitted Through Direct Access or Order Routing Systems |
| 4.20 | Revising Orders |
| 4.21 | Deactivating and Deleting Orders |

**TRADING**

| 4.22 | Pre-Trading Session |
|---|---|
| 4.23 | Opening Match |
| 4.24 | Open and Close of Electronic Trading Session |
| 4.25 | Trading Hours |
| 4.26 | Order Execution |
| 4.27 | Priority of Execution |
| 4.28 | Interval Price Limits |
| 4.29 | Invalid Trades |
| 4.30 | Error Trades |
| 4.31 | Errors and Omissions in Handling Orders |

4.32        Misuse of ETS
4.33        Termination of ETS Connection

**SETTLEMENT AND CLEARING**

4.34        Settlement Prices
4.35        Settlement Premiums
4.36        Allocation of Trades
4.37        Transfer Transactions Not Required To Be Made Competitively

**TRADING FLOOR RULES**

4.38        Discretionary Account
4.39        Hours Exchange and Trading Floor is Open
4.40        Trading Floor Access; Trading Restrictions; and Authorized
                    Representation
4.41        Clerk Qualification Requirements, Registration Procedures,
                    and Trading Prohibitions
4.42        Electronic Devices

**INSTANT MESSAGE (IM) POLICY**


**APPENDIXES**

APPENDIX I    -  Error Trade Policy
APPENDIX II   -  Exchange Messaging Policy
APPENDIX III -  Self-Trade Prevention Functionality Policy

# ICE FUTURES U.S.®, INC.

## TRADING RULES

## GENERAL TRADING RULES

**Rule 4.00.  Compliance with Rules and Orders, Consent to Jurisdiction**

(a) Any Person initiating or executing a Transaction on or subject to the Rules of the Exchange directly or through an intermediary, and any Person for whose benefit such a transaction has been initiated or executed, expressly consents to the jurisdiction of the Exchange and agrees to be bound by and comply with the Rules of the Exchange in relation to such transactions, including, but not limited to, rules requiring cooperation and participation in investigatory and disciplinary processes.  Any futures commission merchant, introducing broker, associated person, or foreign Person performing a similar role that charges a commission or fee in connection with a Transaction on or subject to the Rules of the Exchange also expressly consents to the Exchange's jurisdiction.

(b) It shall be a violation of the Rules for any Person to furnish false information, or fail to furnish information when requested, to the Board or to any committee, subcommittee, officer or employee of the Exchange in the course of its, their, or his duties.

(c) It shall be a violation of the Rules for any Person to violate, or fail to comply with, the terms of any agreement with the Exchange or any order or decision of, or any suspension imposed by, the Exchange, the Board or any committee or subcommittee of the Exchange, including, without limitation, any Hearing, Arbitration or Appeals Panel.

> **Amended by the Board June 22, 2017; effective July 13, 2017.**
> **Amended by the Board January 22, 2020; effective February 7, 2020 [¶ (a)].**

**Rule 4.01.  Duty to Supervise**

(a) Every Person shall diligently supervise the Exchange-related activities of such Person's employees and agents.  For purposes of this Rule, the term "agent" includes any Exchange-related activities associated with automated trading systems that generate, submit and/or cancel messages without human intervention. Every Person shall also be responsible for the acts and omissions of such employees and agents.

(b) Each Firm shall establish, administer and enforce supervisory systems, policies and procedures, based on the nature and size of its Exchange-related activities, which are reasonably designed to achieve compliance with Exchange Rules.

(c) Each Member and Member Firm which employs a Clerk must be present or have a Member who is either an associate of the Brokers Association or Member Firm that employs such Clerk present on the premises occupied by the Exchange at all times during which such Clerk is engaged in Exchange-related activities.

> **Amended by the Board September 30, 2015; effective January 1, 2016 [¶¶ (a) and (b)].**
> **Amended by the Board June 22, 2017; effective July 26, 2017 [¶ (a)].**

**Amended by the Board June 22, 2017; effective July 26, 2017 [¶ (a)].**
**Amended by the Board  September 25, 2019; effective January 1, 2020 [¶¶ (b) and (c)].**

**Rule 4.02.  Trade Practice Violations**

In connection with the placement of any order or execution of any Transaction, it shall be a violation of the Rules for any Person to:

(a) Manipulate, or attempt to manipulate, the price of any Commodity traded on the Exchange;

(b) Corner, or attempt to corner, any Commodity traded on the Exchange;

(c) Execute a wash sale, accommodation Trade, fictitious sale or prearranged Trade;

(d) Commit or attempt to commit fraudulent action on the Exchange or use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;

(e) Withhold or withdraw from the market any order or any part of an order for the convenience of another Person;

(f) Prearrange the execution of transactions in Exchange products for the purpose of passing or transferring equity between accounts;

(g) Engage in cross trading other than in accordance with the following procedures:

(1) Independently initiated orders on opposite sides of the market for different beneficial account owners that are immediately executable against each other may be entered without delay provided that the orders did not involve pre-execution communications as defined in sub-paragraph (k) of this Rule.

(2) Futures orders on opposite sides of the market that are simultaneously placed for different beneficial accounts by a Person with discretion over both accounts may be entered into ETS as Crossing Order ("CO") which contains both the buy and sell orders; or by separately entering one order and allowing it to be exposed on the ETS for a minimum of five (5) seconds before entering the opposing order.

(3) A futures order that allows for price and/or time discretion, if not entered immediately upon receipt, may be knowingly entered opposite a second order received by the same intermediary using a CO which contains both the buy and sell orders; or by entering the second order immediately upon receipt and allowing it to be exposed on the ETS for a minimum of five (5) seconds before entering the opposing order.

(4) In the case of Options which are listed on the ETS, orders on opposite sides of the market that are simultaneously placed for different beneficial accounts by a Person with discretion over both accounts must be entered into the ETS as a CO which contains both the buy and sell orders.

(5) In the case of Options which are listed on the ETS, an order that allows for price and/or time discretion, if not entered immediately upon receipt, may be knowingly entered opposite a second order received by the same intermediary only as part of a CO which contains both the buy and sell orders.

(h) Engage in front running;

(i) Disclose or divulge the buy or sell order of another Person except (1) in furtherance of executing the order, (2) at the request of an authorized representative of the CFTC or (3) pursuant to sub-paragraph (k) of this Rule regarding certain pre-execution communications.

(j) knowingly enter, or cause to be entered, a Transaction in which the opposite side of a Customer order is executed for an account which is owned or controlled, or in which an ownership interest is held, by an intermediary handling the Customer order, or for the proprietary account of the employer of such an intermediary, without submitting to ETS a Crossing Order ("CO") consisting of both the Customer order and the order for such other account, provided, however, that any Transaction that is consummated without the knowledge of the intermediary shall not be considered to have violated this Rule.

(k) Engage in pre-execution communications, except in accordance with the following procedures:

(1) For the purposes of this Chapter, pre-execution communications shall mean communications between two (2) market participants for the purpose of discerning interest in the execution of a Transaction prior to the terms of an order being entered on the ETS and visible to all market participants on the electronic trading screen.

(2) A market participant may engage in pre-execution communications with regard to Transactions executed on ETS where a market participant wishes to be assured that another market participant will take the opposite side of an order under the following circumstances:

(A) If a Customer order is involved, the Customer has previously consented to such communications being made on its behalf;

(B) A party to pre-execution communications shall not disclose the details of such communications to any Person who is not a party to the communications;

(C) A party to pre-execution communications shall not enter an order to take advantage of information conveyed during such communications, except in accordance with this Rule;

(D) Each Options order that results from pre-execution communications must be executed by entry into the ETS of a CO consisting of both the buy and sell orders. A party that has agreed to an Options CO resulting from pre-execution communications may enter an order in a related market to hedge the risk associated with the pending CO, except for an intermediary taking the opposite side of its own Customer order. The CO must transact in the ETS before an order to hedge may be entered for: (i) any account in which the intermediary has a direct or indirect interest; or (ii) the account of any Person(s) that holds a relationship to the intermediary of a type enumerated in the definition of "proprietary account" in CFTC Regulation 1.3;

(E) Each Futures order that results from pre-execution communications may be entered as a CO, which contains both the buy and sell order; or by separately entering one order and allowing it to be exposed on the ETS for a minimum of five (5) seconds before entering the opposing order;

    (F) Once the terms of a CO have been agreed to, the parties may not delay entry of the CO and may not enter a Request for Quote ("RFQ") with the intent to distract other participants from the pending CO.

 (l) Engage in any other manipulative or disruptive trading practices prohibited by the Act or by the Commission pursuant to Commission regulation, including, but not limited to:

  (1) Entering an order or market message, or cause an order or market message to be entered, with:
   (A) The intent to cancel the order before execution, or modify the order to avoid execution;
   (B) The intent to overload, delay, or disrupt the systems of the Exchange or other market participants;
   (C) The intent to disrupt the orderly conduct of trading, the fair execution of transactions or mislead other market participants, or
   (D) Reckless disregard for the adverse impact of the order or market message.

  (2) Knowingly entering any bid or offer for the purpose of making a market price which does not reflect the true state of the market, or knowingly entering, or causing to be entered, bids or offers other than in good faith for the purpose of executing *bona fide* Transactions.

  **Amended by the Board March 22, 2018; effective April 23, 2018 [¶¶ (k)(2)(E)].**
  **Amended by the Board June 21, 2018; effective July 13, 2018 [¶¶ (g)(2) through (5) and (k)(D)]**
  **Amended by the Board August 7, 2019; effective August 23, 2019 [¶¶ (k)(2)(D) through (k)(2)(F)].**

**Rule 4.03. Dual Trading Violations**

 (a) Prohibited Purchases. It shall be a violation of the Rules for any Person to purchase, on the ETS market, any Exchange Futures Contract or any Exchange Call Option or sell any Exchange Put Option for his own account or for any account in which he has any direct or indirect interest while holding an order of another Person for the same Commodity for the purchase of an Exchange Futures Contract or Exchange Call Option or sale of an Exchange Put Option, which is executable at the market price or at the price at which such purchase can be made for such Person's own account or for the account in which he has an interest.

 (b) Prohibited Sales. It shall be a violation of the Rules for any Person to sell, on the ETS market, any Exchange Futures Contract or any Exchange Call Option or buy any Exchange Put Option for his own account or for any account in which he has any direct or indirect interest while holding an order of another Person for the same Commodity for the sale of an Exchange Futures Contract or Exchange Call Option or purchase of an Exchange Put Option, which is executable at the market price or at the price at which such sale can be made for such Person's own account or for the account in which he has an interest.

**Rule 4.04. Conduct Detrimental to the Exchange**

 It shall be a violation of the Rules for any Person to fail to conform to, the Rules or the procedures of the Exchange or the Clearing Organization, or to engage in conduct or practices inconsistent with just and equitable principles of trade or conduct detrimental to the best interests of the Exchange.