United States District Court
Southern District of Texas
**ENTERED**
October 31, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

COMMODITY FUTURES TRADING    §
COMMISSION,                  §
                             §
            Plaintiff,       §
                             §
v.                           §    CIVIL ACTION NO. H-19-2901
                             §
EOX HOLDINGS L.L.C., and     §
ANDREW GIZIENSKI,            §
                             §
            Defendants.      §

## MEMORANDUM OPINION AND ORDER

This action is brought by plaintiff, the Commodity Futures Trading Commission ("CFTC" or "Plaintiff"), against defendants, EOX Holdings L.L.C. ("EOX") and Andrew Gizienski ("Gizienski") (collectively, "Defendants"), for violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1-27f, and the Regulations promulgated thereunder, 17 C.F.R. parts 1-190, from August of 2013 through May of 2014 ("Relevant Period"). After a seven-day trial,[1] a jury unanimously found that Gizienski had not engaged in fraudulent and deceptive acts in violation of the CEA and its regulations, but that Gizienski violated 17 C.F.R. § 155.4 by taking the other side of customer orders without consent 65 times, and unnecessarily disclosing customers' material, nonpublic order

_____

[1]Trial was held on August 1-4 and 8-9, 2022. On August 5, 2022, the court conducted a jury charge conference.

information without permission five times.[2]   The jury also
unanimously found that EOX violated regulations promulgated under
the CEA by failing to make or keep copies of communications
relating to trades made on or after December 21, 2013, seven times,
and by failing to establish adequate policies or procedures for the
detection and deterrence of wrongdoing by its employees.[3]

On August 15, 2022, the court entered a Final Judgment
ordering that Plaintiff recover civil penalties and post-judgment
interest from EOX and Gizienski.[4]   The Final Judgment also
permanently restrains, enjoins, and prohibits EOX and Gizienski
from disclosing customers' orders or knowingly taking the other
side of orders unless certain conditions are satisfied; permanently
restrains, enjoins, and prohibits EOX for failing to make and
retain records required to be kept by the CEA and regulations
promulgated thereto; and temporarily suspends Gizienski from
registration and trading in the commodities markets for a period of
120 days.[5]

---

[2]Verdict Form, Docket Entry No. 245, pp. 4-6.  Page numbers
for docket entries in the record refer to the pagination inserted
at the top of the page by the court's electronic filing system,
CM/ECF.

[3]Id. at 7-8.

[4]Final Judgment, Docket Entry No. 264, p. 1 ¶ 1.

[5]Id. at 1-5 ¶¶ 4-6.

Pending before the court are Defendants EOX Holdings LLC and Andrew Gizienski's Combined Rule 50 and 59 Motions for Judgment as a Matter of Law, and for a New Trial, on Count II for the Alleged "Taking the Other Side of Orders" under 17 C.F.R. 155.4(b)(2)(i) ("Defendants' Joint Motion") (Docket Entry No. 277), and Defendant Andrew Gizienski's Motion to Stay Suspension Imposed by the Final Judgment ("Gizienski's Motion to Stay") (Docket Entry No. 279). Defendants are not seeking judgment as a matter of law ("JMOL") or a new trial on Counts III or IV, and are not challenging the permanent injunctions. For the reasons stated below both pending motions will be denied.

## I. __Factual and Procedural Background__

**A.    Factual Background**

Detailed descriptions of the factual background are contained in prior orders resolving the parties' dispositive motions. See Commodity Futures Trading Commission v. EOX Holdings, L.L.C., 405 F.Supp.3d 697, 701-04 (S.D. Tex. 2019), and Commodity Futures Trading Commission v. EOX Holdings, L.L.C., No. H-19-2901, 2021 WL 4482145, *1-*5 (S.D. Tex. September 30, 2021). The following is a summary of those opinions.

Plaintiff is a federal agency "charged by Congress with the administration and enforcement of the [CEA] and the Regulations promulgated thereunder."[6]

Defendant EOX is a wholly owned subsidiary of OTC Global Holdings LP ("OTC Global"), an inter-dealer broker in over-the-counter energy commodities, that has been registered with the CFTC as an Introducing Broker ("IB") since August 7, 2009.  EOX executes block futures and options trades on behalf of OTC Global's affiliate companies, and has done so since October of 2012.

Futures contracts are agreements to purchase or sell a commodity for delivery or cash settlement in the future at a specified price.  A block trade is a transaction that meets or exceeds an exchange-determined minimum threshold quantity of futures or options contracts, is privately negotiated, and executed away from the open outcry or electronic markets.

At all times during the Relevant Period EOX brokers reported their block trades to the Intercontinental Exchange, i.e., ICE Futures U.S. ("ICE"), which is a self-regulatory organization.

On October 15, 2012, EOX entered into an Intercompany Services Agreement ("ISA") with fifteen affiliates, including Choice Power.

---

[6]Complaint for Injunctive Relief, Civil Monetary Penalties, and Other Equitable Relief ("Plaintiff's Complaint"), Docket Entry No. 1, p. 3 ¶ 11.

Gizienski was employed by EOX affiliate Choice Power as a broker, and was registered with the CFTC as an AP of EOX from February 1, 2013, to January 1, 2019.

Jason Vaccaro ("Vaccaro") was an energy trader who owned and operated his own trading firm, AC Power Financial ("AC Power"). From 2012 through May of 2014, Vaccaro retained EOX to broker block trades for AC Power, and Gizienski served as his primary broker.

On April 25, 2013, Vaccaro executed an Additional Account Request pursuant to which he asked FCStone, LLC ("FCS"), the Futures Commission Merchant ("FCM") with which he worked, to establish an additional sub-account for AC Power, for the purpose of adding an additional trader, Gizienski. On the same day, i.e., April 25, 2013, Vaccaro also executed a Managed Account Authorization providing Gizienski power of attorney to act as his agent to buy and sell commodity futures contracts, commodity options contracts, and cash commodities through FCS.

Gizienski started using the Managed Account to make trades for AC Power in August of 2013 and continued to use it for that purpose until May of 2014 when Vaccaro directed him to stop.

Gizienski exercised discretionary authority over the Managed Account, which allowed him (1) to execute trades for AC Power without speaking to Vaccaro about the specific trade, and (2) to determine the quantity, price, and timing of trades.

-5-

Neither EOX nor Gizienski disclosed to their other customers that Gizienski was exercising discretionary authority to execute trades for AC Power in the same markets he was brokering for them.

Neither EOX nor Gizienski obtained consent from customers to represent them as their broker in trades for which Gizienski, exercising discretionary authority over the Managed Account, took the opposite side of their orders.

Gizienski's customers did not know that while acting as their broker, he exercised discretionary authority over the Managed Account to execute trades for AC Power in the same markets that he brokered for them.

EOX created trade confirmation documents for the Managed Account, many of which identify Gizienski as both broker and trader.

**B.   Procedural Background**

Detailed descriptions of the procedural background are contained in prior orders resolving the parties' dispositive motions. See <u>EOX Holdings</u>, 405 F.Supp.3d at 704-05; <u>EOX Holdings</u>, 2021 WL 4482145, at *5-*6.   The following describes subsequent developments.

On November 30, 2021, the parties filed a Joint Pretrial Order (Docket Entry No. 184), Plaintiff's Pretrial Memorandum of Law ("Plaintiff's Pretrial Memorandum") (Docket Entry No. 185), and

Defendants' Memorandum Accompanying the Filing of the Joint Pretrial Order ("Defendants' Pretrial Memorandum") (Docket Entry No. 186).

On December 9, 2021, the court entered an Order (Docket Entry No. 189) granting Plaintiff's Motion for Leave to File Plaintiffs' Corrected Pretrial Memorandum of Law (Docket Entry No. 188-1), and on December 10, 2021, the court held Docket Call (Docket Entry Nos. 192 (minutes) and 191 (transcript)).

On February 18, 2022, the parties submitted Plaintiff's Trial Plan (Docket Entry No. 198) and Defendants' Trial Plan (Docket Entry No. 199).

On March 4, 2022, the parties submitted a Joint Proposed Jury Charge (Docket Entry No. 201), CFTC's Summary of Outstanding Jury Charge Issues (Docket Entry No. 202), Plaintiff's Final Trial Plan (Docket Entry No. 200), and Defendants' Final Trial Plan (Docket Entry No. 203).

On March 11, 2022, the court held Docket Call at which the court set trial for August 1, 2022, and entered a timing order pursuant to which each side would be allowed ten (10) minutes for additional voir dire questions, fifteen (15) minutes for opening statements, and ten (10) hours to present evidence. (Docket Entry Nos. 206 (minutes) and 208 (transcript)).

A seven-day jury trial was conducted on August 1-5 and 8-9, 2022.[7]  At the close of the evidence on August 4, 2022, the court provided the parties a proposed jury charge and proposed verdict form, and asked counsel to notify the court by noon on August 5, 2022, if they intended to stand on written objections to the charge or if they wanted the court to conduct a charge conference.[8]  On August 5, 2022, the court conducted a jury charge conference at which the parties made final objections to the court's proposed Jury Charge and Verdict Form.[9]

On August 8, 2022, the court charged the jury, the parties made their final arguments and the jury began their deliberations.[10] In pertinent part the Jury Charge for Count II stated that

> the CFTC claims that EOX and Mr. Gizienski violated Rule 155.4.  Rule 155.4 prohibits EOX and Mr. Gizienski from knowingly trading against a customer without first getting consent, or disclosing customer order information unnecessarily.  Specifically, the CFTC claims that EOX and Mr. Gizienski violated rule 155.4 (1) by knowingly

---

[7]See Minutes, Docket Entry Nos. 222, 223, 227, 230, 233, 236, 243; and Trial Transcripts: August 1, 2022, Docket Entry No. 286; August 2, 2022, Docket Entry Nos. 265 (AM) and 287 (PM); August 3, 2022, Docket Entry Nos. 266 (AM) and 288 (PM); August 4, 2022, Docket Entry No. 267 (AM) and 290 (PM); August 5, 2022, Docket Entry No. 268; August 8, 2022, Docket Entry No. 269; and August 9, 2022, Docket Entry No. 270.

[8]See Minutes, Docket Entry No. 227; and August 4, 2022, Trial Transcript Day 4 (PM), Docket Entry No. 290, pp. 114:23-115:19.

[9]See Minutes, Docket Entry No. 233; and August 5, 2022, Trial Transcript, Docket Entry No. 268.

[10]See Minutes, Docket Entry No. 236; and August 8, 2022, Trial Transcript Day 6, Docket Entry No. 269.

taking the other side of customer orders revealed to EOX or any of its affiliated persons without the customers' prior consent one-hundred and twenty-two (122) times; and (2) by disclosing to Jason Vaccaro the orders of other customers held by EOX or any of its affiliated persons, when such disclosures were not necessary to the effective execution of the customer orders six (6) times.

The term "order means an instruction or authorization provided by a customer to EOX or Mr. Gizienski regarding trading in a commodity interest on behalf of a "customer."

. . .

An individual takes the other side of an order if he makes the decision to trade opposite the order and executes the trade opposite the order.  It was not necessary for Mr. Gizienski to own or have a financial interest in the account he was trading from in order to take the other side of a customer order.

You should find in favor of the CFTC on Count II if you determine by a preponderance of the evidence that . . . Mr. Gizienski traded against a customer without obtaining the customer's consent; . . . You should find in favor of EOX and Mr. Gizienski on Count II if you find that the CFTC has not shown by a preponderance of the evidence that . . . Mr. Gizienski traded against a customer without obtaining the customer's consent; . .[11]

In pertinent part the Verdict Form posed the following questions:

**QUESTION NO. 6:**

Who do you find in favor of on Count II?

————————————        ————————————————————

Plaintiff CFTC         Defendants EOX and Mr. Gizienski

---

[11]Jury Charge, Docket Entry No. 237, pp. 12-13.

**QUESTION NO. 7:**

If you found in favor of Plaintiff CFTC on Count II in Question No. 6, how many times did Mr. Gizienski knowingly take the other side of a customer order without obtaining prior consent from the customer?

Answer with a number.

_____

**QUESTION NO. 8:**

If you found in favor of Plaintiff CFTC on Count II in Question No. 6, what penalty do you impose for Mr. Gizienski's taking the other side of customer orders?

(Your penalty may not be more than $140,000 multiplied by the number of violations you found in Question No. 7.)

Answer in dollars and cents, if any.

_____

**QUESTION NO. 9:**

If you found in favor of Plaintiff CFTC on Count II in Question No. 6, how many times did Mr. Gizienski disclose a customer's material, nonpublic order information when such disclosure was not necessary to the effective execution of that customer's order?

Answer with a number.

_____

**QUESTION NO. 10:**

> If you found in favor of Plaintiff CFTC on Count II
> in Question No. 6, what penalty do you impose for
> Mr. Gizienski's disclosure of a customer's
> material, nonpublic order information?
>
> (Your penalty may not be more than $140,000
> multiplied by the number of violations you found in
> Question No. 9.)
>
> Answer in dollars and cents, if any.

[12]

On August 9, 2022, the jury unanimously answered Question
No. 6 in Plaintiff's favor.  In response to Question Nos. 7-10, the
jury unanimously found that Gizienski violated 17 C.F.R. § 155.4 by
taking the other side of customer orders without consent 65 times,
for which the jury assessed civil penalties of $6,500,000, and by
unnecessarily disclosing customers' material, nonpublic order
information without permission five times, for which the jury
assessed civil penalties of $500,000.[13]

On August 15, 2022, the court entered a Final Judgment
ordering that Plaintiff recover civil penalties of $7,000,000 from
EOX and Gizienski, jointly and severally, pursuant to the verdict
of the jury on Count II;[14] and that the Plaintiff recover post-

---

[12]Verdict Form, Docket Entry No. 245, pp. 4-5.

[13]Id.

[14]Final Judgment, Docket Entry No. 264, p. 1 ¶ 1.

-11-

judgment interest on such amounts.[15]   The Final Judgment also permanently restrains, enjoins, and prohibits EOX and Gizienski from disclosing customers' orders or knowingly taking the other side of orders unless certain conditions are satisfied;[16] and temporarily suspends Gizienski from registration and trading in the commodities markets for a period of 120 days.[17]

## II. Defendants are Not Entitled to JMOL or to a New Trial

Defendants seek JMOL under Rule 50(b) and, alternatively, a New Trial under Rule 59, on Count II for the alleged "taking the other side of orders" in violation of 17 C.F.R. 155.4(b)(2)(i).

## A.   Defendants' Joint Motion for Judgment as a Matter of Law

Citing Federal Rule of Civil Procedure 50, Defendants seek JMOL "on Count II's claim of 'taking the other side of orders' because the uncontradicted evidence established that the account owner, Jason Vaccaro, made the decisions to trade in the vast bulk of the 122 instances alleged in Count II."[18]   Plaintiff responds

---

[15]Id. ¶ 3.

[16]Id. at 1-2 ¶ 4.

[17]Id. pp. 4-5 ¶ 6.

[18]Defendants' Joint Motion, Docket Entry No. 277, p. 1.  See also Defendants' EOX Holdings LLC and Andrew Gizienski's Memorandum in Support of Their Combined Rule 50 and 59 Motions for Judgment as a Matter of Law, and, for a New Trial, on Count II for the Alleged
(continued...)

that Defendants are not entitled to JMOL because there is overwhelming evidence that Gizienski violated Regulation 155.4 by trading opposite EOX customers without consent.[19]  Asserting that the pending motion is a "'failure of proof' attack,"[20] Defendants reply that they are entitled to JMOL because "[t]he uncontradicted evidence shows that in 90 instances, Mr. Gizienski did not make the 'decisions to trade,' although he was listed in documents as the 'trader.'"[21]

1. <u>Standard of Review</u>

"A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." <u>Orozco v. Plackis</u>, 757 F.3d 445, 448 (5th Cir. 2014) (quoting <u>SMI Owen Steel Co. v. Marsh USA, Inc.</u>, 520 F.3d 432, 437 (5th Cir. 2008)(per curiam)(citation and internal quotation marks omitted)).  Under Rule 50(b) "[a] motion for judgment as a matter of law should be granted if there

---

[18](...continued)
"Taking the Other Side of Orders" Under 17 C.F.R. § 155.4(b)(2)(i) ("Defendants' Memorandum of Law"), Docket Entry No. 278, pp. 5-10.

[19]CFTC's Response in Opposition to Defendants' Combined Rule 50 and Rule 59 Motions ("Plaintiff's Opposition to Defendants' Joint Motion"), Docket Entry No. 282, pp. 2 and 4-11.

[20]Defendants' Reply on Their Combined Rule 50 and 59 Motions ("Defendants' Reply"), Docket Entry No. 285, p. 1.

[21]<u>Id.</u> at 4.

is no legally sufficient evidentiary basis for a reasonable jury to find for a party." Id. (citation and internal quotation marks omitted). The court "view[s] the entire record in the light most favorable to the non-movant, drawing all factual inferences in favor of the non-moving party, and 'leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury.'" Aetna Casualty & Surety Co. v. Pendleton Detectives of Mississippi, Inc., 182 F.3d 376, 378 (5th Cir. 1999)(quoting Conkling v. Turner, 18 F.3d 1285, 1300 (5th Cir. 1994)). The court may grant a motion for JMOL "[o]nly when the facts and reasonable inferences are such that a reasonable juror could not reach a contrary verdict." Baltazor v. Holmes, 162 F.3d 368, 373 (5th Cir. 1998). "If reasonable persons could differ in their interpretation of the evidence, the motion should be denied." Id.

### 2.   There Is No Failure of Proof on Count II

Count II of Plaintiff's Complaint alleged that

[d]uring the relevant period, Gizienski violated 17 C.F.R. § 155.4(b) by: (i) disclosing to Customer A the orders of other customers held by EOX or any of its affiliated persons, when such disclosures were not necessary to the effective execution of the customer orders; and (ii) knowingly taking the other side of customer orders revealed to EOX or any of its affiliated persons without the customers' prior consent.[22]

---

[22]Plaintiff's Complaint, Docket Entry No. 1, p. 18 ¶ 83.

Plaintiff also alleged that "[t]he foregoing acts, omissions, and failures of Gizienski occurred within the scope of his employment, office, or agency with EOX,"[23] that pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2, EOX is liable for Gizienski's violations of 17 C.F.R. § 155.4(b),[24] and that "[e]ach instance in which Gizienski unlawfully disclosed a customer order or traded against an EOX customer without the customer's consent is alleged as a separate and distinct violation of 17 C.F.R. § 155.4(b)."[25]

      (a)   Applicable Law

Regulation 155.4(b) provides, in relevant part:

No introducing broker or any of its affiliated persons shall:

. . .

(2)   (i) Knowingly take, directly or indirectly, the other side of any order of another person revealed to the introducing broker or any of its affiliated persons by reason of their relationship to such other person, except with such other person's prior consent and in conformity with contract market rules approved by or certified to the Commission.

17 C.F.R. § 155.4(b)(2)(i).   As a registered introducing broker and affiliated person, EOX and Gizienski are subject to Regulation 155.4.   See 17 C.F.R. 155.1 ("the term affiliated person . . . of an introducing broker means . . . associated person or employee . . . of the introducing broker").

---

[23] Id. ¶ 84.

[24] Id.

[25] Id. ¶ 85.

(b)   Application of the Law to the Evidence

Asserting that "the Jury failed to follow the pertinent charge that '[a]n individual takes the other side of an order **if he makes the decision to trade opposite the order** and executes the trade opposite the order,'"[26] Defendants argue that they are entitled to JMOL on Count II because "[f]or at least 90 of the 122 transactions, the uncontradicted documentary evidence showed that Defendant Andrew Gizienski did not make the decisions to trade opposite the order, but Jason Vaccaro, the owner of the account, did."[27]  Defendants argue that on the

> afternoon of the fourth trial day, the Defense had painstakingly gone through about 85 of the 122 supposed instances of "taking the other side of orders" and proved that in the vast bulk of those instances, Jason Vaccaro had made the decision to trade opposite the orders.[28]

Defendants argue "that fact is irrefutably established by Plaintiff's Exhibits 55, 56 & 57, and the annotated copies of those Exhibits admitted on the morning of the last day of evidence as Defendants' Exhibits 24, 25 & 26."[29]

---

[26]Defendants' Memorandum of Law, Docket Entry No. 278, p. 5 (quoting Jury Charge, Docket Entry No. 237, p. 12).

[27]Id.

[28]Id. at 8 (citing August 4, 2022, Trial Transcript Day 4 (PM), Docket Entry No. 290, pp. 22-109).

[29]Id. (citing August 8, 2022, Trial Transcript Day 6, Docket Entry No. 269, p. 66:14-15 ("The ones you offered today, 24 through 27, have been admitted."); and Defendants' Exhibits 24, 25, and 26, Docket Entry Nos. 275-11, 275-12, and 275-13, respectively).

Citing the court's September 30, 2021, Memorandum Opinion and Order (Docket Entry No. 180), for stating that "[r]esolution of Plaintiff's claims necessarily requires consideration of each transaction on a case-by-case basis at trial,"[30] Defendants argue that

> [o]ther than summary charts listing the transactions, and some testimony by the CFTC's . . . [witness Heather] Dasso about no more than seven specific instances, none of the Plaintiff's witnesses dealt with "each transaction on a case-by-case basis."
>
> Most pointedly, the CFTC did not even pretend to elicit any "case-by-case" testimony from the turncoat Jason Vaccaro — the only person with personal involvement in, and therefore supposedly personal knowledge of, the 122 instances. . . The CFTC didn't even show him the three spreadsheets Exhibits 55, 56 & 57, let alone ask about them.
>
> The complete failure of proof, coupled with the irrefutable evidence that Vaccaro made the trading decisions in at least 90 of the 122 instances of "taking the other side of orders" requires the entry of judgment as a matter of law on those instances.[31]

Defendants do not dispute that various records identify Gizienski as the "trader" on the 122 transactions alleged in Count II, or that Gizienski had complete discretion to trade the Managed Account.[32]  Asserting that "[i]t was not enough for Plaintiff to prove that Mr. Gizienski was labeled as the 'trader[],'"[33] Defendants argue that

---

[30]Id. at 9 (quoting EOX Holdings, 2021 WL 4482145, at *37).

[31]Id. at 9-10.

[32]Defendants' Reply, Docket Entry No. 285, p. 1.

[33]Id. at 2.

> [w]hat was required under the Court's Jury Charge was
> proof that he made the trading decisions.  Indeed,
> Plaintiff's Response cites no such evidence and does not
> say anywhere that Mr. Gizienski "made the decisions to
> trade."  The Response does not and cannot cite any
> evidence that would establish that being identified as
> the "trader" means that Mr. Gizienski made the trading
> decisions.  Instead, the Response merely repeats over and
> over that Mr. Gizienski was the "trader," that he had
> full discretion to trade, and that the various records
> identify Mr. Gizienski as the "trader."[34]

Asserting that Gizienski "was no more or less than an agent under

the central document in the case — the Managed Account

Authorization,"[35] Defendants argue that "[t]he law is clear that

mere labels are irrelevant in determining the scope of authority of

an agent.  It is the substance, not the  labels, that control."[36]

Defendants argue that

> [t]he question is a simple one: whatever his label, was
> there any evidence that Mr. Gizienski actually made the
> decisions to trade?  In 90 of the instances covered by
> the CFTC's documentary evidence (Exhibits 55, 56 & 57),
> the answer is conclusive: he did not make the trading
> decisions.
>
> Defendants are entitled to judgment as a matter of
> law on those 90 instances.[37]

The jury's verdict that Gizienski knowingly took the other

side of a customer order without obtaining prior consent from the

customer 65 times is supported by evidence adduced at trial.

---

[34] <u>Id.</u>

[35] <u>Id.</u>

[36] <u>Id.</u> at 3.

[37] <u>Id.</u> at 4.

Gizienski's failure to obtain consent for taking the other side of customer orders is undisputed because Defendants stipulated to it.[38] Undisputed evidence establishes that Vaccaro set up the Managed Account for the purpose of adding Gizienski as a trader,[39] that Vaccaro gave Gizienski full discretion to trade out of the Managed Account,[40] and that "Gizienski was identified in various records as the 'trader' on the 122 transactions the CFTC presented."[41]

Defendants' argument that none of the Plaintiff's witnesses dealt with "each transaction on a case-by-case basis,"[42] is belied by both the documentary and the testimonial evidence, all of which established that Gizienski traded for the Managed Account. Documentary evidence that Gizienski traded for the Managed Account includes transaction confirmations that EOX created and disseminated for the Managed Account's block trades identifying

---

[38]Id. at 2 n. 2 ("The lack of consent was stipulated and is irrelevant to this Motion."). See also August 4, 2022, Trial Transcript Day 4 (AM), Docket Entry No. 267, p. 103:10-14 (Stipulation "29. [N]either EOX, nor Mr. Gizienski obtained consent from customers to represent them as their brokers in trades for which Mr. Gizienski in exercising discretionary authority over the managed account took the opposite side of their orders.").

[39]Additional Account Request, CFTC Exhibit 40, Docket Entry No. 273-11 ("Reason for additional account: Adding Additional Trader;" "Who will be trading this account: Andrew Gizienski").

[40]Defendants' Reply, Docket Entry No. 285, p. 1 ("Defendants do not dispute in the slightest that Mr. Gizienski . . . had complete discretion to trade the managed account.").

[41]Id.

[42]Defendants' Memorandum of Law, Docket Entry No. 278, p. 9.

Gizienski as the trader,[43] spreadsheets prepared by EOX in response to an independent investigation by ICE, the exchange on which Gizienski traded, identifying Gizienski as the trader for each of the Managed Account's block trades,[44] and records maintained by ICE showing that Gizienski make 123 block trades for the Managed Account.[45]

Testimony that Gizienski traded for the Managed Account includes the testimony of Vito Naimoli ("Naimoli"), Chief Regulatory Officer for ICE, Vaccaro, and Gizienski himself. Naimoli testified that records maintained by ICE show that Gizienski made 123 block trades for the Managed Account,[46] and that for each of these trades Gizienski was identified as the trader and another EOX customer was identified as the party on the other side of the trade:

> Q.   All right.  For the 123 trades ICE identified on this spreadsheet, who was identified as the trader for the managed account on each trade?
>
> A.   Andrew Gizienski.

---

[43]EOX Transaction Confirmations, CFTC Exhibit 92, Docket Entry No. 273-31.

[44]CFTC Exhibits 55-57, Docket Entry Nos. 273-16, 273-17, and 273-18, respectively.

[45]CFTC Exhibit 44A, Docket Entry No. 273-13.

[46]August 2, 2022, Trial Transcript Day 2 (PM), Docket Entry No. 287, pp. 80:3-89:17.

> Q. For the 123 block trades Mr. Gizienski made for the managed account, what does your review of the trade data tell us about the other side of those trades?
>
> A. They were opposite . . . multiple different customers [of] EOX at the time.
>
> Q. EOX was the broker for the customer on the other side of the trade?
>
> A. Correct.[47]

In addition, Gizienski testified that he "had done 122 trades,"[48] and Vaccaro testified that he ultimately ended Gizienski's use of the managed account because he did not like what was going on in the account, and there were certain instances where Gizienski would lose money in the account.[49]

Defendants argue that "[i]t was not enough for Plaintiff to prove that Mr. Gizienski was labeled as the 'trader[].'  What was required under the Court's Jury Charge was proof that Mr. Gizienski made the trading decisions."[50]  Asserting that Plaintiff has not cited any evidence that Gizienski made the trading decisions,[51] Defendants argue that they are entitled to JMOL on at least 90 of the 122 trades alleged in Count II because spreadsheets prepared by

---

[47]Id. at 89:18-90:5.

[48]August 3, 2022, Trial Transcript Day 3 (PM), Docket Entry No. 288, p. 118:18-19.

[49]August 2, 2022, Trial Transcript Day 2 (AM), Docket Entry No. 265, p. 73:3-17.

[50]Defendants' Reply, Docket Entry No. 285, p. 2.

[51]Id.

EOX in response to ICE's independent investigation include pre-trade communications for the 122 trades,[52] and Gizienski testified that those pre-trade communications show that Vaccaro made the trading decisions for at least 90 of the 122 trades.[53]

Defendants' arguments are not persuasive.  Based on the uncontradicted evidence that Vaccaro set up the Managed Account for the purpose of adding Gizienski as a trader,[54] that Vaccaro gave Gizienski full discretion to trade out of the Managed Account,[55] that there were certain instances where Gizienski lost money in the account,[56] and that EOX identified Gizienski as the "trader" for each of 122 trades alleged in Court II, the jury could reasonably infer that Gizienski made the trading decisions for each of those trades.  Moreover, contrary to Defendants' arguments, neither the pre-trade communications nor Gizienski's testimony about them are undisputed or capable of establishing that Vaccaro — not Gizienski — made at least 90 of the 122 trading decisions.[57]

---

[52]Id. at 4 (citing CFTC Exhibits 55-57, Docket Entry Nos. 273-16, 273-17, and 273-18).

[53]Id.

[54]Additional Account Request, CFTC Exhibit 40, Docket Entry No. 273-11 ("Reason for additional account: Adding Additional Trader;" "Who will be trading this account: Andrew Gizienski").

[55]Defendants' Reply, Docket Entry No. 285, p. 1 ("Defendants do not dispute . . . that Mr. Gizienski . . . had complete discretion to trade the managed account.").

[56]August 2, 2022, Trial Transcript Day 2 (AM), Docket Entry No. 265, p. 73:13-17.

[57]See Plaintiff's Opposition to Defendants' Joint Motion,
(continued...)

Defendants argue that

> on the afternoon of the fourth trial day, the Defense .
> . . painstakingly [went] through about 85 of the 122
> supposed instances of "taking the other side of orders"
> and proved that in the vast bulk of those instances,
> Jason Vaccaro had made the decision to trade opposite the
> orders.[58]

Defendants argue that Gizienski's testimony that Vaccaro made the vast majority of the trading decisions for the Managed Account "is irrefutably established by Plaintiff's Exhibits 55, 56, and 57, and the annotated copies of those Exhibits admitted on the morning of the last day of evidence as Defendants' Exhibits 24, 25 & 26 [Docket Entry Nos. 225-11, 225-12, and 225-13]."[59]

But as Plaintiff points out Gizienski

> was flat out wrong about [some] purported trading
> instructions from Vaccaro:

- For one of the trades, Gizienski testified that he received a trading instruction from Mr. Vaccaro at 11:00 a.m. (Trial Tr. Day 4 PM, 107:13-16.). But that trade actually took place over two hours <u>earlier</u> at 8:46 a.m. (Trial Tr. Day 6 AM, 25:22-26:5). When confronted with this truth, Gizienski responded "It appears that way, yes." <u>Id.</u> at 26:5.

- For another trade, Gizienski testified that he received a trade instruction from Mr. Vaccaro to <u>sell a 45 put</u>, but in reality Gizienski <u>bought a 60 put</u> (Trial Tr. Day 6 AM, 27.). Gizienski could not

---

[57](...continued)
Docket Entry No. 282, pp. 9-11 (arguing that "Defendants Challenge the Jury's Weighing of Evidence and Credibility").

[58]Defendants' Memorandum of Law, Docket Entry No. 278, p. 8 (citing August 4, 2022, Trial Transcript Day 4 (PM), pp. 22-109).

[59]<u>Id.</u> (citing August 8, 2022, Trial Transcript Day 6, Docket Entry No. 269, p. 66:14-15).

explain how the instruction to sell a 45 put caused
him to buy a 60 put.

- For eleven block trade transactions, Mr. Gizienski
  purportedly identified a "trading instruction" from
  Mr. Vaccaro.  Ms. Dasso combed through the instant
  messages that were transmitted <u>before</u> the trade
  actually took place and testified that there was no
  instruction that related to an actual trade:

    Q.   And of those 11 block trades that you looked
         at, how many did Mr. Gizienski identify an
         instruction or a direction from Mr. Vaccaro
         that actually related to the trade that he
         entered?

    A.   Zero.[60]

The evidenced cited by Plaintiff not only contradicts
Defendants' argument that the evidence irrefutably establishes that
Vaccaro made the vast majority of the trading decisions for the
Managed Account, but also shows that the jury could reasonably have
disbelieved Gizienski's testimony to the contrary.  The court
therefore concludes that Defendants have failed to establish that
the facts and reasonable inferences are such that a reasonable
juror could not have reached the verdict from which Defendants seek
relief.  <u>See</u> <u>Baltazor</u>, 162 F.3d at 373 (courts may grant a motion
for JMOL "[o]nly when the facts and reasonable inferences are such
that a reasonable juror could not reach a contrary verdict").
Accordingly, Defendants' motion for JMOL on Count II for "taking
the other side of orders" will be denied.

---

[60]Plaintiff's Opposition to Defendants' Joint Motion, Docket
Entry No. 282, p. 10 (quoting August 8, 2022, Trial Transcript Day
6, Docket Entry No. 269, pp. 25:22-27:23 and 81:24-82:3).

**B.  Defendants' Motion for New Trial**

Citing Federal Rule of Civil Procedure 59 Defendants seek a new trial on Count II's claim for "taking the other side of orders" by arguing that

1.   The Jury Charge was wrong as a matter of law because, under ICE Rules, Defendants could not take the other side of orders because they were not "eligible contract participants ["ECPs"]," and as "intermediaries," they had no financial interest in the discretionary account.

2.   Defendants did not have fair notice of the rule the Court would apply to the Count II claim of "taking the other side of orders."

3.   The Jury's Verdict on Count II's "taking the other side of orders" is incoherent and unreviewable.

4.   The ten-hour time limit, especially the refusal to grant one additional hour at the end of Defendant's case, was prejudicial to the presentation of their case, given the complexities of the issues and the uncertainties about the applicable rules of law.[61]

Plaintiff responds that Defendants' motion for new trial should be denied because their motion "does not present any manifest error or the availability of new evidence, but rather rehashes old evidence and legal arguments that have already — repeatedly — been rejected by the Court."[62]  For the reasons stated below the court agrees.

---

[61]Defendants' Joint Motion, Docket Entry No. 277, p. 1.  <u>See also</u> Defendants' Memorandum of Law, Docket Entry No. 278, pp. 10-25.

[62]Plaintiff's Opposition to Defendants' Joint Motion, Docket Entry No. 282, p. 12.

1.   <u>Standard of Review</u>

Defendants seek a new trial citing Federal Rule of Civil Procedure 59, and <u>Ware v. Autozoners, LLC</u>, No. 4:21cv0067, 2022 WL 2834760 (S.D. Tex. July 20, 2022).  Although Defendants fail to cite a specific subsection of Rule 59 under which they seek a new trial, the applicable section appears to be Rule 59(a)(1), which states that "[t]he court may, on motion, grant a new trial on all or some of the issues — and to any party — as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  In this circuit a new trial may be granted under Rule 59(a) if the court finds "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." <u>Wellogix, Inc. v. Accenture, L.L.P.</u>, 716 F.3d 867, 881 (5th Cir. 2013), <u>cert. denied</u>, 134 S. Ct. 2725 (2014) (quoting <u>Smith v. Transworld Drilling Co.</u>, 773 F.2d 610, 613 (5th Cir. 1985)).  The Fifth Circuit has stated that

> [c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial.  Ultimately, the motion invokes the discretion of the trial court, and appellate review of its ruling is quite limited.

<u>Sibley v. Lemaire</u>, 184 F.3d 481, 487 (5th Cir. 1999), <u>cert. denied</u>, 120 S. Ct. 1420 (2000) (citation omitted).

Unlike the motion in this case, which follows a seven-day jury trial, _Ware_, 2022 WL 2834760, at *1, involved a motion for reconsideration of an order granting summary judgment.  In _Ware_ the court analyzed the motion for reconsideration under Rule 59(e), which governs motions to alter or amend a judgment filed no later than 28 days after the entry of the judgment.  Granting a Rule 59(e) motion is appropriate in three circumstances: (1) to correct manifest errors of law or fact upon which the judgment is based; (2) to consider newly discovered evidence that was previously unavailable; and (3) to address an intervening change in controlling law.  _Jennings v. Towers Watson_, 11 F.4th 335, 345 (5th Cir. 2021) (citing _Demahy v. Schwarz Pharma, Inc._, 702 F.3d 177, 182 (5th Cir. 2012) (per curiam), _cert. denied_, 134 S. Ct. 57 (2013)).  A manifest error of law is an error "that is plain and indisputable, and that amounts to a complete disregard of the controlling law."  _Guy v. Crown Equipment Corp._, 394 F.3d 320, 325 (5th Cir. 2004) (citation omitted).  A manifest error of fact "is an obvious mistake or departure from the truth."  _Bank One, Texas, N.A. v. Federal Deposit Insurance Corp._, 16 F.Supp. 2d 698, 713 (N.D. Tex. 1998).

For the reasons stated below the court concludes that regardless of whether the pending motion for new trial is considered under Rule 59(a) or Rule 59(e), Defendants have failed to establish that they are entitled to a new trial on Count II's claim for "taking the other side of orders."

2.   <u>Analysis</u>

   (a)   Defendants Fail to Show that the Jury Charge was
         Wrong as a Matter of Law

Defendants argue that the jury charge was wrong as a matter of law because under ICE Rules Defendants could not take the other side of orders since they were not ECPs, but instead "intermediaries" who had no financial interest in the discretionary account.[63]   Defendants specifically argue that

> [i]t was prejudicial error for the Court to refuse Defendants' proposed Instruction 5.5. that
>
> To take the other side of an order means to become the counterparty to the transaction resulting in that order, and thereby assume both the possibility of profit and risk of loss for that transaction, and not merely to act as broker for the transaction.   [ECF 201: Dfs' Proposed Instr. 5.5, p. 79].[64]

Defendants argue that this

> error was compounded by two evidentiary errors (1) the Court's refusal to admit Defendants' 2011-2013 financial statements as Exhibit 1-3 that showed that EOX was not an [ECP], and therefore was prohibited from becoming a counterparty to an ICE-cleared block trade, and (2) the refusal of the proffer of the testimony by Defendant Gizienski and Mr. Loya, EOX's CEO, that they were not [ECPs] and therefore could not "take the other side of orders."[65]

---

[63]Defendants' Joint Motion, Docket Entry No. 277, p. 1 ¶ 1; Defendants' Memorandum of Law, Docket Entry No. 278, pp. 11-14.

[64]Defendants' Memorandum of Law, Docket Entry No. 278, p. 11.

[65]<u>Id.</u> (citing August 2, 2022, Trial Transcript Day 2 (AM), Docket Entry No. 265, pp. 82-88; August 4, 2022, Trial Transcript Day 4 (AM), Docket Entry No. 267, pp. 121-22; and Plaintiff's Opposition to Admission of Defendants' Exhibits 1-3, Docket Entry (continued...)

-28-

Asserting "the evidence showed that in all instances, AC Power, Vaccaro's trading entity was the counterparty and took the other side of the trades,"[66] and that "ICE Rules permit a broker to execute a trade on behalf of one customer but opposite another unless the broker has a financial interest in the first customer's account,"[67] Defendants argue that "this court's adoption of the CFTC's rule of law makes such execution a violation of Regulation 155.4(b)(2)(i[])."[68]

Defendants argue that the court committed legal error when it selected one proposed jury instruction over another.  But missing from Defendants' briefing is a cite to any controlling authority that required the court to select their preferred instruction.  Nor have Defendants cited any law or advanced any argument that persuades the court its jury instruction was wrong.

---

[65](...continued)
No. 225, p. 2 ¶ I).  <u>See also</u> Defendants' Reply, Docket Entry No. 285, p. 4.

[66]Defendants' Memorandum of Law, Docket Entry No. 278, p. 12.

[67]<u>Id.</u> at 14.

[68]<u>Id.</u>  The Defendants cite Regulation 155.4(b)(2)(ii), but this must be an error since the regulation that addresses taking the other side of any order that Gizienski is alleged to have violated is found in 17 C.F.R. § 155.4(b)(2)(i).  <u>See also</u> Defendants' Reply, Docket Entry No. 285, p. 5 ("The CFTC ignores the text of this ICE Rule that explicitly allows a broker as an intermediary to 'enter or cause to be entered' a transaction on the opposite side of a customer order when the intermediary does NOT control or own the account for which the transaction is executed.").

Defendants' preferred instruction defined "taking the other side of an order" in terms of assuming "both the possibility of profit and risk of loss for that transaction, and not merely to act as broker for the transaction."[69]  Defendants argue that Gizienski could not have taken the other side of the orders because he was an intermediary who did not have a financial interest in the account. Defendants argue that if Gizienski could have taken the other side of the orders, then there would be an irreconcilable conflict between the Regulation 155.4(b)(2)(i) and the ICE Rules.

Defendants' argument that they are entitled to a new trial because the court failed to give their proposed jury instruction on Count II's claim for "taking the other side of orders" fails for at least two reasons.  First, as the court has stated previously, "[n]othing in the language of Regulation 155.4(b)(2) limits its application to principals with an ownership or financial interest in a particular account."  EOX Holdings, 405 F.Supp.3d at 718. Defendants have made — and the court has rejected — the argument that Regulation 155.4(b)(2) applies only to those with a financial interest in an account three times: (1) when ruling on Defendants' Motions to Dismiss, id. at 716-18; (2) when ruling on Defendants' Motion for Summary Judgment, EOX Holdings, 2021 WL 4482145, at *27; and (3) when ruling on Defendants' Motion for Directed Verdict.[70]

---

[69]Defendants' Memorandum of Law, Docket Entry No. 278, p. 11.

[70]August 4, 2022, Trial Transcript Day 4 (AM), Docket Entry (continued...)

-30-

Second, the court's instruction does not create an irreconcilable conflict between the Regulation 155.4(b)(2) and the ICE Rules.

Defendants argue that the court's instruction conflicts with (1) ICE Rule 4.07(a)(1)(i), which states that "[e]ach party to a Block Trade must be (A) an [ECP] as that term is defined in Section 1a(18) of the Act. . .;"[71] and (2) ICE Rule 4.02(j), which "explicitly permits them to . . . execute trades opposite the AC Power [Managed Account] because they had no interest of any kind in the AC Power account."[72]  The court's instruction is consistent with ICE Rules that Defendants cite.

ICE Rule 4.07(a)(1)(i) requires the entity with the financial interest entering a block trade to be an ECP; it does not require the broker or intermediary to be an ECP.  Defendants do not dispute that the entity with the financial interest in the Managed Account was AC Power or that AC Power was an ECP.  Nor do they dispute that when trading for the Managed Account, Gizienski was a broker or intermediary acting on AC Power's behalf.  Because the ICE Rule 4.07(a)(1)(i) does not require a broker or intermediary to be an ECP, the court did not err by failing to admit Defendants' Exhibits 1-3, which were offered to show that neither Gizienski nor EOX were ECPs.  Whether Gizienski or EOX were ECPs was not relevant to Count

---

[70](...continued)
No. 267, pp. 118:16-122:20.

[71]Defendants' Memorandum of Law, Docket Entry No. 278, p. 12.

[72]Id. at 13.

II's claim for "taking the other side of orders" or to any other claim alleged in the complaint.

ICE Rule 4.02(j) allows a broker or intermediary to enter a block trade for an account in which it does not have a financial interest. Neither Regulation 155.4(b)(2)(i) nor the court's Count II instructions prohibit brokers or intermediaries such as Gizienski from entering block trades for entities such as AC Power in which they have no financial interest. Regulation 155.4(b)(2)(i) does, however, require brokers to obtain consent from their other customers before entering into block trades opposite them. See 17 C.F.R. § 155.4(b)(2)(i). The court's Count II instructions express § 155.4(b)(2)(i)'s requirement that a trader (whomever makes and executes the trading decision), may only enter block trades opposite his own brokerage customers with those customers' prior consent. Neither Regulation 155.4(b)(2)(i) nor the court's Count II instructions conflicts with ICE Rule 4.02(j). To the contrary, when Gizienski was trading for the AC Power account, an account in which he had no financial interest, Regulation 155.4(b)(2)(i) required him to obtain consent from his other customers before entering into a block trade opposite them. See 17 C.F.R. § 155.4(b)(2)(i). Because Defendants' argument that the court's jury instruction conflicts with the ICE Rule 4.02(j) ignores Regulation 155.4(b)(2)(i)'s requirement that brokers or intermediaries obtain consent from their other customers before entering into block trades opposite them, the court is not persuaded its Count II jury charge was wrong as a matter of law.

-32-

(b)   Defendants Fail to Show that They Did Not Have Fair Notice of the Rule the Court Applied to the Jury Charge for Count II's Claim for "Taking the Other Side of Orders"

Defendants argue that they did not have fair notice of the rule the Court would apply to the Count II claim of "taking the other side of orders" because "three months before trial, Defendants asked the Court to issue its Jury Charge before trial began, but the Court declined."[73]  Defendants argue that

[b]ecause the Court did not inform Defendants of the rule of law it would instruct the jury on until near the close of trial, they were therefore swimming around in the dark about what principle of law would be applied to the "taking the other side of orders" claim.[74]

Citing Federal Rule of Civil Procedure 51 and the court's rulings on Defendants' motions to dismiss and for summary judgment, Plaintiff argues that Defendants had fair notice of the rule of law that the court would apply to Count II.[75]

In pertinent part Rule 51 states that

[t]he court:

(1)   must inform the parties of its proposed instructions and proposed action on the requests [for jury instructions] before instructing the jury and before final arguments;

---

[73]Defendants' Memorandum of Law, Docket Entry No. 278, p. 14 & n.10 (quoting March 11, 2022, Docket Call Transcript, Docket Entry No. 208, p. 24:6-14).

[74]Id. at 17.

[75]Plaintiff's Opposition to Defendants' Joint Motion, Docket Entry No. 282, pp. 17-18.

(2) must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered and

(3) may instruct the jury at any time before the jury is discharged.

Fed. R. Civ. P. 51(b).  Defendants do not dispute that the court satisfied these Rule 51 requirements.  Instead, Defendants argue that the court's failure to provide them the Jury Charge before the start of trial prejudiced them by leaving them "in the dark about what principle of law would be applied to the 'taking the other side of orders' claim."[76]

Defendants' argument is not persuasive.  The parties submitted their Joint Proposed Jury Charge — Agreed and Disputed (Docket Entry No. 201) on November 30, 2021, eight months before the trial started on August 1, 2022.  Plaintiff's proposed jury instruction for Count II included, verbatim, the instruction the court gave to the jury.[77]  Defendants proposed a different instruction, one which framed "taking the other side" around assumption of the risk of profit and loss from the trade, i.e., having a financial interest in the account.[78]  By then, however, the Court had already twice

_____

[76]Defendants' Memorandum of Law, Docket Entry No. 278, p. 17.

[77]Joint Proposed Jury Charge — Agreed and Disputed, Docket Entry No. 201, p. 79 ("An individual takes the other side of an order if he makes the decision to trade opposite the order and executes the trade opposite the order.  It was not necessary for Gizienski to own or have a financial interest in the account he was trading from in order to take the other side of a customer order.").

[78]Id. at 84 ("To take the other side of an order means to become the counterparty to the transaction resulting in that order, and thereby assume both the possibility of profit and risk of loss
                                                        (continued...)

rejected Defendants' theory regarding the need to have a financial interest in the account. First, when ruling on Defendants' Motion to Dismiss, the court expressly stated that "[n]othing in the language of Regulation 155.4(b)(2) limits its application to principals with an ownership or financial interest in a particular account." EOX Holdings, 405 F.Supp.3d at 718. Second, the court reiterated its position on this issue when it ruled on Defendants' Motion for Summary Judgment, stating "[f]or reasons stated in the Memorandum Opinion and Order issued on September 9, 2019, the court has already rejected Defendants' argument[] . . . that § 155.4(b)(2) applies only to principals." EOX Holdings, 2021 WL 4482145, at * 27.

Whether the court's rulings on legal issues in the orders resolving the parties' dispositive motions, including the issue of whether Regulation 155.4(b)(2) applies to brokers or only to principals, was an issue raised and addressed at the pre-trial conference held on March 11, 2022. In response to a question from Plaintiff's counsel as to whether the law as stated by the court in its orders on the parties dispositive motions is the law of the case and would be the law at trial,[79] the court responded, "Why wouldn't my own rulings control in a case before me?"[80] During the

---

[78](...continued)
for that transactions [sic], and not merely to act as broker for the transaction.).

[79]March 11, 2022, Docket Call Transcript, Docket Entry No. 208, p. 21:10-14.

[80]Id. at 21:15-16.

ensuing discussion, defense counsel acknowledged that "in terms of the rules that apply here, we accept what Your Honor's rulings are, but we are persisting in our legal positions to preserve them for the purpose — . . . of Rule 50 and an appeal."[81]

As Plaintiff argues,

[i]t is difficult to understand how Defendants could have been surprised that the Court adopted the only proposed instruction it had not previously rejected.  Indeed, the only surprise would have been if the Court overruled itself — twice — to adopt Defendants' proposal. Defendants' failure to prepare for this instruction, one that was provided to them eight months in advance of trial, is not "manifest error" by the Court but a failure to prepare for the probability that the Court would stick with the legal rulings it had already made.[82]

Because Defendants' argument that they did not have fair notice of the rule the Court would apply to the Count II claim of "taking the other side of orders" ignores the court's two prior rulings that nothing in the language of Regulation 155.4(b)(2) limits its application to principals with an ownership or financial interest in a particular account, and the discussion of the rule of the case at the pretrial conference held on March 11, 2022, the court is not persuaded either that Defendants' lacked fair notice of the rule the Court applied to Count II or that Defendants were prejudiced by the court's failure to provide them the Jury Charge for Count II before the start of trial.

---

[81]Id. at 22:10-15.

[82]Plaintiff's Opposition to Defendants' Joint Motion, Docket Entry No. 282, p. 18.

> (c) Defendants Fail to Show that the Jury's Verdict on
>     Count II's Claim for "Taking the Other Side of
>     Orders" is Incoherent and Unreviewable

Defendants argue that the jury's verdict on Count II's "taking the other side of orders" is incoherent and unreviewable because "[i]t was error [for the court] to allow only a general verdict without the special interrogatory [that Defendants' requested]."[83] Asserting that the general verdict form "is contrary to the Court's repeated ruling that the parties were required to deal with the alleged transactions on a 'case-by-case' basis,'"[84] Defendants argue that "the general verdict was incoherent and not reviewable in any way, shape, or form."[85]  Defendants also argue that "the evidence established that Mr. Gizienski did not make the trading decisions for the vast bulk of the trades,"[86] and that "under the ICE Rules, (1) Defendants were not [ECPs] who could be counterparties to the trades, and (2) they were permitted to take the other side of the trades because they had no proprietary interest in the discretionary account."[87]  Based on these arguments, "Defendants respectfully submit that the refusal to give [their] proposed

---

[83]Defendants' Memorandum of Law, Docket Entry No. 278, p. 18. See also Defendants' Reply, Docket Entry No. 285, p. 6.

[84]Defendants' Memorandum of Law, Docket Entry No. 278, pp. 18-19.

[85]Id. at 19.

[86]Id.

[87]Id.

special interrogatory on 'taking the other side of the order' claim was prejudicial error."[88]

Asserting that "a district court's refusal to obtain a special verdict is reviewed for an abuse of discretion,"[89] Plaintiff responds that "the Court did not abuse its discretion by declining to require a special verdict form because the general verdict adequately presented the issues to the jury in a clear manner. This is evidenced by the jury's precise verdict."[90] Plaintiff argues that

> [o]n the final day of trial [that evidence was presented], Gizienski testified that he had spent the weekend reviewing the 122 trades that [Plaintiff] alleged he transacted against EOX customers and identified 65 where he brokered both sides of the trade:
>
>> I went through all 122 transactions, and I identified them into four different groups. The first group being deals I brokered for Mr. Vaccaro in the AC Power account where I represented both sides, which were 65.
>
> . . . Gizienski prepared a handwritten exhibit identifying these 65 trades, entered it into evidence and provided it to the jury for their deliberations. Audaciously, he now argues that the jury's verdict that he traded against his own customers 65 times is "incoherent."[91]

---

[88]Id. at 21.  See also Defendants' Reply, Docket Entry No. 285, p. 6.

[89]Plaintiff's Opposition to Defendants' Joint Motion, Docket Entry No. 282, p. 18.

[90]Id. at 19.

[91]Id. (quoting August 8, 2022, Trial Transcript Day 6, Docket
                                                    (continued...)

The court is not persuaded that the jury's verdict on Count II's "taking the other side of orders" is either incoherent or unreviewable because the court "allow[ed] only a general verdict without the special interrogatory [that Defendants requested]."[92]

The Verdict Form asked the jury, "Who do you find in favor of on Count II?,"[93] "If you found in favor of Plaintiff CFTC on Count II in Question No. 6, how many times did Mr. Gizienski knowingly take the other side of a customer order without obtaining prior consent from the customer?,"[94] and "If you found in favor of Plaintiff CFTC in Question No. 6, what penalty do you impose for Mr. Gizienski's taking the other side of customer orders?"[95]   The last question instructed the jury that "[y]our penalty may not be more than $140,000 multiplied by the number of violations you found in Question No. 7."[96]   The special interrogatory that Defendants sought and the court declined would have required the jury to "state the dates of the transactions for which you find taking the other side of orders," and to "separately state the Civil Monetary

---

[91](...continued)
Entry No. 269, p. 4:12-16, and citing Defendants' Exhibit 27, Docket Entry No. 275-14, p. 1).

[92]Defendants' Memorandum of Law, Docket Entry No. 278, p. 18. See also Defendants' Reply, Docket Entry No. 285, p. 6.

[93]Verdict Form, Docket Entry No. 245, p. 4 (Question No. 6).

[94]Id. (Question No. 7).

[95]Id. (Question No. 8).

[96]Id.

Penalty, if any, that you assess for each transaction."[97]   But missing from Defendants' briefing is any argument or explanation for why, absent the transaction dates sought in the special interrogatory that they sought, the jury's verdict is either incoherent or unreviewable.

For the reasons stated in § II.A.2(b), above, the court has already concluded that the jury's verdict that Gizienski knowingly took the other side of a customer order without obtaining prior consent from the customer 65 times is supported by evidence at trial.   In light of Gizienski's own testimony and Defendants' Exhibit 27 listing 65 transactions in which Gizienski admittedly took the other side of his customers' orders, the court is not persuaded that the jury's verdict is either incoherent or unreviewable absent the dates that their special verdict form would have required the jury to provide.

> (d)   Defendants Fail to Show that the Ten-Hour Time
>         Limit Prejudiced the Presentation of Their Case

Defendants argue the ten-hour time limit, especially the court's refusal to grant them one additional hour at the end of their case, "worked a substantial hardship on Defendants, preventing them from fully presenting their defense, especially the

---

[97]Defendants' Memorandum of Law, Docket Entry No. 278, p. 18 (quoting Joint Proposed Jury Charge — Agreed and Disputed, Docket Entry No. 201, p. 106).

facts demonstrating that for the vast majority of the 122 transactions, they had no liability."[98]   Defendants argue that

> [t]he Court's blanket ten-hour rule and then its ad hoc refusal to grant an extra one hour at the end of the defense case without considering the force and effect of the evidence that Defendants sought to introduce was an abuse of discretion.
>
> The bottom line is that the Court required the proof to deal with the transactions at issue case-by-case and then denied the Defendants sufficient time to do so.[99]

Plaintiffs respond that the ten-hour time limit was not prejudicial, but required preparation that Defendants failed to undertake.[100]

For reasons stated at the Docket Call held on March 11, 2022, the court entered a timing order pursuant to which each side was allowed ten (10) hours to present evidence.[101]   As Plaintiff points out, before imposing the time limit the court had already opined on Defendants' motion to dismiss and motion for summary judgment, and had provided the parties with hundreds of pages of legal rulings that narrowed the issues for trial and justified the imposition of the timing order.[102]   Defendants' argument that the timing order

---

[98]Id. at 21.

[99]Id. at 25.  See also Defendants' Reply, Docket Entry No. 285, p. 7.

[100]Plaintiff's Opposition to Defendants' Joint Motion, Docket Entry No. 282, pp. 19-22.

[101]See Minutes, Docket Entry No. 206, and March 11, 2022, Docket Call Transcript, Docket Entry No. 208, pp. 3:25-5:4 and 7:24-8:4.

[102]Plaintiff's Opposition to Defendants' Joint Motion, Docket
(continued...)

"worked a substantial hardship . . . preventing them from fully presenting their defense, especially the facts demonstrating that for the vast majority of the 122 transactions, they had no liability,"[103] is belied by Defendants' acknowledgment that

> on the afternoon of the fourth trial day, the Defense . . . painstakingly [went] through about 85 of the 122 supposed instances of "taking the other side of orders" and proved that in the vast bulk of those instances, Jason Vaccaro had made the decision to trade opposite the orders.[104]

Nevertheless, when at the end of that afternoon the court informed defense counsel that he had about an hour of time left to present evidence, defense counsel asked the court to grant him an additional hour.[105]  The court denied the request explaining

> I could think of several ways this testimony could have been much expedited.  It could appear to a reasonable person that today was the first time you've gone over these exhibits with Mr. Gizienski.  And that's fine if you want to try your case that way.  But it's up to you how you use the time I've allocated.  You've known for months how much time you have.  You've had plenty of time to prepare the case with your client.  So you've got that amount of time left.[106]

---

[102](...continued)
Entry No. 282, p. 20.

[103]Defendants' Memorandum of Law, Docket Entry No. 278, p. 21.

[104]Id. at 8 (citing August 4, 2022, Trial Transcript, Day 4 (PM), Docket Entry No. 290, pp. 22-109).

[105]August 4, 2022, Trial Transcript, Day 4 (PM), Docket Entry No. 290, p. 117:3-10.

[106]Id. 117:11-20.

On the last day that evidence was presented, Gizienski testified that he spent the weekend reviewing the 122 trades that Plaintiff alleged he transacted against EOX customers, and that he prepared annotated copies of Plaintiff's Exhibits 55, 56, and 57, evidencing the 122 trades, which the court admitted as Defendants Exhibits 24, 25, and 26.[107]   Defendants argue that they court's timing order prejudiced the presentation of their case, but they fail to identify any evidence that they were unable to present due to the court's enforcement of the timing order.   Because Defendants fail to cite any evidence that they were unable to present due to enforcement of the timing order, Defendants have failed to show that the timing order prejudiced the presentation of their case.

### III. __Defendant Gizienski's Motion to Stay__

Gizienski moves the court to stay the 120-day suspension from the right to broker trades or engage in any business regulated by the CFTC imposed on him by ¶ 6 of the Final Judgment.[108]   Plaintiff argues that Gizienski's Motion to Stay should be denied.[109]

---

[107]August 8, 2022, Trial Transcript, Day 6, Docket Entry No. 269, pp. 3:19-5:6 and 66:14-15; Defendants' Exhibits 24, 25, and 26, Docket Entry Nos. 275-11, 275-12, and 275-13, respectively.

[108]Gizienski's Motion to Stay, Docket Entry No. 279.

[109]CFTC's Memorandum in Opposition to Andrew Gizienski's Motion to Stay the Suspension Imposed by the Final Judgment ("Plaintiff's Opposition to Gizienski's Motion to Stay"), Docket Entry No. 283.

## A.    Standard of Review

Both parties cite Nken v. Holder, 129 S. Ct. 1749 (2009), for stating that the traditional standard for determining whether a stay pending appeal should be granted depends on four factors:

> (1)   whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2)   whether the applicant will be irreparably injured absent a stay;
>
> (3)   whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4)   where the public interest lies.

Id. at 1756 (quoting Hilton v. Braunskill, 107 S. Ct. 2113, 2119 (1987)).  In Nken the Court recognized that

> [a] stay is not a matter of right, even if irreparable injury might otherwise result. . . It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case.

Id. at 1760 (quotations marks and citations omitted).

## B.    The Nken Factors All Weigh Against Granting Gizienski's Motion

### 1.    Gizienski Has Failed to Show Likely Success on the Merits

Citing Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. 1981)(per curiam), Gizienski argues that "the movant need not always show probability of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities

weighs heavily in favor of granting a stay."[110]   Asserting that
"[t]his case goes beyond these litigants and will have a chilling
effect on the energy block trade industry," Gizienski argues that

> [t]he critical legal dispute is the propriety of the rule
> of law adopted by the Court — that taking the other side
> of an order is determined by who makes the trading
> decision even when the person who makes that decision has
> no interest in the account for which the trade is
> entered.[111]

Citing <u>CFTC v. British American Commodity Options Corp.</u>, 98 S. Ct.
10, 13-14 (1977), for stressing the propriety of a stay to preserve
the regulatory status quo in a case involving a change that would
"fundamentally alter the ground rules for doing business in a
substantial industry, with potentially fatal consequences for a
number of firms currently in the trade," Gizienski argues that
"[t]his case presents the same specter to the block trade brokering
industry."[112]

        Plaintiff responds that

> Gizienski's motion for stay fails because he has not
> shown any likelihood of success on the merits of his
> post-trial motions (or eventual appeal) because he makes
> no argument at all in [his] brief or in his motions with
> respect to the jury's finding that he illegally disclosed
> customer orders.  Therefore, even if Defendants were to
> succeed on <u>all</u> the arguments identified in the post-trial
> motions . . . there would still be a final judgment that
> Gizienski illegally disclosed customer orders on five
> occasions.  That final judgment is adequate to support

---

[110]Gizienski's Motion to Stay, Docket Entry No. 279, p. 2.

[111]<u>Id.</u> at 3.

[112]<u>Id.</u> at 4.

the suspension, and therefore Gizienski makes no showing that he is likely to succeed an the merits.[113]

Under Ruiz, 650 F.2d at 565, a stay may be warranted when the movant presents a serious legal question and the balance of equities weighs heavily in favor of granting a stay. Accepting Gizienski's argument that this case presents a serious legal question, the court nevertheless concludes that he has failed to show that the balance of equities weighs heavily in favor of granting a stay. Asserting that he has continued to broker trades for years after the 2013-2014 events with the full knowledge and acquiescence of the CFTC, Gizienski argues "the equities persuade that the suspension should be stayed."[114] Since, however, Gizienski fails to identify any basis for appeal of the jury's finding that he illegally disclosed customer orders, the court concludes that both the first Nken factor and the equities weigh heavily against granting Gizienski's Motion to Stay.


### 2.   Gizienski Has Failed to Show Irreparable Harm

Citing 7 U.S.C. § 13a-1(b), Gizienski argues that because the CEA permits the injunction without requiring the CFTC to post a bond, absent a stay he will be irreparably harmed because he will never be able to recoup the lost income and business opportunities

---

[113]Plaintiff's Opposition to Gizienski's Motion to Stay, Docket Entry No. 283, p. 2.

[114]Gizienski's Motion to Stay, Docket Entry No. 279, p. 3.

that the suspension will force on him.[115]  But apart from citing his
own trial testimony that he was out of work for 26 months and has
recently started his own brokering business, Gizienski has not
cited any evidence showing that absent a stay any loss of income or
business opportunities will cause him to suffer irreparable harm.
In other words Gizienski has failed to cite any evidence showing
that the loss of income and business opportunity of which he
complains is greater than the harm that the suspension is intended
to cause as a penalty for his illegal acts.  Assertions not
supported by evidence fail to establish irreparable harm.  See
Healthpoint, Ltd. v. Ethex Corp., 273 F.Supp.2d 817, 869 (W.D. Tex.
2001) (citing Holland America Insurance Co. v. Succession of Roy,
777 F.2d 992, 997 (5th Cir. 1992) (vacating district court's grant
of injunctive relief where movant's only evidence of irreparable
harm was employee's affidavit)).  Moreover, because the 120-day
suspension imposed by ¶ 6 of the Final Judgment is far less than
the one-year suspension that the CFTC sought in its Proposed Final
Judgment,[116] and because Gizienski has not identified any basis for
appeal of the jury's finding that he illegally disclosed material,
nonpublic customer order information, the court concludes that the
second Nken factor weighs against granting Gizienski's Motion to
Stay.

---

[115]Id.

[116]Docket Entry No. 254, p. 3 ¶ 3.

   3.   Issuance of a Stay Will Injure Plaintiff's Interest

Asserting that he brokered trades for years after the 2013-2014 events at issue with the full knowledge and acquiescence of the CFTC, Gizienski argues that issuance of stay will not substantially injure other interested parties.[117]   Plaintiff counters that it did not acquiesce to Gizienski's continued brokering after his violations, but instead brought charges against him and attempted to permanently suspend him from the industry. Now that it has succeeded in obtaining an order that temporarily suspends Gizienski from brokering, Plaintiff argues that its interest "weighs in favor of a swift suspension, rather than any further delay."[118]   Because this case has been pending for over 3 years, and because the period of suspension ordered is only 120 days, which is far less than either the permanent suspension that Plaintiff sought in its Complaint,[119] or the one-year suspension that Plaintiff sought in its Proposed Final Judgment,[120] the court concludes that the third Nken factor weighs against granting Gizienski's Motion to Stay because a stay pending appeal will injure Plaintiff's interests in promoting compliance with the CEA and its regulations through enforcement actions.

---

[117]Id.

[118]Plaintiff's Opposition to Gizienski's Motion to Stay, Docket Entry No. 283, p. 6.

[119]See Plaintiff's Complaint, Docket Entry No. 1, p. 22 ¶ E.

[120]Docket Entry No. 254, p. 3 ¶ 3.

4.   Public Interest Lies in Denying a Stay

Asserting that he serves important clients, Gizienski argues that the public interest and the interests of his clients will be served by allowing him to continue to broker for them until the legal issues are definitely decided.[121]  Plaintiff counters that the public has an strong interest in enforcement of the commodities laws and regulations, and that as a regulatory agency, the public's interests are aligned with its interests.[122]  When Plaintiff sues to enforce the CEA, it does so to vindicate public rights.  See 7 U.S.C. § 5 (CEA statement of Congressional findings and purpose).  For the reasons the court has already concluded that issuance of a stay will injure the Plaintiff's interests in promoting compliance with the commodity laws and regulations, the court concludes that the public interest will best be served by denying a stay.  Accordingly, the forth Nken factor weighs against granting Gizienski's Motion to Stay.


5.   Conclusion

Because Gizienski has failed to carry his burden of showing that any of the four factors courts consider when deciding whether to grant a stay favor granting a stay of the court's order of suspension, Gizienski's Motion to Stay will be denied.

---

[121]Gizienski's Motion to Stay, Docket Entry No. 279, p. 3.

[122]Plaintiff's Opposition to Gizienski's Motion to Stay, Docket Entry No. 283, p. 6.

## IV. Conclusions and Order

For the reasons stated in § II.A, above, the court concludes that Defendants have failed to establish that they are entitled to judgment as a matter of law on Count II's claim for "taking the other side of orders." For the reasons stated in § II.B, above, the court concludes that Defendants have failed show that a new trial should be granted on Count II's claim for "taking the other side of orders." Accordingly, Defendants EOX Holdings LLC and Andrew Gizienski's Combined Rule 50 and 59 Motions for Judgment as a Matter of Law, and for a New Trial, on Count II for the Alleged "Taking the Other Side of Orders" under 17 C.F.R. 155.4(b)(2)(i), Docket Entry No. 277, is **DENIED**.

For the reasons stated in § III, above, the court concludes that Gizienski has failed to show that a stay of the court's order of suspension is warranted. Accordingly, Defendant Andrew Gizienski's Motion to Stay Suspension Imposed by the Final Judgment, Docket Entry No. 279, is **DENIED**.

**SIGNED** at Houston, Texas, on this 31st day of October, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-50-