United States District Court
Southern District of Texas
**ENTERED**
March 08, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-2901 |
| | § | |
| EOX HOLDINGS L.L.C., and ANDREW GIZIENSKI, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This action was brought by plaintiff, the Commodity Futures Trading Commission ("CFTC" or "Plaintiff"), against defendants, EOX Holdings L.L.C. ("EOX") and Andrew Gizienski ("Gizienski") (collectively, "Defendants"), for violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1-27f, and the Regulations promulgated thereunder, 17 C.F.R. parts 1-190, from August of 2013 through May of 2014 ("Relevant Period"). After a seven-day trial,[1] a jury unanimously found _inter alia_ that Gizienski had violated 17 C.F.R. § 155.4 by taking the other side of customer orders without consent 65 times, and unnecessarily disclosing customers' material, nonpublic order information without permission five times.[2]

---

[1] Trial was held on August 1-4 and 8-9, 2022. On August 5, 2022, the court conducted a jury charge conference.

[2] Verdict Form, Docket Entry No. 245, pp. 4-6. Page numbers for docket entries in the record refer to the pagination inserted (continued...)

On August 15, 2022, the court entered a Final Judgment, which in pertinent part temporarily suspended Gizienski from engaging in certain enumerated activities for a period of 120 days.[3]   On December 13, 2022, Gizienski filed Notice by Defendant Andrew Gizienski of Completion of Suspension (Docket Entry No. 299).   On May 25, 2023, Plaintiff filed the CFTC's Motion for an Order to Show Cause Why Defendant Gizienski Should Not be Held in Contempt ("Plaintiff's Motion for an Order to Show Cause")(Docket Entry No. 312), which is now pending before the court.   Also pending before the court is the Response of Defendant Andrew Gizienski to Plaintiff CFTC's Motion for an Order to Show Cause Why Defendant Gizienski Should Not be Held in Contempt ("Defendant Gizienski's Response") (Docket Entry No. 313).   Pursuant to the Fifth Circuit's ruling that Gizienski could not be held liable for taking the other side of customer orders without consent, Commodity Futures Trading Commission v. EOX Holdings, L.L.C., 90 4th 439, 441 (5th Cir. 2024), the court entered an Amended Final Judgment (Docket Entry No. 320) on March 4, 2024.   Because Gizienski had already completed the period of temporary suspension ordered in the Final Judgment, the paragraph ordering that suspension does not appear in the Amended Final Judgment.   For the reasons stated below, Plaintiff's Motion for an Order to Show Cause will be denied.

---

[2](...continued)
at the top of the page by the court's electronic filing system, CM/ECF.

[3]Final Judgment, Docket Entry No. 264, pp. 4-5 ¶ 6.

## I. **Plaintiff's Arguments for an Order to Show Cause**

Citing <u>inter alia American Airlines, Inc. v. Allied Pilots Association,</u> 228 F.3d 574, 581 (5th Cir. 2000), <u>cert. denied,</u> 121 S. Ct. 1190 (2001), Plaintiff seeks an order directing Gizienski to show cause why he should not be held in contempt for failing to serve at least half of his suspension.[4]  Plaintiff argues that its motion arises because

> Gizienski acquired an ownership interest in and acted as principal of an entity registered with the Commission beginning at least halfway through his 120-day suspension, in defiance of the Final Judgment's clear and unambiguous prohibition against Gizienski acting as a principal during that period.[5]

As evidence of Gizienski's alleged contempt, Plaintiff cites the Complaint filed on March 22, 2023, by the National Futures Association ("NFA"), the self-regulatory organization for the United States' derivatives industry, against Bosworth Brokers LLC ("BBL"), Dennis Michael Bosworth, and Gizienski.[6]  Plaintiff explains that

> [i]n the Complaint, NFA charged that (1) Gizienski, as a broker for BBL, used a messaging application set to auto-delete when communicating with customers and therefore failed to retain communications with customers; (2) BBL failed to report that Gizienski became a principal of BBL; and, (3) BBL failed to adequately supervise the firm and its employees, including Gizienski.[7]

---

[4]Plaintiff's Motion for an Order to Show Cause, Docket Entry No. 312, p. 6.

[5]<u>Id.</u> at 2.

[6]<u>Id.</u> at 5 (citing Exhibit E, Docket Entry No. 312-5).

[7]<u>Id.</u>

Plaintiff also cites the Answer to the NFA Complaint submitted on April 20, 2023, admitting that on October 21, 2022, Gizienski acquired more than a 10% ownership interest in BBL,[8] that his ownership interest required him to be reported the NFA as a "principal" of BBL,[9] and that BBL brokers block trades in the electricity and natural gas markets for institutional customers.[10] Plaintiff also cites a Company Agreement stating that Gizienski is a company member with a 15% interest.[11]  Asserting that "Gizienski violated paragraph 6 of the Final Judgment when he acquired a 15% ownership interest in BBL, thereby becoming a principal of a registered entity after October 21, 2022, two months before the expiration of the 120-day suspension,"[12] Plaintiff argues that "this Court should exercise its inherent power to enforce compliance with the Final Judgment and compel Gizienski to show cause why he should not be held in contempt."[13]

---

[8]*Id.* (citing Exhibit C, Docket Entry No. 312-3, p. 7 ¶ 14).

[9]*Id.* at 5-6 (citing Exhibit C, Docket Entry No. 312-3, p. 16 ¶ 40).

[10]*Id.* at 5 (citing Exhibit C, Docket Entry No. 312-3, p. 4 ¶ 5).

[11]*Id.* (citing Company Agreement of Greenlight Commodities, Exhibit D, Docket Entry No. 312-4, p. 35).  *See also id.* at 5 ¶ 2.02 (stating that "[t]he name of the Company is Bosworth Brokers, LLC DBA Greenlight Commodities").

[12]*Id.* at 7.

[13]*Id.*

-4-

## II. **Gizienski's Response to Plaintiff's Arguments**

Citing his own declaration, Gizienski responds that "[d]uring his suspension, from August 12 to December 13, 202[2], [he] did not act as a principal of [BBL]. . . Therefore, he did not violate the prohibition of the Final Judgment against him 'acting as a principal.'"[14]  Gizienski asserts that he

> did not act in any capacity related to BBL, not as a principal, associated person, or in any other way.  He had no contact with anyone at the firm about its business, clients, or operations in any way.  He did not access the ICEChat or any other communications facility to contact his or anyone else's clients.  He had no contact with any other brokers at BBL or anyone else about its business or any brokering or trading business.  He carefully adhered to the prohibitions of the suspension order.  He did not receive any compensation or payments of any kind.[15]

Gizienski argues that

> during his suspension, [he] was never "acting as a principal," as prohibited by the Final Judgment.  That language was proposed by the CFTC, and its express terms do not prohibit him from <u>becoming</u> a principal, just as he was not prohibited from <u>remaining</u> as a associated person.[16]

---

[14]Defendant Gizienski's Response, Docket Entry No. 313, p. 1 (citing Declaration of Defendant Andrew Gizienski in Response to Plaintiff's CFTC's Motion for an Order to Show Cause Why Defendant Gizienski Should Not be Held in Contempt, ("Gizienski Declaration") Docket Entry No. 313-1).

[15]<u>Id.</u> at 1-2.

[16]<u>Id.</u> at 2.

### III. **Analysis**

Asserting that "Gizienski violated [¶] 6 of the Final Judgment when he acquired a 15% ownership interest[] in BBL, thereby becoming a principal of a registered entity after October 21, 2022, two months before the expiration of the 120-day suspension,"[17] Plaintiff urges the Court to "exercise its inherent power to enforce compliance with the Final Judgment and compel Gizienski to show cause why he should not be held in contempt."[18]

### A.    **Applicable Law**

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." Shillitani v. United States, 86 S. Ct. 1531, 1535 (1966). See also Hornbeck Offshore Services, L.L.C. v. Salazar, 713 F.3d 787, 792 (5th Cir.), cert. denied, 134 S. Ct. 823 (2013) (recognizing that "[f]ederal courts have the inherent power to punish for contempt"). "The availability of that power promotes 'the due and orderly administration of justice' and safeguards the court's authority." Hornbeck, 713 F.3d at 792 (quoting Cooke v. United States, 45 S. Ct. 390, 395 (1925)). But "'[b]ecause inherent powers are shielded from direct democratic controls,' the Supreme Court instructs that 'they must be exercised with restraint and discretion.'" Id. (quoting Roadway Express, Inc. v. Piper, 100 S. Ct. 2455, 2463 (1980)).

---

[17]Plaintiff's Motion for an Order to Show Cause, Docket Entry No. 312, p. 7.

[18]Id.

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." Hornbeck, 713 F.3d at 792 (quoting . The order must "state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d). "Though the court order must be clear, a court 'need not anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated.'" Id. (quoting American Airlines, 228 F.3d at 578).

In a civil contempt proceeding, the movant bears the burden of establishing the elements of contempt by clear and convincing evidence. Hornbeck, 713 F.3d at 792. The elements of civil contempt are: "1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." American Airlines, 228 F.3d at 581. Evidence is clear and convincing if it "produces in the mind of the trier of fact a firm belief or conviction . . . so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case." Hornbeck, 713 F.3d at 792 (quoting Shafer v. Army & Air Force Exchange Service, 376 F.3d 386, 396 (5th Cir. 2004)). "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." Id. (quoting American Airlines, 228 F.3d at 581).

**B.   Application of the Law to the Facts**

In pertinent part the Final Judgment entered on August 15, 2022, states that

> Gizienski is restrained, enjoined, and prohibited for a period of 120 days from the entry of this Final Judgment from directly or indirectly . . . [a]cting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a)(2021)), . . . of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9).[19]

Regulation 3.1(a) states in pertinent part that

> Principal means, with respect to any entity that is . . . a registrant or a person required to be registered under the Act or the regulations in this part:
>
> . . .
>
> (2)(i) Any individual who directly or indirectly, through agreement . . . or otherwise, is either the owner of ten percent or more of the outstanding shares of any class of equity securities, . . .

17 C.F.R. § 3.1(a)(2)(i).

Gizienski does not dispute that he acquired a 15% ownership interest in BBL on October 21, 2022, that his 15% ownership interest qualified him as a "principal" of BBL under Regulation 3.1(a), and that BBL is a CFTC registrant.  Nor does Gizienski dispute that he acquired his 15% ownership interest in BBL during the 120-day period that he was restrained from acting as a principal of any person registered or required to be registered with the CFTC.  Nevertheless, Gizienski argues that he did not

---

[19]Final Judgment, Docket Entry No. 264, pp. 4-5 ¶ 6.g.

violate the Final Judgment because at no time during his 120-day suspension did he act as a principal of BBL.  Gizienski declares under penalty of perjury that

> I did not trade.  I did not broker or execute any transactions.  I did not communicate with any of my clients.  I did not go to the BBL offices.  I did not sign onto or use in any way the ICEChat communication app.  I did not receive any compensation or other payments of any kind.  I did not supervise or control anyone.  In short, I stayed completely away from the block trade and futures business in all regards until December 14, 2022, the day after my suspension ended.[20]

Paragraph 6 of the Final Judgment restrained Gizienski from engaging in a broad variety of actions related to the block trading business:  trading; entering into any transactions involving "commodity interests;" having any commodity interests traded on his behalf; controlling or directing trading for or on behalf of any other person or entity; soliciting, receiving, or accepting funds from any person for the purpose of purchasing or selling any commodity interests; applying for registration or claiming exemption from registration with the CFTC in any capacity; engaging in any activity requiring such registration or exemption; and, finally, acting as a principal of any person registered, exempted from registration or required to be registered with the CFTC.[21]

Plaintiff's reading of the Final Judgment to prohibit Gizienski from becoming a principal of a CFTC registrant during his

---

[20]Gizienski Declaration, Docket Entry No. 313-1, ¶ 7.

[21]Final Judgment, Docket Entry No. 264, pp. 4-5 ¶ 6.a-6.g.

-9-

120-day suspension, is reasonable.  However, Gizienski's reading of the Final Judgment to prohibit him only from acting in the capacity of a principal but not to prohibit him from acquiring or holding the status of a principal, is also reasonable.  Neither party has cited authority in support of their competing readings of the Final Judgment.  After carefully considering the language of the Final Judgment and the undisputed evidence presented by the parties, the court is not persuaded that Plaintiff would be able to establish by clear and convincing evidence that Gizienski's acquisition of a 15% ownership in BBL midway through the period of his suspension violated ¶ 6 of the Final Judgment.  Accordingly, because courts must exercise their inherent powers with restraint and discretion, Hornbeck, 713 F.3d at 792, the court concludes that Plaintiff's Motion for an Order to Show Cause should be denied.

## IV. **Conclusions and Order**

For the reasons stated above, CFTC's Motion for an Order to Show Cause Why Defendant Gizienski Should Not be Held in Contempt, Docket Entry No. 312, is **DENIED**.

**SIGNED** at Houston, Texas, on this 8th day of March, 2024.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-10-